Matthew S. Hale, Esq.
HALE & ASSOCIATES
Calif. State Bar No. 136690
45 Rivermont Drive
Newport News, VA 23601

Mailing Address:
P.O. Box 1951
Newport News, VA 23601

Telephone No. (757) 596-1143
E-Mail: matthale@verizon.net

Attorney for Plaintiffs, DAVID J. LEE and
DANIEL R. LLOYD

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. LEE, and DANIEL R. LLOYD, as individuals and, on behalf of others similarly situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC., a New York corporation, AMERICAN EXPRESS CENTURION BANK, a Utah corporation, AMERICAN EXPRESS BANK, FSB, a Utah corporation,  and DOES 1, through 100, inclusive, )<br><br>Defendants. ) | Case No.: C 07-4765 CRB<br><br>Complaint For:  Injunctive And Restitutionary Relief Arising From Violation Of California Bus. & Prof. Code §§ 17200, et seq.:  Injunctive and Restitutionary Relief, Punitive Damages Arising From Violation of California Civil Code § 1770 (a)(19); Fraud And Deceit; And, Declaratory Judgment<br><br>CLASS ACTION |

1

Plaintiffs allege:

# I.

## Introduction

1.    The action deals only with American Express charge cards and credit cards, respectively, for which an annual fee is paid by the card holder and with American Express Gift Cards and Be My Guest Dining Cards {"Dining Card"), respectively, which are purchased for a fee.  It presents three overarching issues:

(a)    Did American Express commit fraud in the inducement of the card holder agreement arising from its practices and knowing misrepresentations as to the legality and conscionability of the card agreements or portions thereof (excluding the arbitration provision) that were relied upon by Plaintiffs and the persons whom they seek to represent in entering into the agreement and making fee payments thereunder?

(b)    As a separate matter, do the card holder agreements drafted by American Express (and excluding any reference to the arbitration provisions they contain) contain unconscionable and illegal terms in violation of various California consumer protection statutes entitling Plaintiffs to statutory remedies?

(c)    Is the arbitration provision drafted and inserted by American Express in its card agreements (without reference to the unconscionability of the card agreement itself) unconscionable or illegal, and thereby in violation of various California consumer protection statutes entitling Plaintiffs to statutory remedies?

In each instance and as a result of the unconscionability and illegality of the arbitration provision and entire agreement, respectively, that make one or both unenforceable, the fee-paying card holder suffered damage by receiving something worth monetarily less than that for

which he/she contracted and paid (as well as by the loss of use of the fee following its payment). In the context of California's consumer protection laws, Plaintiffs were thereby damaged and suffered an "injury in fact" and a "loss of money or property" entitling them to statutory relief. In the context of the fraud cause of action which is made only with regard to the agreement as a whole (excluding the arbitration provision),[1] receiving less than that for which they paid is the requisite injury necessary to give rise to a right of rescission and restitution, in whole or part, of the fees paid.

2.     The payment of the fee for the respective card(s) provides Plaintiffs and similarly situated persons a contractual right to mandatory arbitration that has pecuniary value:  i.e., the right to demand (pursuant to an enforceable arbitration agreement) mandatory arbitration of any "claim" they have against American Express and the business/person supplying the goods or services for which payment was made using the charge card or the credit card or the gift card or the dining card.   However, the card holder received something worth monetarily less than that for which he/she paid because of the unconscionability and illegality of American Express' arbitration provision (an amount to which the value of the loss of the use of money paid as fees must be added):  e.g., rather than getting a legal and enforceable arbitration provision that endows the card holder with the contractual and legal right to invoke mandatory binding arbitration, they got only an unconscionable and illegal (and thereby unenforceable and invalid) arbitration provision that they can not, as a matter of fact and law and public policy, invoke or use against any one.   That is the an "injury in fact" and results in a "loss of money" (which does not constitute recompensable "damages" since "damages" are not allowed under the UCL and

---

[1]     Unless otherwise specified, reference to the "card agreement" or "card agreement in whole" shall refer to and mean "card agreement t excluding the arbitration provision."

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

are not sought under the CLRA causes of action) mandating that statutory restitution and injunctive relief be ordered.

Relatedly and as a result of a recent amendment to the arbitration provision unilaterally imposed on them by American Express, charge card/credit card/gift/dining card card holders now get even less than that for which they paid since, under that amendment, if any one of specified terms imposed by American Express in its "Restrictions" section (such as the class action waiver, the injunction waiver, the non-consolidation of arbitral claims condition) are successfully challenged and declared to be invalid and unenforceable then the arbitration provision itself provides that the arbitration provision "shall not apply."  As a result, rather than getting an enforceable and conscionable arbitration provision they get only a Hobson's Choice: i.e., in order to demand arbitration the card holder must either acquiesce to the use of an unconscionable and illegal arbitration provision (a matter which is against public policy and the law, and which also waives not only their right to object to its unconscionability but the various non-waiveable rights they are given by California law and policy), or have no enforceable right to demand arbitration at all.  In each instance, Plaintiffs and similarly situated persons thus suffer not only an "injury in fact" but also a "loss of money or property" as a result of the provision's unconscionability and illegality that also entitle them to statutory restitution and injunctive relief.

3.     The scheme from which Plaintiffs' "injury in fact" and resultant monetary loss results with regard to the arbitration provision is the systematic and continuing violation of California's consumer protection laws resulting from the unconscionability and illegality of its terms.  The terms of that provision and, indeed, the provision itself is unconscionable and illegal in that it:

3

♦      was imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof;

♦      was contained in an adhesive form agreement prepared by American Express and concerning which American Express was in a much stronger bargaining position than the card holder;

♦      provides that all claims "shall be arbitrated on an individual basis" and that no claim "may be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers [or "gift cardholders" or "dining cardholders"] or other persons similarly situated" in a context where predictably only "small" amounts of money are involved (the fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card;

♦      provided, until 2005, relative to credit cards and charge cards that an arbitration is mandated of "any claim, dispute, or controversy arising from or relating to your Account; this Agreement … and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above Agreements ('Agreements'), including the validity, enforceability or scope of this Arbitration Provision or the Agreements";

♦      provides with regard to the gift card and the dining card that an arbitration is mandated of "any claim, dispute, or controversy arising from or relating to your Account; this Agreement … and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above

4

Agreements ('Agreements'), including the validity, enforceability or scope of this Arbitration Provision or the Agreements";

♦        provides that "claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you" in a context where predictably only "small" amounts of money (the fee) are involved and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card;

♦        provides a description of the term "us" relating to the non-card holder parties by whom or against whom a claim can be made that must be arbitrated is so vague and overbroad that it is patently insufficient to establish any reasonable expectation or knowledge of the cardholder as to what matters and persons are covered by the agreement;

♦        provides that no injunctive relief may ever been given in that relief under the agreement can be made only on "an individual basis" not involving "the general public" since the decision maker's "authority is limited to claims between you and us [Defendants and amorphous others] alone" in which relief "is limited to awards to you and us alone. ....";

♦        provides that all "claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity" must be arbitrated;

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

♦ provides that in arbitration "[a]ny Claim shall be resolved … by arbitration pursuant to this Arbitration Provision and the code of procedure of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed. Claims shall be referred to either the National Arbitration Forum ('NAF') or the American Arbitration Association ('AAA') [and with regard to the dining card only, JAMS" without providing the card holder with copies of the rules of those organizations or specifying which of several code of procedure applies to the arbitration;

♦ provides no alternative means by which some other arbiter or arbitral organization may be chosen by the card holder;

♦ provides that "[t]he arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable Code" but fails to advise of any specific inconsistency those codes may have with the Arbitration Provision;

♦ provides no way for the card holder to know at the time he/she initially agreed to arbitrate what the rules would be at the time of the arbitration as well as what inconsistencies existed between the agreement and the Code because American Express has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration) and the arbitration provision otherwise makes the applicable arbitration rules those in effect when the arbitration is filed;

♦ provides that "[n]o arbitrator's award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party

6

to the arbitration" which is against public policy by denying any mutual collateral estoppel or precedental value to any decision rendered against American Express;

♦    provided, until 2005, that "[i]f any portion of this Arbitration Provision is deemed invalid or unenforceable under any principle or provision of law or equity, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement, each of which shall be enforceable regardless of such invalidity" even though all determinations as to severability of the provision is a matter exclusively reserved for the Courts;

♦    provides since 2005 that "should any portion of the "Restrictions on Arbitration' [section containing the class action waiver, the injunction waiver, the no consolidation of arbitral claims term] be deemed invalid or unenforceable, the entire Arbitration Provision (other than this sentence) will not apply" even though all determinations as to severability of the provision is a matter exclusively reserved for the Courts; and,

♦    provides only a vague and overbroad statement of what effect arbitration will have on the legal rights of card holders.

4.    The unconscionable and illegal terms of the arbitration provision is a continuing act or practice:  (a) in violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, et seq. ("UCL"), on the basis that the arbitration provision and its terms are unlawful and unfair; and, (b) in violation of California's Consumer Legal Remedies Act, California Civil Code § 1770(a)(19) ("CLRA"), which makes insertion of an unconscionable provision in a contract an unlawful act.  Plaintiffs, on behalf of themselves and/or all other similarly situated consumers and residents, respectively, in California  are thus entitled to:  (1) a Declaratory Judgment

7

David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,
Complaint

declaring the arbitration provision to be unconscionable, illegal and unenforceable, and severable from the remainder of the card agreement; (2) statutorily authorized injunctive and restitutionary relief (including disgorgement of profits) as to the UCL causes of action;  (3) statutorily authorized injunctive and restitutionary relief, and punitive damages as to the CLRA causes of action; (4) prejudgment interest; and, (5)  attorney's fees (including costs) specifically authorized by the CLRA, and otherwise available in UCL causes of action under the laws and precedents of California.

5.     The claim regarding the card agreement as a whole (excluding its arbitration provision) centers on its inclusion of a variety of terms that are unconscionable and illegal under controlling California and Ninth Circuit law as well as American Express' fraud in inducing card holders to enter the agreement and make payment thereunder.  Having paid a fee for that agreement and the rights created thereby, Plaintiffs and similarly situated persons have received something worth monetarily less than that for which they paid:  they received only an unconscionable and unenforceable agreement or terms rather than enforceable and conscionable ones.  That creates an "injury in fact" and a resulting "loss of money."  On the one hand and reflecting the misrepresentations made by American Express that are of a nature calculated to induce the making of a contract and payment and display a lack of fair dealing, the inclusion of those unconscionable or illegal terms gives rise to a non-statutory cause of action for fraud and deceit that, due to the permeation of the unconscionable terms, requires non-statutory rescission of the agreement as a whole and common law restitution of the fees paid.  These unconscionable terms include, in addition to the adhesive nature of the contract itself, such matters as American Express' unilateral right to change <u>any</u> term of the agreement at its will and without any reason (which is denied to the card holder), American Express' unilateral right to take any action

8

without waiving its rights under the agreement which is denied to the card holder, and its statement that the laws of Utah (in the case of the charge card and credit card) or New York (in the case of the gift card and dining card) are the controlling laws.

On the other hand, the inclusion of those unconscionable and illegal terms in the agreements (without consideration of any fraud in inducing the agreements) is an unlawful and unfair practice, respectively, that has, is and continues to occur:  (a) in violation of UCL on the basis that the unconscionable terms are illegal and unfair; and, (b) in violation of the CLRA, which makes insertion of an unconscionable provision in a contract an unlawful act.  Similar to the arbitration provision, the card holder simply gets less than that for which he paid due to the inclusion of these unconscionable terms and conditions which, alone or in tandem, render the agreement itself unconscionable and thereby suffers an "injury in fact" and a resulting loss of money.  With regard to the consumer statute causes of action, Plaintiffs, on behalf of themselves and/or all other similarly situated consumers and residents, respectively, in California  are entitled to:  (1) a Declaratory Judgment declaring the card agreement to be unconscionable, illegal and unenforceable; (2) statutorily authorized injunctive and restitutionary relief (including disgorgement of profits) as to the UCL causes of action;  (3) statutorily authorized injunctive and restitutionary relief, and punitive damages as to the CLRA causes of action; (4) prejudgment interest; and, (5)  attorney's fees (including costs) specifically authorized by the CLRA, and otherwise available in UCL causes of action under the laws and precedents of California.

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

## II.

## The Parties

6.    Plaintiff David J. Lee ("Lee") is an individual who, at all relevant times herein mentioned, resided in the City of Kentfield, Marin County, State of California and, hence, within the geographic boundaries of this District Court.

7.    Plaintiff Daniel R. Lloyd ("Lloyd") is an individual who, at all relevant times herein mentioned, resided in the City of Paso Robles, San Luis Obispo County, State of California.

8.    Plaintiffs respectively bring this as a class action composed of all similarly situated consumers (as to the CLRA causes of action) and "persons" (as to all other causes of action) residing in the State of California more fully described in paragraph 140 below.

9.    Defendant American Express Travel Related Services Company, Inc. ("Card") is a New York corporation whose principle place of business is located in the State of New York.[2]  It is a wholly owned subsidiary of the American Express Company and is the parent company of American Express Centurion Bank and American Express Bank, FSB, respectively.   During some or all of the periods mentioned herein, it has been or is, among other things, in the business of opening American Express charge card accounts with individuals and/or business entities for which an annual fee is paid.   It also issues and receives payment for American Express gift cards and dining cards.   Card is authorized to conduct business within the State of California.

10.    Defendant American Express Centurion Bank ("Centurion Bank") is a Utah corporation, having it only two offices located in Utah (with no offices located in any other State).   It is a wholly owned subsidiary of Card and is, among other things, in the business of issuing

---

[2]    Unless otherwise specified, all Defendants are referred to collectively as "American Express."

10

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

American Express charge cards and credit cards to persons and/or business entities.   As relevant here, at the present time it issues the following American Express charge cards for which an annual fee is paid:   American Express Preferred Rewards Green Card, American Express Preferred Rewards Gold Card, American Express Rewards Plus Gold Card, American Express Platinum Card, and the American Express Centurion [Black] card.   It is not authorized to conduct business within the State of California.

11.     Defendant American Express Bank, FSB ("FSB"), is a wholly owned subsidiary of Centurion Bank and is a "d.b.a" for Centurion Bank.  Its headquarter is located in New York City, New York.  It is also a wholly owned subsidiary of Card pursuant to the Supplemental Servicing Agreement of June 30, 2004 between, among other American Express-related entities, Card and Centurion Bank.  At the close of business on April 16, 2004, Centurion Bank sold a portion of its charge and credit card account portfolio to FSB.  As relevant here and without limitation, at the present time it issues the following American Express credit cards for which an annual fee is paid:  Delta Sky Miles card, Gold Delta Sky Miles card, Platinum Delta Sky Mile card, Skypoint Credit Card of Delta and American Express, Jetblue Card from American Express, One from American Express card, and Starwood Preferred Credit Card from American Express.  FSB also issues the following American Express charge cards to persons and/or business entities for which an annual fee is charged:  Business Gold Rewards Card, Business Platinum Card, American Express Corporate Card, American Express Business ExtrAA Corporate Card, Corporate Platinum Card, and Executive Corporate Card.   Plaintiffs are informed and believe, and on that basis allege, that FSB is not authorized to do business in California.

12.    The true names and capacities of the defendants sued herein as Does 1 through 100 are unknown to Plaintiff who therefore sues them by such fictitious names.  Plaintiff will amend this complaint to allege the true names and capacities of these defendants when they have been determined.  Each of the fictitiously named defendants is responsible in some manner for the acts alleged herein.

13.    At all times mentioned in the causes of action alleged herein, each and every defendant was an agent and/or employee of each and every other defendant.  In doing the things alleged in the causes of action stated herein, each and every defendant was acting within the course and scope of this agency or employment and was acting with the consent, permission and authorization of each of the remaining defendants.  All actions of each defendant as alleged in the causes of action stated herein were ratified and approved by every other defendant or their officers or managing agents, and by agreeing to actively conceal the true facts regarding the acts and omissions, as alleged herein, engaged in conspiratorial conduct with each other.

## III.
## Jurisdiction and Venue

14.    Since Plaintiffs on their own behalf and on behalf of similarly situated consumers and residents of California, respectively, are requesting restitutionary relief, statutory restitutionary relief (including disgorgement of profits), punitive damages, and prejudgment interest totaling an amount in excess of $5,000,000.00, jurisdiction arises under 28 U.S.C. § 1332 (diversity).

15.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because:  the products at issue are advertised, promoted, sold and used in the geographic parameters of the United States District for the Northern District of California; Defendants have received substantial compensation from the sale of the products at issue in this District by engaging in acts and

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

practices that constitute unfair competition and violation of law within this District and which had an effect in this District; and, Plaintiff Lee is a resident of this District.

### IV.

### The Facts

**A.  The Facts Concerning American Express Cards:  Charge, Credit, And Gift**

16.    As relevant here, American Express issues four different kinds of cards:

(a) charge cards for which an annual fee is paid by the card holder, that require all charges to the card be due and payable when the monthly billing statement is received, and that has no credit or revolving credit feature (a fee may be charged for late payments, usually $35 or 2.99% of the unpaid monthly balance depending upon State law);

(b)   credit cards upon which an annual fee is charged but which are revolving credit instruments that do not need to be paid off in full at the end of the monthly billing cycle, upon which no late fee is charged as long as the minimum payment is timely made but which charges a late fee when payment is untimely, and which carries a balance forward as a loan charging interest;

(c)   gift cards which are a prepaid payment device that comes with a set dollar value printed on the front of the gift card, and which is not a credit card, charge card or debit card; and,

(d)   "Be My Guest Dining Cards which are a prepaid payment device that comes with a set dollar value printed on the front of the card, and which is not a credit card, charge card or debit card.

A true and correct copy of the official American Express Internet website page listing the various "personal" "charge" and "credit" cards, respectively, issued by American Express

13

(which        can        be        found        at http://www201.americanexpress.com/apply/Fmacfservlet?csi=0/0/b/12&us_nu=dd ) is Exhibit 1 hereto and incorporated herein by reference.  Charge cards and credit cards are necessities in today's world:  they are required to rent a car, reserve an airline ticket, stay at a hotel, make a purchase on the Internet, or cash a third-party check at many banks.

17.    American Express charge cards, credit cards, gift cards, and dining cards, respectively, are means of and used to obtain goods and/or services (including services furnished in connection with the sale or repair of goods) from any person or business who accepts the respective card in payment for the goods or services provided.  So-called "business" cards may be and are used to this end.

18.    The American Express charge card does not involve "credit" and the purchase of a cardmembership purchases and provides only a "convenience service" for the card holder.  The charge card has distinct advantages over cash, checks, and other means of payment:  the convenience use it provides minimizes the need to carry cash, allows the card holder to defer payment for a short time (until receipt of the monthly billing statement), and establishes a favorable payment record that is important in financial evaluations.

19.    The purchase of a cardmembership (for which a fee is paid) relative to a credit card purchases and provides, at least in great part, a "convenience service" even when "credit" can be implicated if the monthly balance is not paid in full upon receipt of the monthly billing statement.   It provides a means of payment which leaves the option open to the card holder to either pay his/her monthly statement in full upon its receipt (and thus not incur any interest indebtedness or otherwise use the "credit" service of the card) or to not pay the bill in full and use the revolving credit feature.  Regardless of which option is chosen by the card holder, the

14

use of the credit card has distinct advantages over cash, checks, and other means of payment: i.e., the credit card not only minimizes the need to carry cash and allows the user to defer payment and establish a favorable credit history but also, importantly, increases the card holder's ability to purchase goods and services and in so doing avoid the red tape involved in obtaining a personal loan.    Plaintiffs are informed and believe, and on that basis allege, that some holders of credit cards do, from time to time or all of the time, pay the monthly balance in full upon receipt of the monthly billing statement and do not avail themselves of the credit feature of the card.

20.    Plaintiffs are informed and believe, and on that basis allege, that American Express maintains records identifying – for at least the last four years preceding the filing of this Complaint -- each holder of a specific credit card, charge card, gift card or dining card and their current/last known address, the amount of fees paid by him/her, the date(s) upon which a card was issued to that person,  the charges made by that person on his American Express card, and other means by which each card holder (including persons purchasing Gift Cards and Dining Cards) may be identified.

21.    The purchase of an American Express Gift Card purchases and provides a convenience service since it can be used at retailers, restaurants, amusement parks, sporting events, movie and other theaters, spas, salons and certain other merchants that are located in the United States and that accept the American Express Card, including mail order, online and brick and mortar establishments.  It cannot be used at car rentals, cruise lines, for recurring billing purchasers, or at casinos or ATMs.  The purchase of an American Express Dining Card purchases and provides a convenience service as well since it can be used not only for dining at restaurants but, according to the official American Express website, can now be used for the same purposes as a

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

Gift card.  Both the Dining Card and the Gift Card have distinct advantages over cash, checks, and other means of payment:  the convenience use it provides minimizes the need to carry cash or checks or in any way incur indebtedness of any type (including credit).

22.    The first American Express travel charge card was introduced on or about October 1, 1958.   In 1966 American Express introduced the Gold Card and in 1984 the Platinum Card, both of which were charge cards.  In 1987, American Express introduced the Optima card, its first revolving credit credit card product, which was followed in 1999 by the Blue credit card. During the period from 1987 to the present, American Express has introduced a number of credit cards (requiring payment of an annual fee but also involving revolving credit) that were co-branded with various business entities such as Delta Airlines, Jetblue Airlines, and Starwood Hotels.

23.    Upon information and belief, Plaintiffs allege that American Express has currently approximately 40,000,000 charge card and credit card accounts in the United States, approximately and at least ten (10) per cent of which are issued to California consumers and/or residents, respectively.   Upon information and belief, Plaintiffs further allege that American Express receives a "merchant fee" for each charge made on the card, payable by the merchant based on a percentage of the sales price.

24.    During some or all of the four years preceding the filing of the Complaint and three years preceding the filing of the Complaint, respectively, American Express issued "personal" charge cards at the following annual fees:

(a)  The American Express Card (Green) -- $95.00 annual fee, $30.00 annual fee each for up to 5 additional cards.  A true and correct copy of the American Express Internet website page containing the "Terms and Conditions" obtaining to

16

this    charge    card    which    can    be    found    at
https://www201.americanexpress.com/cards/Applyfservlet?csi=70/0/b/10/undefin
ed/undefined/undefined/undefined&mgmID=undefined is Exhibit 2 hereto and is
incorporated herein by reference;

(b)  American Express Gold Card -- $125.00 annual fee, $35.00 annual fee each
for additional cards.  A true and correct copy of the American Express Internet
website page containing the "Terms and Conditions" obtaining to this charge card
which       can       be       found       at
https://www201.americanexpress.com/cards/Applyfservlet?csi=76/0/b/10/undefin
ed/undefined/undefined/undefined&mgmID=undefined is Exhibit 3 hereto and is
incorporated herein by reference;

(c)  American Express Rewards Plus Gold Card -- $150.00 annual fee.  A true and
correct copy of the American Express Internet website page containing the
"Terms and Conditions" obtaining to this charge card which can be found at
https://www201.americanexpress.com/cards/Applyfservlet?csi=13/0/b/10/undefin
ed/undefined/undefined/undefined&mgmID=undefined is Exhibit 4 hereto and is
incorporated herein by reference;

(d) American Express Platinum Card -- $450.00 annual fee, $175.00 annual fee
each for additional 3 cards, $45 annual fee for each additional card.  A true and
correct copy of the American Express Internet website page containing the
"Terms and Conditions" obtaining to this charge card which can be found at
https://www201.americanexpress.com/cards/Applyfservlet?csi=17/0/b/10/undefin

ed/undefined/undefined/undefined&mgmID=undefined is Exhibit 5 hereto and is incorporated herein by reference;

(e)  Fidelity American Express Platinum Card -- $450.00 annual fee, $175.00 annual fee each for additional 3 cards, $45.00 annual fee for each additional card. A true and correct copy of the American Express Internet website page containing the "Terms and Conditions" obtaining to this charge card which can be found at https://www201.americanexpress.com/cards/Applyfservlet?csi=17/11516/b/10/0/0/0/n&from=2 is Exhibit 6 hereto and is incorporated herein by reference;

(f)  Centurion Card (Black) -- $5,000 initial issuance "relationship" fee, $2,500 annual fee.

25.    During some or all of the four years preceding the filing of the Complaint and three years preceding the following the filing of the Complaint, respectively, American Express issued "business" and "corporate" charge cards.   A true and correct copy of the official American Express Internet website page listing the various "business" "charge" and "credit" cards, respectively, issued by American Express (which can be found at http://www201.americanexpress.com/sbsapp/FMACServlet?request_type=CompareAll&us_nu=dd) is Exhibit 7 hereto and incorporated herein by reference. These charge cards were issued with the following annual fees were charged:

(a)  Business Gold Rewards Card -- $125.00 annual fee, $45.00 annual fee each for additional cards.  A true and correct copy of the American Express Internet website page containing the "Terms and Conditions" obtaining to this charge card which         can         be         found         at https://www201.americanexpress.com/sbsapply/EACQServlet?request_type=appl

18

yNow&bos=b&ct=24&eep=16489&iep=38&openria=0 is Exhibit 8 hereto and is incorporated herein by reference;

(b)    Business Platinum Card -- $395.00 annual fee, $200.00 annual fee per employee card, $200.00 annual fee each for additional Executive Platinum card, $35.00 annual fee for each additional gold card.  A true and correct copy of the American Express Internet website page containing the "Terms and Conditions" obtaining to this charge card which can be found at https://www201.americanexpress.com/sbsapply/EACQServlet?request_type=appl yNow&bos=b&ct=16&eep=16451&iep=38&openria=0 is Exhibit 9 hereto and is incorporated herein by reference; and,

(c)  American Express Corporate Card, and American Express Business ExtrAA Corporate Card, Corporate Platinum Card, Executive Corporate Card – annual fee determined by contractual agreement based on, among other things, the level of expenses charged, the amount of gross sales of the business, the number of cards issued.

26.    During some or all of the four years preceding the filing of the Complaint and three years preceding the following the filing of the Complaint, respectively, American Express issued the following "business" and "corporate" credit cards (in "partnership" with various non-American Express entities) for which the following annual fees were charged:

(a)       Delta Sky Miles credit card -- $55.00 annual fee.  A true and correct copy of the official American Express Internet website page containing the "Terms and Conditions" obtaining to this credit card can be found at

19

http://www.201.americanexpress/apply/Fmacfservlet?csi=5/15516/b/10/0/0/0/n&f
rom=2 is Exhibit 10 hereto and is incorporated herein by reference;

(b)      Gold Delta Sky Miles credit card -- $85.00 annual fee ($30.00 if the card
holder also holds another qualified American Express card).  A true and correct
copy of the official American Express Internet website page containing the
"Terms and Conditions" obtaining to this credit card can be found at
https://www201.americanexpress.com/cards/Applyfservlet?csi=24/24000/b/218/2
510192095/250092909721/20/n&from=0&mgmID=undefined   is   Exhibit   11
hereto and is incorporated herein by reference;

(c)      Platinum Delta Sky Miles credit card -- $135.00 annual fee ($80.00 annual
fee if cardholder also holds another qualified American Express card).  A true and
correct copy of the official American Express Internet website page containing
the "Terms and Conditions" obtaining to this credit card can be found at
https://www201.americanexpress.com/cards/Applyfservlet?csi=36/24000/b/64/25
10192095/250092909721/20/n&mgmID=undefined&from=0 is Exhibit 12 hereto
and is incorporated herein by reference;

(d)      Skypoints credit card from Delta Airlines and American Express -- $49.00
annual fee (no annual fee if the card holder holds another qualified American
Express card).  A true and correct copy of the official American Express Internet
website page containing the "Terms and Conditions" obtaining to this credit card
can                          be                          found                          at
https://www201.americanexpress.com/cards/Applyfservlet?csi=14/24000/b/10/25

20

10192095/250092909721/20/n&from=0&mgmID=undefined is Exhibit 13 hereto and is incorporated herein by reference;

(e)    Jetblue Card from American Express -- $40.00 annual fee.  A true and correct copy of the official American Express Internet website page containing the "Terms and Conditions" obtaining to this credit card can be found at https://www201.americanexpress.com/cards/Applyfservlet?csi=82/24000/b/10/25 10192095/250092909721/20/n&from=0&mgmID=undefined is Exhibit 14 hereto and is incorporated herein by reference; and,

(f)    Starwood Preferred Guest Credit Card from American Express -- $30.00 annual fee.  A true and correct copy of the official American Express Internet website page containing the "Terms and Conditions" obtaining to this credit card can be found at https://www201.americanexpress.com/cards/Applyfservlet?csi=6/24000/b/10/251 0192095/250092909721/20/n&from=0&mgmID=undefined is Exhibit 15 hereto and is incorporated herein by reference.

American Express also issued a personal credit card – One from American Express – which has a $35.00 annual fee (free the first year), a true and correct copy of the "Terms and Conditions" obtaining to that card being Exhibit 16 hereto and is incorporated herein by reference.

27.    American Express, through Card, issues the American Express Gift Card and the Dining Card.  The Gift Card costs $3.95 (plus shipping and handling) and comes in denominations of $25.00, $50.00, $100.00, and $200.00, and carries attendant fees ($5.95 for replacement cards, $2.00 monthly service charge if any funds remain on card after one year of purchase date). A true and correct copy of the official American Express Internet website page containing the

21

Terms and Conditions obtaining to the Gift Card can be found at http://www10.americanexpress.com/sif/cda/page/0,1641,22147,00.asp?us_nu=leftnav is Exhibit 17 hereto and is incorporated herein by reference. Plaintiffs are informed and believe and on that basis allege that at least 100,000 gift cards have been purchased in California. American Express, through Card, also issues the American Express Dining Card at the cost of $4.95 per chard and it carries attendant fees as well. A true and correct copy of the official American Express Internet website page containing the Terms and Conditions for the Dining Card may be found at http://www10.americanexpress.com/sif/cda/page/0,1641,8521,00.asp, a true and correct copy of which is Exhibit 18 hereto and is incorporated herein by reference. Plaintiffs are informed and believe and on that basis allege that at least 100,000 dining cards have been purchased in California.

## B. **Plaintiffs' Facts**

28.     Plaintiff Lee obtained a Starwood Preferred Guest Credit Card from American Express in or about April, 2006 which was accompanied by a cardmember agreement, a true and correct copy of which is Exhibit 19 hereto and which is incorporated herein by reference. No annual fee was charged for the first year (as a result of his accepting an introductory offer). He obtained the card for personal use to purchase, among other things, goods or services (including services furnished in connection with the sale or repair of goods) for his personal or household use.

29.     By letter dated November 30, 2006 sent to Kenneth Chenault (President and CEO of Card) which was identical to letters he to sent to Mr. Poulsen (President and CEO of Centurion Bank) and Mr. Short (President and CEO of FSB), respectively (all of which were sent certified mail, return receipt requested), Plaintiff Lee pointed out the unconscionability and illegality of

22

the agreement relating to his Starwood credit card, particularly its arbitration provision, under California law and requested that American Express "'correct, repair, replace or otherwise rectify the goods or services" caused by the violation of California Civil Code § 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision into a contract." True and correct copies of the certified letters to Mr. Chennault, Mr. Poulsen, and Mr. Short are Exhibits 20, 21 and 22 hereto, respectively, and are incorporated herein by reference.

30. While neither Mr. Poulsen nor Mr. Short responded to Plaintiff Lee's letters, Mr. Chennault did. By letter dated December 11, 2006 from Dina Colton, an assistant to Mr. Chennault, American Express responded to Lee's letters of November 30, 2006. American Express rejected Lee's request, stating only that "Although the credit card laws of California are changing, American Express cards are governed by the laws of the State of Utah," and, resultantly, averring that the arbitration agreement and card agreement were both legal and consciable. A true and correct copy of that letter is Exhibit 23 hereto and is incorporated herein by reference.

31. On November 2, 2005, the Motion to Compel Arbitration and Stay Action filed by American Express in Berry v. American Express Publishing Co., et al, Case No. 05CC00049 (Orange County Superior Court), a case exclusively challenging the conscionability and legality of the American Express arbitration provision as a violation of the CLRA for which only injunctive relief was sought, was denied. A true and correct copy of the Notice of Ruling on that Motion is Exhibit 24 hereto and is incorporated herein by reference. The basis for that Ruling was the determination by the Superior Court (Hon. Kim Dunning) that the American Express arbitration provision was unconscionable and that California law provided controlling law. A true and correct copy of pages 1 though 21 of the Reporter's Transcript of the November

23

2, 2005 hearing and oral ruling of the Superior Court is Exhibit 25 hereto and is incorporated herein by reference.

32.     American Express did not appeal the November 2, 2005 ruling.  Plaintiffs are advised and believe, and thereon allege, that under California law the denial of a motion to compel arbitration is an immediately appealable final order and, further, that the failure by American Express to file an appeal of the November 2 Order rendered that Order final.  See California Code of Civil Procedure § 12194(a); Hobbs v. Bateman Eichler, Hill & Richards, 164 Cal.App.3d 174, 191, 210 Cal.Rptr. 387 (1985).

33.     Plaintiffs are advised and believe, and thereon allege, that it has been, is and will continue to be the practice of American Express to uniformly advise its card holders, directly or by implication, that the card holder agreements are conscionable and legal, and governed by the laws of the States of New York and Utah, respectively.

34.     In or about May, 2007, after his receipt of American Express' December 11, 2006 letter and in reliance thereon as well as in reliance on the misrepresentations made by American Express, Plaintiff Lee paid the $30.00 annual fee to American Express for his Starwood credit card.

35.     In or about June, 2007, Plaintiff Lee purchased an American Express Gift Card and an American Express Dining Card, and paid the fee charged therefore (including shipping and handling).  He obtained these cards for his personal use and it will be used to purchase, among other things, goods or services for his personal or household use. True and correct copies of the sales receipts for these cards are Exhibits hereto as 26 and 27 and are incorporated herein by reference. Accompanying these cards were cardholder agreements, true and correct copies of

24

these agreements are attached hereto as Exhibits 28 and 29 and which is incorporated herein by reference.

36.     Plaintiff Lee purchased the gift card and the dining card after his receipt of American Express' December 11, 2006 letter and in reliance thereon as well as in reliance on the misrepresentations made by American Express specified in this Complaint.

37.     Plaintiff Lee obtained an American Express "Green" charge card in or about June  2007 which was accompanied by a cardmember agreement identical (except for the title thereof) to Exhibit 19 hereto.  The first year annual fee for that card has been waived by American Express but at the end of the first year, he will be obligated to pay the annual fee should he wish to continue to receive the card's convenience services.  He obtained the card for his personal use to purchase, among other things, goods or services (including services furnished in connection with the sale or repair of goods) for his personal or household use.

38.     Plaintiff Lee obtained the Green Card after his receipt of American Express' December 11, 2006 letter and in reliance thereon as well as in reliance on the misrepresentations made by American Express.

39.     Plaintiff Lloyd obtained an American Express Platinum charge card in 2003.  He has paid the annual fee in each of the years thereafter until the present time.  He obtained the card for his personal use to purchase, among other things, goods or services (including services furnished in connection with the sale or repair of goods) for his personal or household use.  When he received the credit card from American Express it was accompanied by a cardmember agreement, a true and correct copy of the version of the American Express cardmember agreement supplied to card holders when Plaintiff Lloyd first obtained his charge card is Exhibit

25

30 hereto and is incorporated herein by reference.  That agreement contained an arbitration provision which specifically did not apply to California residents such as Plaintiff Lloyd.

40.    After receiving his American Express Platinum charge card in 2003, Plaintiff Lloyd was advised by bill-stuffer letter in or about December 2003 that the cardmember agreement was being unilaterally modified by American Express and, as relevant here, that "Cardmembers having California billing addresses will no longer be excluded from the coverage of the section called Arbitration."  A true and correct copy of the type of form letter sent to California card holders such as Plaintiff is Exhibit 31 hereto and is incorporated herein be reference. Subsequent unilateral changes in the arbitration provision have been made by American Express and provided to Plaintiff by means of a "bill stuffer."  That agreement, including notably its arbitration provision, has from time-to-time been amended by American Express, which amendments were sent to Plaintiff(s) as "bill stuffers."

41.    In making the payments of the fees owed by him, Plaintiff Lloyd relied upon the statements and misrepresentations made by American Express as specifically set forth in this Complaint.

42.    In accepting the contractual terms presented to them by American Express on a "take it or leave it" basis – which was effected by the use of the card rather than by formal written agreement or other writing – and paying their respective annual fees for the charge card and credit card as well as the purchase price of the Gift Card and Dining Card, respectively, Plaintiffs acted as reasonable consumers who were unwary and trusting of American Express.

43.    In accepting the contractual terms presented to them by American Express on a "take it or leave it" basis, paying their respective annual fees for the charge card and credit card as well as the purchase price of the Gift Card and the Dining Card, respectively, Plaintiffs relied upon

26

the honesty of American Express that it would not insert illegal, unconscionable and/or unenforceable terms and conditions in the arbitration provision of the agreement or other terms of the agreement, respectively, since, among other things, they had no duty to and did   not suspect the dishonesty of American Express.

44.    Plaintiffs, as reasonable consumers, were unaware of the illegality or unconscionability of the arbitration provision or of the card agreement as a whole, respectively, at the times they entered into their agreement with American Express and paid the fees requested from them.

45    Arbitration, pursuant to a contractual arbitration provision, is a speedy and inexpensive means of dispute resolution in comparison to judicial proceedings that can, under a conscionable and enforceable arbitration provision, be beneficial to card holders.

46.    The arbitration provision is a material term of the American Express card agreement.

47.    The ability of Plaintiffs to demand arbitration under an enforceable and legal arbitration provision is an important and material factor relied upon by them in agreeing to enter into the American Express agreements and to pay their fees.

48.    Plaintiffs are advised and believe, and thereon allege, that the right to mandatory arbitration has a pecuniary value that reflects, in whole or in part, the fees paid by them for their cards and their respective use of their cards.

49.    Plaintiffs are advised and believe, and thereon allege, that if the arbitration provision contained in the agreement relating to their charge and credit cards is unconscionable, illegal and unenforceable, Plaintiffs received something lower in value than that for which they paid and, as a result, they have lost money as a result of the unconscionability, illegality, and unenforceability of the American Express-imposed arbitration provision.

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

50.    Plaintiffs are advised and believe, and thereon allege, that the rights provided them by the card agreement to American Express' charge cards, credit cards, gift cards and dining cards, respectively, have a pecuniary value that reflects, in whole or in part, the fees paid by them for their cards and their respective use of their cards.

51.    Plaintiffs are advised and believe, and thereon allege, that if the cardmember agreement, in whole or in part, is unconscionable, illegal and unenforceable, Plaintiffs received something lower in value than that for which they paid and, as a result, they have lost money as a result of the unconscionability, illegality, and unenforceability of the American Express-imposed card agreement.

52.    Plaintiff Lee is advised and believes, and thereon alleges, that the right to mandatory arbitration contained in the Gift Card and Dining card agreement, respectively, has a pecuniary value that reflects, in whole or in part, the fee paid by for his gift card and dining card, respectively.

53.    Plaintiff Lee is advised and believes, and thereon alleges, that if the arbitration provision relative to the gift card and dining card is unconscionable, illegal and unenforceable, Plaintiff received something lower in value than that for which he paid and, as a result, he has lost money as a result of the unconscionability, illegality, and unenforceability of the American Express-imposed arbitration provision.

54.    In accepting the contractual terms presented to them by American Express on a "take it or leave it" basis and paying their respective annual fees for the charge card and credit card as well as the purchase price of the Gift Card and Dining Card, Plaintiffs contracted with American Express in reliance with their reasonable belief that American Express would not commit an illegal, unfair, or fraudulent act upon them in presenting them with a form agreement on a "take

it or leave it" basis that contained an arbitration provision and other provisions, respectively, that were and are illegal, unfair, unconscionable, and invalid.

55.    Plaintiffs had no meaningful choice of reasonably available alternative sources for charge cards, credit cards, Gift Cards or Dining Cards (similar to those sold by American Express) free of the terms claimed to be illegal, unconscionable, invalid, and unenforceable: American Express' charge cards are "unique" in that no other issuer issues "charge" cards of the type sold by American Express; American Express' Gift Cards and Dining Cards, which have a national application, are "unique" as well; and, seemingly all credit cards, gift cards, or "charge" cards (assuming that any are issued by other than American Express) issued by American Express and its competitors (including Capital One, Chase, Bank of America, HSBC) contain the same or similar arbitration and other provisions challenged in this action.

56.    Plaintiffs, on behalf of themselves and similarly situated persons, have a technically arbitrable claim against American Express relating solely to the card agreement (without reference to the arbitration provision contained in that provision): i.e., that they were induced to enter into the agreement and paid the fees as a result of American Express' fraud, deceit, and misrepresentations.

57.    Plaintiffs, on behalf of themselves and similarly situated persons, are and have been willing to immediately invoke the American Express arbitration provision so that their fraud claims against American Express would be decided in the arbitral context by an arbitrator if the arbitration provision is conscionable, legal, and enforceable.

58.    Plaintiffs are advised and believe, and thereon allege, that their claim of fraud against American Express in the inducement of the card agreement (without reference to the arbitration provision within that agreement) is an issue that should be decided by an arbitrator under an

David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,
Complaint

enforceable, valid, and consciable arbitration provision, and that would be heard and decided by an arbitrator if such a consciable and enforceable arbitration provision existed here.  See, e.g., Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006); Buckeye Check Cashing Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1987).

59.     Plaintiffs are advised and believe, and thereon allege on behalf of themselves and similarly situated persons, that their invoking the arbitration provision relative to their fraud claims and seeking arbitration of that claim would be against public policy and would otherwise be an illegal act by seeking to enforce an illegal and unconscionable arbitration provision. Plaintiffs further are advised and believe, and thereon allege, on behalf of themselves and similarly situated persons, that it would be futile to invoke arbitration under the unenforceable arbitration provision and that doing so would be a waste of time and money.   See Bertero v. Superior Court, 216 Cal. App. 2d 213, 230 Cal. Rptr. 719 (1963) (parties improperly ordered to arbitrate "would be put to the unnecessary delay and expense of an arbitration, further court proceedings, and an appeal, after which they would be required to start over"), disapproved on other grounds in St. Agnes Medical Center v. PacifiCare of California, 31 Cal.4th 1187, 1192, 8 Cal. Rptr. 3d 517, 82 P.3d 727 (2003).

60.     Plaintiffs are advised and believe, and thereon allege on behalf of themselves and similarly situated persons, that the exercise of their contractual right to demand mandatory arbitration of their fraud claim against American Express would and/or could waive their right and ability to challenge the unconscionability of the arbitration provision and/or the agreement as a whole, respectively.

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

61.    The harm to Plaintiffs' interest, as well as of the interest of similarly situated persons, arising from the inability to enforce the arbitration provision in order to arbitrate their fraud and consumer statute claims (relating only to the agreement and not the arbitration provision) due to its/their unenforceability/unconscionability/illegality, is actual or imminent.

### C.  The American Express Card Agreements

62.    Contained in the 2006 version of the standardized contractual agreement (which is presently used) entered into between Plaintiff Lee (and similarly situated persons he seeks to represent) and American Express relating to charge cards and credit cards is an Arbitration Provision that, in pertinent part, provides

> "As used in this Arbitration Provision, the term 'Claim' means any claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement … and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above Agreements ('Agreements'), except for the validity, enforceability or scope of this Arbitration Provision or the Agreements.  For purposes of this Arbitration Provision, 'you' and 'us' also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchase of any accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of 'Claims.'  'Claim' includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity.  'Claim' also includes claims by or against any third party using or providing any product, service or benefit in connection with any account …  The term 'Claim' is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) any of the accounts created under any of the Agreements, or any balances on any such accounts, (b) advertisements, promotions or oral or written statements related to any such accounts, goods or services financed under any of the accounts or the terms of financing, (c) the benefits and services relation to Cardmembership (including fee-based or free benefit programs, enrollment services and rewards programs), and (d) your application for any account.  We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court. …

31

*Initiation of Arbitration Proceeding/Selection of Administrator.* Any claim shall be resolved, upon the election of you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organizations to which the Claim is referred in effect at the time the claim is filed, except to the extent the Code conflicts with this Agreement. Claims shall be referred to either the National Arbitration Forum (NAF) or the American Arbitration Association (AAA) ….

Significance of Arbitration. IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OUR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTIICPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECFISION WILL BE FINAL AND BININDG. NOTE THAT OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF WE WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

*Restrictions on Arbitration.* If either party elects to resolve a Claim by arbitration, that Claim shall be arbitrated on an individual basis. *There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers or other persons similarly situated.* The arbitrater's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone. Furthermore, Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitrater's award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in the Agreement (including but not limited to the '*Continuation*' provision below and without waiving either party's right to appeal such decision, should any portion of the "*Restrictions on Arbitration*' provision be deemed invalid or unenforceable, then the entir4e Arbitration Provision (with the exception of this sentence) will not apply. … " (Italics and capitalization in original)

Exhibit 19.

63.    The arbitration provision in effect in 2003-05 relative to Plaintiff Lloyd (and those card holders whom he seeks to represent) was similar, albeit not identical, except in the following regards:

32

(a)    The first sentence provided:

"As used in this Arbitration Provision, the term 'Claim' means any claim, dispute or controversy between you and us arising from or relating to your Account; this Agreement … and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above Agreements ('Agreements'), <u>including the validity, enforceability or scope of this Arbitration Provision or the Agreements.</u>"  (Emphasis added denoting change in language from the 2006 provision).

(b)  The ultimate sentence of the "Restrictions on Arbitration" quoted above did not exist and the term provided:

"If any portion of this Arbitration Provision is deemed invalid or unenforceable under any principle or provision of law or equity, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement, each of which shall be enforceable regardless of such invalidity."

Ex. 30.

64.    The arbitration provision pertaining to the Gift card and dining card mirror, in great part, the charge/credit card agreement arbitration provision with the exception of the description of "you" designated the card purchaser and the person to whom the card was given.   <u>See</u> and compare Ex. 17, 18, 28, 29 and 19.  Additionally, the Gift Card and Dining Card agreement's definition of "Claims" contains the pre-2005 amendment and provides:

"As used in this Arbitration Provision, the term 'Claim' means any claim, dispute or controversy between you and us arising from or relating to your Account; this Agreement … and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above Agreements ('Agreements'), <u>including the validity, enforceability or scope of this Arbitration Provision or the Agreements.</u>"  (Emphasis added)

ibid.  A difference does exist between the two since the Dining Card's provision does not contain the "continuation" restriction set forth in paragraph 62 above.  Exhibit 19.

65.    The relevant provisions of the cardmember agreement (excepting the arbitration provision) include:

33

"Changing this Agreement/Assignment of this Agreement. We may change the terms or add new terms to this Agreement at any time, in accordance with applicable law. We may apply any changed or new terms to any then-existing balances on your Account as well as to future balances."

"Our failure to exercise any of our rights under this Agreement, our delay in enforcing any of our rights, or our waiver of our rights on any occasion, shall not constitute a waiver of such rights on any other occasion."

"Applicable Law
This Agreement and your Account [or, relative to the Gift Card and the Dining Card, 'These terms and conditions and your … Card] and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah [or, relative to the Gift Card and Dining Card, "the State of New York USA] (without regard to internal principles of conflicts and laws), and by applicable federal law [the last phrase being omitted from the Gift Card and Dining Card agreement]."

Ex. 17, 18, 19, 28, 29, 30.

## VI.
## Causes of Action

### First Cause of Action
### (Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Illegal Practice Under Civil Code § 1670.5 And The Common Law)

66.   Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50, and 52-64 as though fully set forth herein.

67.   California Bus. & Prof. Code § 17200 provides, in relevant part:

"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice…

68.   California Bus. & Prof. Code § 17203 provides, in relevant part:

"Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments … as may be necessary to prevent the use or

34

employment by any person of any practice which constitutes unfair competition …. or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.  Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 [that he "has suffered injury in fact and has lost money or property as a result of such unfair competition"] …."

69.    California Code of Civil Procedure § 382 provides, in relevant part:

"… when the question is of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

70.    California Civil Code § 1670.5 is the codification of the common law relating to unconscionability of contracts and/or contractual provisions and provides, in relevant part:

"(a)    If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

71.    The arbitration clause, which was inserted into the contract between American Express and Plaintiffs (and other similarly situated persons), is unconscionable, illegal and thereby violates California Civil Code § 1670.5 and the common law relating to unconscionability of contracts and contractual provision in that, among other reasons, it

35

(a)      was imposed on all card holders on a "take it or leave it" basis with no opportunity by the card holder to negotiate any term thereof (see Discover Bank v. Superior Court, 36 Cal.App.4th 148, 159-160, 40 Cal.Rtpr.3d 76 (2005); Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83, 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); Shroyer v. New Cingular Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

(b)      was contained in an adhesive form agreement prepared by American Express and concerning which American Express was in a much stronger bargaining position than the card holder (ibid.; Gentry v. Superior Court, 2007 Cal.LEXIS 9376 (2007);

(c)      provides that all claims "shall be arbitrated on an individual basis" and that no claim "may be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardmembers [or "gift cardholders" or "dining card holders"] or other persons similarly situated" in a situation, as here, involving a class action waiver in the context where predictably only "small" amounts of money are involved (the annual fee or gift/dining card fee) and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card and the diminution in value of that which Plaintiffs and similarly situated card holders received (Gentry v. Superior Court, supra; Discover Bank, supra; Schroyer, supra (adopting Discover Bank); Ting v. AT&T, 319 F.3d 1126, 1150 (9th Cir. 2003); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1176 (9th Cir. 2003));

(d).    provided, until 2005, relative to credit cards and charge cards that an arbitration is mandated of "any claim, dispute, or controversy arising from or relating to your Account; this Agreement … and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above Agreements ('Agreements'), including the validity, enforceability or scope of this Arbitration Provision or the Agreements" and thus infringes on the sole authority of the courts to consider claims that an arbitration provision is unconscionable (Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 405-404, 87 S.Ct. 1801, 103 L.Ed.2d 1038 (1967); Flores v. TransAmerica Home First, Inc., Cal.App.4th 846, 113 Cal.Rptr.2d 376 (2001); and Stirlin v. Supercuts, Inc., 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138 (1997);

(e)    provides with regard to the gift card and dining card, respectively, that an arbitration is mandated of "any claim, dispute, or controversy arising from or relating to your Account; this Agreement … and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above Agreements ('Agreements'), including the validity, enforceability or scope of this Arbitration Provision or the Agreements" in direct contravention of Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), and Nagrampa v. Mailcoups, Inc., 469 F.3d 1257 (9th Cir. 2006);

(f)    provides that "claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you" in a context where, as here, predictably only "small"

37

amounts of money (the fees) are involved and as part of a scheme to deliberately cheat large numbers of its card holders out of the individually "small" amounts represented by the fees paid for the card (Discover Bank v. Superior Court, supra, 36 Cal.App.4th at 153; Szetla v. Discover Bank, 97 Cal.App.4th 1094, 118 Cal.Rptr. 862 (2002);  Comb v. PayPal, Inc., 218 F.Supp.2d 1165, 175 (N.D.Cal. 2002));

(g)    provides a description of the term "us" relating to the non-card holder parties by whom or against whom a claim can be made that must be arbitrated is so vague and overbroad that it is patently insufficient to establish any reasonable expectation or knowledge of the cardholder as to what matters and persons are covered by the agreement;

(h)    provides that no injunctive relief may ever been given in that relief under the agreement can be made only on "an individual basis" not involving "the general public" since the decision maker's "authority is limited to claims between you and us [Defendants and amorphous others] alone" in which relief "is limited to awards to you and us alone. …." even though statutory injunctive relief under the UCL and CLRA are unwaiveable (Broughton v. Cigna Healthplans, 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 334 (1999); Cruz v. PacificCare Health Systems, Inc., 30 Cal.4th 303, 133 Cal.Rptr.2d 58, 66 P.3d 1157 (2003); Davis v. O'Melveny & Meyers, 485 F.3d 1066, 1080 (9th Cir. 2007); Nagrampa v. Mailcoups, Inc., supra, 469 F.3d at 1289-1293;

(i)    provides that all "claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and

claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity" must be arbitrated even though injunction requests under the CLRA and UCL are never arbitrable ((Broughton v. Cigna Healthplans, supra,; Cruz v. PacifiCare Health Systems, Inc., supra.);

(j)    provides that in arbitration "[a]ny Claim shall be resolved … by arbitration pursuant to this Arbitration Provision and the code of procedure of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed.  Claims shall be referred to either the National Arbitration Forum ('NAF') or the American Arbitration Association ('AAA')" [or JAMS with regard to the dining card only] without providing the card holder with copies of the rules of those organizations or specifying which of several code of procedure applies to the arbitration (see Ultimo v. Harper, 113 Cal.App.4[th] 1402, 7 Cal.Rptr.2d 418 (2003); Fitz v. NCR Corp., 118 Cal.App.4[th] 702, 721, 13 Cal.Rptr.2d 88 (2004); Dunham v. Envtl. Chem. Corp. 2006 U.S.Dist.LEXIS 61068 (N.D.Cal. 2006));

(k)    provides no alternative means by which some other arbiter or arbitral organization may be chosen by the card holder;

(l)    provides that "[t]he arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable Code" but fails  to advise of any specific inconsistency those codes may have with the Arbitration Provision (ibid.) ;

(m)    provides no way for the card holder to know at the time he/she initially agreed to arbitrate what the rules would be at the time of the arbitration as well as what inconsistencies existed between the agreement and the Code because American Express has given itself the unilateral right to amend the arbitration provision at any time (including before, during, or after any arbitration) and the arbitration provision otherwise makes the applicable arbitration rules those in effect when the arbitration is filed (see Net Global Marketing, Inc. v. Dialtone, Inc., 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); Ingle v. Circuit City Stores, Inc., 328 F.3d at 1179; Geoffrey v. Washington Mutual Bank, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); Bragg v. Linder Research, Inc., 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); Conglamur v. Circuit City Stores, Inc., 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004));

(n)    provides that "[n]o arbitrator's award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration" which is against public policy by denying any mutual collateral estoppel or precedental value to any decision rendered against American Express;

(o)    provided, until 2005, that "[i]f any portion of this Arbitration Provision is deemed invalid or unenforceable under any principle or provision of law or equity, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement, each of which shall be enforceable regardless of such invalidity" even though all determinations as to severability of the provision is a matter exclusively reserved for the Courts (see California Civil Code § 1670.5(a); Armanderiz, supra, 24 Cal.4[th] at 1121-124; Stirlin, supra, Flores, supra)) ;

40

(p)     provides since 2005 that "should any portion of the "Restrictions on Arbitration' [section containing the class action waiver, the injunction waiver, the no consolidation of arbitral claims term] be deemed invalid or unenforceable, the entire Arbitration Provision (other than this sentence) will not apply" even though all determinations as to severability of the provision is a matter exclusively reserved for the Courts (ibid.); and,

(q)     provides only a vague and overbroad statement of what effect arbitration will have on the legal rights of card holders.

72.    Plaintiffs, as set forth below in paragraph 139-140 (the allegations of which are incorporated herein by reference), bring this action on behalf of themselves and similarly situated persons in 6 subclasses, all of which qualify for certification pursuant to California Code of Civil Procedure § 382 on the grounds that:

(a)     the classes as defined are ascertainable since membership therein is defined by and limited to persons (either California consumers or residents of California depending on whether the class is under the CLRA, the UCL, or the fraud cause of action) having an American Express charge card, credit card, gift card or dining card, respectively, for which a fee was paid during any part of the period covering the limitations period and the time of final judgment under a card agreement containing the same or similar arbitration provision or agreement terms, respectively, as Plaintiffs (copies of which agreements and arbitration provisions are referenced in the class definition). Those classes, each of which is likely to contain at least hundreds of thousands of persons (either consumers or

41

residents) are identifiable by American Express which keeps the records of all such persons, including their last known billing addresses.

(b)    there is a commonality of interests by and between Plaintiffs and the members of the classes they seek to represent that is patent in that

(1)    predominant common questions of law or fact are exclusively involved: i.e., the unconscionability of terms in the arbitration provision and card agreement, respectively, that are common to all of the form provisions and agreements imposed by American Express on a "take it or leave it" basis on the card holders; as to the fraud cause of action, common representations and reliance on the misrepresentations by Plaintiffs and class members exists;

(2)    the Plaintiffs, as class representatives, are typical of the classes and have only claims and defenses that are typical of those of the respective classes in that, for instance, the claims for and quantum of injunctive and restitutionary relief are identical for each member of each class (i.e., the amount of the fee(s) paid by them) or easily subject to proof without separate adjudications; and,

(3)    Plaintiffs can and will adequately represent the interests of the class since they are committed to maintaining the action and are represented by counsel knowledgeable and experienced in consumer and class action law.

(c)    The issues which may be jointly tried (most of which are singularly ones of law), when compared with the issues requiring separate adjudication, are so

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

numerous or substantial that the maintenance of a class action is advantageous to
the judicial process and to the litigants.

### Second Cause of Action
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Illegal Practice Under Civil Code §§ 1668 and 3513**

73.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50, 52-64, 66-72 as though fully set forth herein.

74.    California Civil Code § 1668 provides, in relevant part,

"All contracts which have for their object, directly or indirectly, to exempt anyone
from responsibility for his own fraud, or willful injury to the person or property of
another, or violation of law, whether willful or negligent, are against the policy of
the law."

75.    California Civil Code § 3513 provides, in relevant part,

"Any one may waive the advantage of a law intended solely for his benefit.  But a
law established for a public reason cannot be contravened by a private agreement.

76.    The American Express arbitration provision violates Civil Code §§ 1668 and 3513,
respectively, including, but not limited to, its provisions that no class or representative action
can be maintained, and no injunctive relief may be given to any card holder.  See, e.g., Stroyer
v. New Cingular Wireless Services, Inc., supra, 2007 U.S.App.LEXIS 1560 at * 30; Discover
Bank v. Superior Court, supra, 36 Cal.4th at 160-163, 165.

### Third Cause of Action
**(Arbitration Provision --Violation of Bus. & Prof. Code 17200 et seq. Due To Unfair Practice**

77.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50, 52-64, 66-76 as though fully set forth herein.

43

78.    American Express' arbitration provision, due to its unconscionability and illegality, is an unfair practice that either "offends an established public policy [as represented by Civil Code §§ 1670.5, 1668 and/or 3513] or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," [Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700, 718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy tethered to specific constitutional, statutory or regulatory provisions such as Sections 1670.5, 1668, and/or 3513. Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

79.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair practice under the UCL.    See    Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at 183; People v. McKale, 25 Cal.3d 626, 683-84 (1979); Smith v. State Farm Mutual Automobile Ins Co., supra, 93 Cal.App.4th at 719; State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1104, 53 Cal.Rptr.2d 229 (1996); Lyddon v. Rocha-Albertsen, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); Ting v. AT&T, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

**Fourth Cause of Action**
**(Arbitration Provision (Charge Cards Only) --Violation of CLRA, Civil Code § 1770(a)(19)**

80.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50, 52-64, and 66-72  as though fully set forth herein.

81.    The American Express charge card for which an annual fee is paid is a good or service subject to the requirements of CLRA.

44

82.     Plaintiff sent letters to Kenneth Chenault, Mr. Poulsen, and Mr. Short  (President and CEO of Card, Centurion Bank, and FSB respectively) (all of which were sent certified mail, return receipt requested), Plaintiff Lee pointed out the unconscionability and illegality of the agreement relating to his Gift Card and Dining Card purchase and Green Card card, particularly its arbitration provision, under California law and requested that American Express "'correct, repair, replace or otherwise rectify the goods or services" caused by the violation of California Civil Code § 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision into a contract."  True and correct copies of the letters to Mr. Chennault, Mr. Poulsen, and Mr. Short are Exhibits 32, 33, and 34 hereto, respectively,  and are incorporated herein by reference.  True and correct copies of the return receipt card for these letters to Mr. Chennault, Mr. Poulsen, and Mr. Short are Exhibits 35, 36, and 37 respectively, and incorporated herein by reference.  No response was received by Plaintiff Lee to any of these letters. No return receipt was received for Defendant American Express Travel Related Services Company, Inc., however they did respond to Plaintiff Lee's letter of

83.     By letter dated June 28, 2007 sent to Kenneth Chenault, Mr. Poulsen, and Mr. Short, respectively, (President and CEO of Card, Centurion Bank, and FSB, respectively) (all of which were sent certified mail, return receipt requested), Plaintiff Lloyd pointed out the unconscionability and illegality of the agreement relating to his Platinum American Express charge card, particularly its arbitration provision, under California law and requested that American Express "'correct, repair, replace or otherwise rectify the goods or services" caused by the violation of California Civil Code § 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision into a contract."   True and correct copies of the letter to Mr. Chennault, Mr. Poulsen, and Mr. Short are Exhibits 38, 39, and 40, respectively, and are

45

incorporated herein by reference.  Only two (2) return receipts – that to Mr. Chennault and Poulsen – were received by Mr. Lloyd, a true and correct copies of which are attached as Exhibits 41 and 42 hereto and incorporated herein by reference.  No response to the letters sent was received by Mr. Lloyd.

84.     The actions of American Express in inserting the arbitration provision into the charge card agreement common to Plaintiffs and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

> "(a)    The following unfair methods of competition and unfair or deceptive acts
>
> or practices undertaken by any person in a transaction intended to result or
>
> which results in the sale or lease of goods or services to any consumer are
>
> unlawful:
>
> …  (19).        Inserting an unconscionable provision in the contract."

85.     At all times hereinmentioned, American Express knew that one or more of the terms of the arbitration provision and/or the arbitration provision itself was unconscionable and illegal under California law.  Notwithstanding that knowledge, American Express with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its charge card card agreements.

### Fifth Cause of Action
### (Arbitration Provision (Credit Cards Only) --Violation of CLRA, Civil Code § 1770(a)(19)

86.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50, 52-64, 66-72  as though fully set forth herein.

46

87.    The American Express credit card for which an annual fee is paid is a good or service subject to the requirements of CLRA.

88.    The actions of American Express in inserting the arbitration provision into the credit card agreement common to Plaintiff Lee and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

"(a)    The following unfair methods of competition and unfair or deceptive acts

or practices undertaken by any person in a transaction intended to result or

which results in the sale or lease of goods or services to any consumer are

unlawful:

… (19).        Inserting an unconscionable provision in the contract."

89.    At all times hereinmentioned, American Express knew that one or more of the terms of the arbitration provision and/or the arbitration provision itself was unconscionable and illegal under California law.   Notwithstanding that knowledge, American Express with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its credit card card agreements.

**Sixth Cause of Action**
**(Arbitration Provision (Gift Cards And Dining Cards Only) –**
**Violation of CLRA, Civil Code § 1770(a)(19)**

90.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50, 52-64, 66-72, and 82-83 as though fully set forth herein.

91.    The American Express gift card and dining card for which a purchase fee is paid is a good or service subject to the requirements of CLRA.

47

92.    The actions of American Express in inserting the arbitration provision into the gift card and dining card agreement, respectively, common to Plaintiff Lee and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

"(a)    The following unfair methods of competition and unfair or deceptive acts

or practices undertaken by any person in a transaction intended to result or

which results in the sale or lease of goods or services to any consumer are

unlawful:

… (19).        Inserting an unconscionable provision in the contract."

93.    At all times hereinmentioned, American Express knew that one or more of the terms of the arbitration provision and/or the arbitration provision itself was unconscionable and illegal under California law.  Notwithstanding that knowledge, American Express with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its Gift Card and Dining Card card agreements.

**Seventh Cause of Action**
**(Arbitration Provision (Charge Card Only) --Violation of Bus. & Prof. Code**
**17200 et seq. Due To**
**Illegal Practice In Violation Of Civil Code § 1770 (a)(19)**

94.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs1-4, 6-50, 52-64, and 66-72, 80-83 as though fully set forth herein.

95.    The actions of American Express in inserting the arbitration provision into the charge card agreement common to Plaintiffs and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

"(a)    The following unfair methods of competition and unfair or deceptive acts

or practices undertaken by any person in a transaction intended to result or

48

1   which results in the sale or lease of goods or services to any consumer are

2   unlawful:

3   … (19).        Inserting an unconscionable provision in the contract."

4   96.    That is a violation of California Bus. & Prof. Code § 17200 as it is an act in violation of

5   the CLRA.

6                              **Eighth Cause of Action**
                    **(Arbitration Provision (Credit Card Only) --Violation of Bus. & Prof. Code**
7                            **17200 et seq. Due To**
                    **Illegal Practice In Violation Of Civil Code § 1770 (a)(19)**
8

9   97.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50,

10  52-64, 66-72, 80, 81-83, 86  as though fully set forth herein.

11  98.    The actions of American Express in inserting the arbitration provision into the credit

12  card card agreement common to Plaintiffs' American Express credit card and those similarly

13  situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a)

14  which states that:

15  "(a)    The following unfair methods of competition and unfair or deceptive acts

16  or practices undertaken by any person in a transaction intended to result or

17  which results in the sale or lease of goods or services to any consumer are

18  unlawful:

19  … (19).        Inserting an unconscionable provision in the contract."

20  99.    That is a violation of California Bus. & Prof. Code § 17203 as it is an act in violation of

21

22  the CLRA.

23

24

25
                                      49

**Ninth Cause of Action**
**(Arbitration Provision (Gift Card And Dining Card Only) –**
**Violation of Bus. & Prof. Code**
**17200 et seq. Due To**
**Illegal Practice In Violation Of Civil Code § 1770 (a)(19)**

100.     Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-4, 6-50, 52-64, 66-72, 82-83, 90, 91  as though fully set forth herein.

101.     The actions of American Express in inserting the arbitration provision into the Gift Card card and Dining Card agreement, respectively, common to the Gift Card and Dining Card of Plaintiff Lee and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

     "(a)    The following unfair methods of competition and unfair or deceptive acts

     or practices undertaken by any person in a transaction intended to result or

     which results in the sale or lease of goods or services to any consumer are

     unlawful:

     … (19).      Inserting an unconscionable provision in the contract.".

102.     That is a violation of California Bus. & Prof. Code § 17203 as it is an act in violation of the CLRA.

**Tenth Cause Of Action**
**(Card Agreement (All Cards) – Fraud And Deceit)**

103.     Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16, 22-47, 50-51, 54-61, 65  as though fully set forth herein.

104.     Beginning at least three years prior to the filing of this Complaint and continuing until the present time (and into the future unless enjoined), American Express made misrepresentations to Plaintiffs and similarly situated persons American Express card holders

50

that the terms contained in its card member agreement (excluding its arbitration provision) to its charge cards, credit cards, Gift cards, and Dining Cards, and the card agreement itself was conscionable, legal, and enforceable, and that the controlling law pertaining to those cards was New York law (relative to the Gift Cards and the Dining Cards) and Utah law (relative to the charge cards and credit cards).   These representations were made not only in the card agreement themselves but in direct communications between the card holder and American Express and on the official American Express Internet website.   Specifically, the terms of the card agreement about which these misrepresentations were made are:

(1)  "Changing this Agreement/Assignment of this Agreement.  We may change the terms or add new terms to this Agreement at any time, in accordance with applicable law.  We may apply any changed or new terms to any then-existing balances on your Account as well as to future balances."

(2)  "Our failure to exercise any of our rights under this Agreement, our delay in enforcing any of our rights, or our waiver of our rights on any occasion, shall not constitute a waiver of such rights on any other occasion."

(3)  "Applicable Law

This Agreement and your Account [or, relative to the Gift Card and Dining Card, 'These terms and conditions and your … Card and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah [or, relative to the Gift Card and Dining Card, "the State of New York USA] (without regard to internal principles of conflicts and laws), and by applicable federal law [the last phrase being omitted from the Gift Card and Dining Card card agreement."

51

Ex. 15, 23, 29.    Other representations, common to any inquiries that were made to American

Express concerning the conscionability and legality of its card agreements (or the terms thereof,

excluding the arbitration provision) consonant with the practice of American Express, are of the

type made in the December 11, 2006 letter from Dina Colton to Plaintiff Lee.

105.    These representations made by American Express were in fact false and made with the

intention to deceive and defraud the Plaintiffs and similarly situated persons to induce them to

act in reliance on these misrepresentations by agreeing to the terms of the agreement and paying

fees thereunder.    The true facts are that the identified provisions and the agreement as a whole

are unconscionable and illegal under California law (including precedents of the Ninth Circuit

Court of Appeals and district courts interpreting and applying California law) on the basis that,

for instance, they

> (a)    were  imposed on all card holders on a "take it or leave it" basis with no
>
> opportunity by the card holder to negotiate any term thereof (see Discover Bank
>
> v. Superior Court, (a) was imposed on all card holders on a "take it or leave it"
>
> basis with no opportunity by the card holder to negotiate any term thereof (see
>
> Discover Bank v. Superior Court, 36 Cal.App.4th 148, 159-160, 40 Cal.Rtpr.3d 76
>
> (2005); Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83,
>
> 113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); Shroyer v. New Cingular
>
> Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));
>
> (b)    were contained in an adhesive form agreement prepared by American
>
> Express and concerning which American Express was in a much stronger
>
> bargaining position than the card holder ( Discover Bank v. Superior Court,

*supra*, 36 Cal.App.4[th] at 159-160; <u>Armanderiz v. Foundation Health Psychcare Services, Inc.</u>, <u>supra</u>, 24 Cal.4[th] at 113-114; <u>Shroyer v. New Cingular Wireless Services, Inc.</u>, 2007 U.S.App.LEXIS 19560 ;

(c)     provide American Express with a "right" to make any unilateral modification, including adding new terms to the agreement but provide no such right to the card holder, which makes that provision unconscionable and illegal pursuant to <u>Net Global Marketing, Inc. v. Dialtone, Inc.</u>, 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); <u>Ingle v. Circuit City Stores, Inc.</u>, <u>supra</u>, 328 F.3d at 1179; <u>Geoffrey v. Washington Mutual Bank</u>, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); <u>Bragg v. Linder Research, Inc.</u>, 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); <u>Gonglamur v. Circuit City Stores, Inc.</u>, 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004).

(d)     provide American Express, but not the cardholder, with the ability to take any action without waiving any rights that it might have under the agreement or under the law; and,

(e)     American Express has been, since at least 2005 with the non-appealed (and, hence, final) Order in <u>Berry v. American Express Publishing Co.</u>, <u>supra</u>, on notice not only that its arbitration provision is unconscionable and unenforceable but, importantly, that in spite of its statements to the contrary, the agreement is controlled by California law.

106.   Plaintiffs and similarly situated persons, at the time these representations were made by American Express and at the time Plaintiffs and similarly situated persons took the actions herein alleged, were ignorant of the falsity of American Express' representations and believed

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

them to be true.  In reliance on these representations, Plaintiffs and similarly situated persons were induced to and did enter into the card agreement with American Express.

107.     The aforementioned conduct of American Express was an intentional misrepresentation, deceit, or concealment of a material fact(s) known to American Express with the intention on the part of American Express of thereby inducing Plaintiffs and similarly situated persons into entering the card agreement and making payment of the fees thereunder.  It was despicable conduct that subjected the Plaintiffs and similarly situated persons to a cruel and unjust hardship in conscious disregard of their rights, so as to justify an award of punitive damages.

**Eleventh  Cause of Action**
**(Card Agreement (Charge Cards Only) –**
**Violation of CLRA, Civil Code § 1770(a)(19)**

108.     Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16, 22-47, 50-51, 54-61, 65, 82-83, 105 (a)-(e) as though fully set forth herein.

109.     The American Express charge card for which an annual fee is paid is a good or service subject to the requirements of CLRA.

110     The actions of American Express in inserting unconscionable terms into the charge card card agreement (excepting the arbitration provision) common to Plaintiffs and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

> "(a)    The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

> … (19).       Inserting an unconscionable provision in the contract."

54

111.    At all times hereinmentioned, American Express knew that one or more of the terms of the charge card card agreement (excluding the arbitration provision) and/or the agreement itself was unconscionable and illegal under California law.    Notwithstanding that knowledge, American Express with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those unconscionable terms and/or arbitration provision in its charge card card agreements.

### Twelfth Cause of Action
**(Card Agreement (Credit Cards Only) --Violation of CLRA, Civil Code § 1770(a)(19)**

112    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16, 22-47, 50-51, 54-61, 65, 82-83, 105(a)(e)  as though fully set forth herein.

113.    The American Express credit card for which an annual fee is paid is a good or service subject to the requirements of CLRA.

114.    The actions of American Express in inserting unconscionable provisions into the credit card agreement common to Plaintiff Lee and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

"(a)    The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

… (19).        Inserting an unconscionable provision in the contract."

115.    At all times hereinmentioned, American Express knew that one or more of the terms of the credit card card agreement (excluding the arbitration provision) and/or agreement itself was

55

unconscionable and illegal under California law.  Notwithstanding that knowledge, American Express with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those unconscionable terms in its charge card card agreements.

### Thirteenth Cause of Action
#### (Card Agreement (Gift Cards And Dining Cards Only) – Violation of CLRA, Civil Code § 1770(a)(19)

116.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16, 22-47, 50-51, 54-61, 65, 82-83, 105(a)-(e)  as though fully set forth herein.

117.    The American Express gift card and dining card, respectively, for which a purchase fee is paid is a good or service subject to the requirements of CLRA.

118.    The actions of American Express in inserting the unconscionable terms (excluding the arbitration provision) into the gift card and dining card card agreement, respectively, common to Plaintiff Lee and similarly situated persons was done in violation of Subdivision 19 of California Civil Code § 1770(a) which states that:

> "(a)    The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:
>
> … (19).        Inserting an unconscionable provision in the contract."

119.    At all times hereinmentioned, American Express knew that one or more of the terms of the gift card and dining card card agreement and/or agreement itself were unconscionable and illegal under California law.  Notwithstanding that knowledge, American Express with oppression, fraud or malice and./or in willful and conscious disregard of the laws of California

56

1  and the legal rights of Plaintiffs and similarly situated persons inserted and maintained those

2  unconscionable terms and/or agreement in its charge card card agreements.

3
### Fourteenth Cause of Action
**(Card Agreement (Charge Card Only) --Violation of Bus. & Prof. Code 17200 et seq.**
4  **Due To Illegal Practice Under Civil Code § 1670.5**
**And The Common Law)**

5
6  120.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16,

7  22-47, 50-51, 54-61, 65, 82-83, 105(a)-(e) as though fully set forth herein.

8  121    Various of the card agreement terms (excepting the arbitration provision) and the

9  agreement itself which was inserted into the contract between American Express and Plaintiffs

10  (and other similarly situated persons), is unconscionable, illegal and thereby violates California

11  Civil Code § 1670.5 and the common law relating to unconscionability of contracts and

12  contractual provision in that, among other reasons, it

13          (a)      were  imposed on all card holders on a "take it or leave it" basis with no

14  opportunity by the card holder to negotiate any term thereof (see Discover Bank

15  v. Superior Court, (a) was imposed on all card holders on a "take it or leave it"

16  basis with no opportunity by the card holder to negotiate any term thereof (see

17  Discover Bank v. Superior Court, 36 Cal.App.4th 148, 159-160, 40 Cal.Rtpr.3d 76

18  (2005); Armanderiz v. Foundation Health Psychcare Services, Inc., 24 Cal.4th 83,

19  113-114, 99 Cal.Rptr.2d 745, 6 P.3d 669 (2000); Shroyer v. New Cingular

20  Wireless Services, Inc., 2007 U.S.App.LEXIS 19560 (9th Cir. 2007));

21          (b)      were contained in an adhesive form agreement prepared by American

22  Express and concerning which American Express was in a much stronger

23  bargaining position than the card holder (ibid.);  Discover Bank v. Superior Court,

24
25

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

*supra*, 36 Cal.App.4[th] at 159-160; <u>Armanderiz v. Foundation Health Psychcare Services, Inc.</u>, <u>supra</u>, 24 Cal.4[th] at 113-114; <u>Shroyer v. New Cingular Wireless Services, Inc.</u>, 2007 U.S.App.LEXIS 19560 ;

(c)    provide American Express with a "right" to make any unilateral modification, including adding new terms to the agreement but provide no such right to the card holder, which makes that provision unconscionable and illegal pursuant to <u>Net Global Marketing, Inc. v. Dialtone, Inc.</u>, 217 Fed.Appx. 598, 2007 U.S.App.LEXIS 674 (9th Cir. 2007); <u>Ingle v. Circuit City Stores, Inc.</u>, <u>supra</u>, 328 F.3d at 1179; <u>Geoffrey v. Washington Mutual Bank</u>, 484 F.Supp.2d 1115, 1123 (S.D.Cal. 2007); <u>Bragg v. Linder Research, Inc.</u>, 487 F.Supp.2d 593, 609 (E.D.Pa. 2007)(applying California law); <u>Conglamur v. Circuit City Stores, Inc.</u>, 2004 Cal.App.Unpub.LEXIS 8140 at *13-14 (2004).

(d)    they provide American Express, but not the cardholder, with the ability to take any action without waiving any rights that it might have under the agreement or under the law; and,

(e)    American Express has been, since at least 2005 with the non-appealed (and, hence, final) Order in <u>Berry v. American Express Publishing Co.</u>, <u>supra</u>, on notice not only that its arbitration provision is unconscionable and unenforceable but, importantly, that in spite of its statements to the contrary, the agreement is controlled by California law.

1
2

### Fifteenth  Cause of Action
(Card Agreement (Credit Card Only) --Violation of Bus. & Prof. Code 17200 <u>et</u> <u>seq.</u>
Due To Illegal Practice Under Civil Code § 1670.5
And The Common Law)

3
4

122.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16,

5

22-47, 50-51, 54-61, 65, 82-83, 105(a)-(e), and 118  as though fully set forth herein.

6

123.    Various of the credit card card agreement terms (excepting the arbitration provision) and

7

the  agreement  itself  which  was  inserted  into  the  contract  between  American  Express  and

8
9

Plaintiffs (and other similarly situated persons), is unconscionable, illegal and thereby violates

10

California Civil Code § 1670.5 and the common law relating to unconscionability of contracts

11

and contractual provision for the reasons enumerated in paragraph 118 above, all of which are

incorporated herein by reference.

12

### Sixteenth Cause of Action
(Card Agreement (Gift Card And Dining Card Only)
--Violation of Bus. & Prof. Code 17200 <u>et</u> <u>seq.</u>
Due To Illegal Practice Under Civil Code § 1670.5
And The Common Law)

13
14

15

124.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16,

16

22-47, 50-51, 54-61, 65, 82-83, 105(a)-(e), and 118  as though fully set forth herein.

17

125.    Various of the Gift Card and Dining Card card agreement terms (excepting the

18

arbitration provision) and the agreement itself which was inserted into the Gift Card and Dining

19
20

Card contract, respectively, between American Express and Plaintiffs (and other similarly

21

situated persons), is unconscionable, illegal and thereby violates California Civil Code § 1670.5

22

and the common law relating to unconscionability of contracts and contractual provision for the

23

reasons specified in paragraph 118 above, all of which are incorporated herein by reference.

24
25

59

**Seventeenth Cause of Action**

**(Card Agreement (Charge Cards) --Violation of Bus. & Prof. Code 17200 et seq.
Due To Unfair Practice)**

126.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16, 22-47, 50-51, 54-61, 65, 82-83, 105(a)-(e), and 118 as though fully set forth herein.

127.    American Express' charge card agreement and/or its specified terms (excluding the arbitration provision), due to its unconscionability and illegality, is an unfair practice that either "offends an established public policy [as represented by Civil Code §§ 1670.5, 1668 and/or 3513] or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," [Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700, 718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy tethered to specific constitutional, statutory or regulatory provisions such as Sections 1670.5, 1668, and/or 3513. Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

128.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair practice under the UCL. See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at 183; People v. McKale, 25 Cal.3d 626, 683-84 (1979); Smith v. State Farm Mutual Automobile Ins Co., supra, 93 Cal.App.4th at 719; State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1104, 53 Cal.Rptr.2d 229 (1996); Lyddon v. Rocha-Albertsen, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); Ting v. AT&T, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

**Eighteenth Cause of Action**
**(Card Agreement (Gift Cards and Dining Cards Only)**
**--Violation of Bus. & Prof. Code 17200 et seq.**
**Due To Unfair Practice**

129.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16, 22-47, 50-51, 54-61, 65, 82-83, 105(a)-(e), and 118  as though fully set forth herein.

130.    American Express' Gift Card and Dining Card card agreements, respectively, and/or their specified terms (excluding the arbitration provision), due to its unconscionability and illegality, is an unfair practice that either "offends an established public policy [as represented by Civil Code §§ 1670.5, 1668 and/or 3513] or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," [Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700,   718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy tethered to specific constitutional, statutory or regulatory provisions such as Sections 1670.5, 1668, and/or 3513.  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

131.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair practice under the UCL.  See  Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at 183; People v. McKale, 25 Cal.3d 626, 683-84 (1979); Smith v. State Farm Mutual Automobile Ins Co., supra, 93 Cal.App.4th at 719; State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1104, 53 Cal.Rptr.2d 229 (1996); Lyddon v. Rocha-Albertsen, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); Ting v. AT&T, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

### Nineteenth Cause of Action
### (Card Agreement (Credit Cards) –Violation of Bus. & Prof. Code 17200 et seq. Due To Unfair Practice

132.    Plaintiffs  repeat and re-allege each of the allegations contained in paragraphs 1, 5, 6-16, 22-47, 50-51, 54-61, 65, 670-70, 72, 82-83, 105(a)-(e), 118, and 129-131  as though fully set forth herein.

133.    American Express' credit card card agreement and/or its specified terms (excluding the arbitration provision), due to its unconscionability and illegality, is an unfair practice that either "offends an established public policy [as represented by Civil Code §§ 1670.5, 1668 and/or 3513] or … is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," [Smith v. State Farm Mutual Automobile Ins. Co., 93 Cal.App.4th 700,  718-719, 113 Cal.Rtpr.2d 399 (2001)], or which violates public policy tethered to specific constitutional, statutory or regulatory provisions such as Sections 1670.5, 1668, and/or 3513.   Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 187, 83 Cal.Rptr.2d 548, 973 P.2d 527.

134.    An unconscionable contract or contract provision or term is, as a matter of law, an unfair practice under the UCL.  See   Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at 183; People v. McKale, 25 Cal.3d 626, 683-84 (1979); Smith v. State Farm Mutual Automobile Ins Co., supra, 93 Cal.App.4th at 719; State Farm Fire & Casualty Co. v. Superior Court, 45 Cal.App.4th 1093, 1104, 53 Cal.Rptr.2d 229 (1996); Lyddon v. Rocha-Albertsen, 2006 U.S.Dist.LEXIS 78957 (E.D. Cal. 2006); Ting v. AT&T, 182 F.Supp.2d 902, 921-22, aff'd in part, rev'd on other grounds in part, 319 F.3d 1126, 1150 (9th Cir. 2003).

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

**Twentieth Cause Of Action**
**(Declaratory Judgment As To All Cards)**

135.    Plaintiffs repeat and re-allege each of the allegations contained in paragraphs 1-134 as though fully set forth herein.

136.    An actual controversy has arisen and now exists between Plaintiffs and American Express concerning the unconscionability and illegality of American Express' card agreement and arbitration provision contained in that card agreement, respectively, that is common to all charge cards, credit cards, gift cards, and dining cards issued by American Express for which a fee is paid by the card holder.   Plaintiffs take the position that the card agreement and the arbitration provision contained therein are unconscionable and illegal under controlling California and Ninth Circuit law and precedents.  American Express takes the obverse position claiming that its card agreement and its arbitration provision contained therein is conscionable and legal.

137.    Plaintiffs desire a judicial determination of their rights and duties, and a declaration that the arbitration provision and/or the card agreement and/or specified terms of the card agreement are unconscionable, illegal and unenforceable.

138.    A judicial determination is necessary and appropriate at this time under the circumstances in order that Plaintiffs may ascertain their rights and duties.

**Class Allegations**

139.    The Plaintiffs are members of classes of consumers and residents of California, respectively, and the members of these classes of consumers and residents of California are similarly situated and similarly affected by the acts of American Express.

David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,
Complaint

140.   Pursuant to Fed.R.Civ.P. 23(b)(2) and, alternatively (b)(3)(insofar as an award of equitable statutory and non-statutory restitutionary and injunctive relief is secondary to any punitive damages monetary award), Plaintiffs seek certification of the following classes and subclasses:

(a)     Relative to all UCL and fraud causes of action,

(1)     All persons and entities residing in California who, according to the records of American Express, have been issued and have paid or are paying annual fees to American Express for American Express charge cards, credit cards, Gift cards, and/or Dining Cards issued by American Express Travel Related Services, Inc. (including its subsidiaries, affiliates, or licensees) bearing the American Express name or the American Express trade or service mark or logo pursuant to a card agreement containing the same or similar terms and provisions as those contained in Exs. 15, 25, 26, and 29 during any part of the period covered by the applicable limitations period and pendency of this action to the time of final judgment.

(b)     Relative to all CLRA causes of action,

(1)     All consumers residing in California who for personal or household use have been, according to the records of American Express, been issued and have paid or are paying annual fees to American Express for American Express charge cards issued by American Express Travel Related Services, Inc. (including its subsidiaries, affiliates, or licensees) bearing the American Express name or the American Express

64

trade or service mark or logo pursuant to a card member agreement containing the same or similar terms and provisions as those contained in Exs. 15 and 26 during any part of the period covered by the applicable limitations period and pendency of this action to the time of final judgment.

(2)    All consumers residing in California who for personal or household use have been, according to the records of American Express, been issued and have paid or are paying annual fees to American Express for American Express credit cards issued by American Express Travel Related Services, Inc. (including its subsidiaries, affiliates, or licensees) bearing the American Express name or the American Express trade or service mark or logo pursuant to a card member agreement containing the same or similar terms and provisions as those contained in Exs. 15 and 26 during any part of the period covered by the applicable limitations period and pendency of this action to the time of final judgment.

(3)    All consumers residing in California who for personal or household use have or will, according to the records of American Express, purchased American Express Gift Cards and/or Dining Cards issued by American Express Travel Related Services, Inc. (including its subsidiaries, affiliates, or licensees) pursuant to a card agreement containing the same or similar terms and provisions as those contained in Ex. 25 and 29 during any part of the period covered by the applicable

65

limitations period and pendency of this action to the time of final judgment.

141.    Excluded from each class of which Plaintiffs seek certification (a) all officers and employees of American Express Company, including its subsidiaries, affiliates, or licensees; (b) persons who, as of the date of class certification, have pending in any court an individual action against any Defendant named in this action, or who have obtained a judgment against any Defendant named in this action, or who have executed a release in favor of any Defendant named in this action which encompasses, adjudicates or releases all of the certified claims in this action; (c) judges, court personnel, and jurors hearing this matter.

142.    It is impracticable to bring all members of the above classes, as individual plaintiffs, before this court for the reason that the members of the classes are too numerous, representing as they do the fee-paying holders of American Express charge cards, credit cards, gift cards, and dining cards residing in California, the number of which are estimated at approximately 4,000,000 for the charge cards and credit cards, and 100,000 for the Gift Cards and Dining Cards, respectively.

143.    Each member of the Plaintiff classes has suffered an injury of the type and size to that suffered by Plaintiffs and that denial of class relief would result in unjust advantage to Defendants.

144.    Plaintiffs are informed and believe, and thereon allege, that the questions of law or fact common to the classes are substantially similar and predominate over the questions affecting the individual members in that the predominating and primary issues presented are ones of law (i.e., a common core of salient facts and legal theories relating to the unconscionability and illegality of the common "form" arbitration provision and common "form" card agreement, respectively,

David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,
Complaint

imposed by American Express on its card holders) and the relief sought is identical (i.e., restitutionary relief, injunctive relief, and common pool of punitive damages).

145.    The claims and defenses of the Plaintiffs are typical of the claims and defenses of the classes in that there is a commonality of interests by and between Plaintiffs and the members of the classes they seek to represent that is patent in that (a) the nature of the claims are identical and predominant common questions of law or fact are exclusively involved (the unconscionability of terms in the arbitration provision and card agreement, respectively, that are common to all of the form provisions and agreements imposed by American Express on a "take it or leave it" basis on the card holders and, as to the fraud cause of action, common reliance on the misrepresentations by Plaintiffs and class members exists); (b) the    Plaintiffs,    as    class representatives, are typical of the classes and have only claims and defenses that are typical of those of the respective classes in that, for instance, the claims for and quantum of injunctive and restitutionary relief are identical for each member of each class (i.e., the amount of the fee(s) paid by them) or easily subject to proof without separate adjudications.

146.    The interests of the respective classes will be fairly and adequately protected by the plaintiffs for the reasons that the success or failure of the Plaintiffs is identical with the success or failure of each of the members of the classes, no antagonisms exist between the interest of the Plaintiffs and the classes, Plaintiffs are committed to the vigorous prosecution of this action, and Plaintiffs' counsel is experienced and knowledge in the area of consumer protection law and class actions.

147.    A risk exists that prosecution of separate actions by Plaintiffs and the members of the respective classes they seek to represent would create a risk of incompatible or inconsistent

David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,
Complaint

adjudications and incompatible standards of conduct for Defendant or create a risk of prejudice to individual class members not parties to the action.

148.    American Express has acted or refused to act on grounds generally applicable to the class in that it has a common form arbitration and card agreement, respectively, and uniformly refuses to modify its agreement and arbitration provision on grounds generally applicable to the class.

149.    The injunctive, restitutionary, and/or declaratory relief sought by the individual Plaintiffs would benefit the class as a whole.

150.    Common questions of fact or law involving the class claims predominate over questions affecting individual members and a class action is the superior method for a fair and efficient adjudication of the case.

151.    Plaintiffs are advised and believe, and on that basis allege, that as each of the classes and sub-classes as alleged no notice is required in that the statutory injunctive and restitutionary relief as well as declaratory relief sought predominate over any claim for monetary damages in the form of punitive damages.

**Prayer For Relief**

WHEREFORE, Plaintiffs pray on behalf of themselves and all other consumers and residents, respectively, who are similarly situated and constitute the respective classes, which Plaintiffs seek to represent judgment as follows:

a.    For an order requiring Defendants to show cause why they should not be enjoined as hereinafter set forth, during the pendency of this action;

b.    For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Defendants and their respective agents, servants, parents, subsidiaries, assigns and

68

**David J. Lee et al. v. American Express Travel Related Services, Inc., et al.,**
**Complaint**

employees, and all persons acting under, in concert with, or for it from enforcing the Arbitration Provision of the American Express card agreement found to be unenforceable because of unconscionability or illegality.

c.      For a temporary restraining order, a preliminary injunction and a permanent injunction, all enjoining Defendants and their respective agents, servants, parents, subsidiaries, assigns and employees, and all persons acting under, in concert with, or for it from enforcing the American Express card agreement found to be unenforceable because of unconscionability or illegality, or fraud.

d.      For non-statutory and/or statutory restitution (including disgorgement of profits).

e.      For punitive damages relative to the CLRA and fraud causes of action, respectively.

f.      For declaratory judgment.

h.      For attorney's fees and costs as authorized by statute as to the CLRA claims and by precedent as to the respective UCL and fraud causes of action.

i.      For such other and further relief was the court may deem proper.


Dated: September 17, 2007                                    Respectfully submitted,




                                                    _____
                                                    Matthew S. Hale
                                                    Attorney for Plaintiffs

69