

HOME | PERSONAL CARDS | FINANCIAL SERVICES | TRAVEL | SMALL BUSINESS | CORPORATIONS | MERCHANTS

**PERSONAL CARDS**

Site Help | Search | Contact Us | ▶ **LOG IN**

Manage Your Account | Explore Rewards & Benefits | Additional Products & Services | Apply for a Card

**GET STARTED...**

Gift Cards & Gift Cheques Home

**LEARN MORE ABOUT...**

Be My Guest Cards

**MANAGE...**

Available Funds & Transaction History

**GET HELP...**

Frequently Asked Questions

Terms and Conditions

**THE BE MY GUEST® DINING CARD**
Recipient Terms and Conditions



**American Express Gift Card**
INSTEAD OF ONE PLACE, THEY'RE GOOD ALL OVER THE PLACE.

**For Small Business & Corporate Orders**
CLICK HERE TO VISIT OUR CORPORATE ALLIANCE WEB SITE FOR MORE INFORMATION.



**The Travelers Cheque Card**
THE SAFETY OF TRAVELERS CHEQUES. THE CONVENIENCE OF A CARD.

Congratulations for receiving a new Be My Guest Dining Card, the gift that you can use when you dine at any Restaurant accepting the American Express Card in the United States These terms and conditions govern your use of the Be My Guest® Dining Card ("Be My Guest Dining Card" or "Card") that you have received as a gift. By signing or using the Be My Guest Dining Card, you are agreeing to these terms and conditions. The terms "you" and "your" refer to the person who received the Be My Guest Dining Card and whose signature appears on it. The terms "we" and "us" refer to American Express Travel Related Services Company, Inc.

### THE BE MY GUEST DINING CARD

The Be My Guest Dining Card is an electronic Be My Guest Dining Card designed to be used solely at restaurants in the United States. Like a paper Gift Cheque, the Card is a prepaid payment product. It is not a credit card, charge card or debit card. Your Be My Guest Dining Card is sent to you in a Card carrier that indicates the amount of funds that have been loaded onto your Card. The value of the funds that are loaded onto the Card and are available for spending is referred to herein as the "Available Funds." As you use the Be My Guest Dining Card, the Card?s Available Funds will be reduced by the full amount of each purchase including tips, taxes, charges and other fees, if any. You may not use the Card for any amount that exceeds the Available Funds or after the "valid thru" date printed on its face.

### BEFORE USING THE CARD

Before using your Be My Guest Dining Card, it must be: (i) activated by calling 1-877-388-2329 and (ii) signed by you on the reverse of the Card, where indicated. In addition we suggest that you write down the Card number and the customer service number on a separate piece of paper in case the Card is lost or stolen. See section below entitled "Refunds."

At the time of activation, for your protection and for compliance purposes, we may request some additional identification verification information from you. Such data will be held in confidence in accordance with the section below entitled "Data Protection and Privacy".

### USING THE CARD

To use the Card at a restaurant that accepts American Express Cards, simply present the Card at the time of payment, and sign the receipt with the same signature you have used when you signed the Card. You may wish to retain the receipt as a record of the transaction. The Be My Guest® Dining Card can be used to pay the full amount of the meal including tip and applicable taxes, so long as the balance of the card is sufficient.

The Be My Guest® Dining Card can also be used to pay part of the total meal and the rest with another form of payment accepted by the restaurant. Please note that restaurants often add a fixed percentage (approximately 20%) to the authorization amount when they swipe your card to receive approval. This is very common in restaurants to cover the tipping charge that would normally be added to the transaction amount. This may result in a decline or it may result in a "hold" for the additional amount on your Available Balance. Once the actual transaction is cleared between American Express and the restaurant merchant, American Express will remove the hold on any additional funds. For example, if your meal totaled $60 but the restaurant authorized for $60 and you paid only the $50 for the meal with your Card and the tip in cash, then the additional $10 would be held until the American Express receives confirmation that the transaction was for $50 (usually within 3 and 7 days). To avoid this, you can generally ask the restaurant to only authorize the amount you have requested." You agree:

- That American Express is authorized to deduct the amount of your purchases, together with any other fees, taxes, or charges from the funds loaded on your Be My Guest Dining Card whenever your Card is used to make a purchase.
- To track your spending and not to use the Card for any amount that exceeds the Available Funds.
- Not to use the Card after the "valid thru" date printed on its face.
- Not to permit any other person to use the Be My Guest Dining Card issued to you.
- Not to use the Card at any locations other than restaurants located in the United States
- Not to use the Card for any illegal purposes.
- To keep the Card securely and treat it like Cash. If your Card is lost or stolen you can only obtain a refund of the amounts still remaining on the Card as of the time you notify us of the loss.
- To notify us at once if the Card is lost or stolen. See the section entitled "Refunds" below. Please note that purchases made with Be My Guest Dining Cards are similar to those made with cash or travelers checks. You cannot "stop payment" or lodge a "billing dispute" on such transactions. Any problems or disputes you may have regarding the transaction should be addressed directly with the establishment.

**INFORMATION ABOUT AVAILABLE FUNDS**

You should keep track of the amount of Available Funds on the Be My Guest Dining Card issued to you. You may call us at any time using the Customer Service number shown on your Card to obtain the current Available Funds amount. You may also request information about previous transactions by calling Customer Service. Your Available Funds will reflect all transactions that have been posted to our system.

If you have a question or a problem about a transaction posted to your Be My Guest Dining Card (for example, a transaction that appears to be a duplicate transaction) you must notify us immediately, and no later than sixty (60) days from the date of the transaction. You must tell us your Card number, the date and dollar amount of the error, and describe the error and explain as clearly as you can why you believe there is an error. If we ask you to put your dispute in writing, you agree to do so within five (5) business days. We will investigate and will notify you of the results of our investigation within sixty (60) business days.

**REFUNDS**

If your Be My Guest Dining Card is lost, stolen or used improperly, **CONTACT US IMMEDIATELY** at the Customer Service number shown on the Card. You will be asked to provide us with the Card number and other identifying details. **We cannot provide a refund if you do not have your Card number available.** If our records show that there are still Available Funds remaining on the Card, we will cancel the Card and refund such Available Fund amounts to you. IMPORTANT: PLEASE SAFEGUARD YOUR CARD SECURELY AND TELL US IMMEDIATELY IF THE CARD IS LOST OR STOLEN. UNFORTUNATELY, NO REFUNDS WILL BE PROVIDED FOR AMOUNTS DEBITED FROM YOUR LOST/STOLEN CARD BEFORE YOU NOTIFY US.

**TRANSACTIONS IN EXCESS OF AVAILABLE FUNDS**

It is your responsibility to keep track of your spending on the Be My Guest Dining Card. You may also contact us for information on the amount of Available Funds on the Be My Guest Dining Card (see "Information About Available Funds" above). If you attempt to use the Card when there are insufficient Available Funds for the transaction in question, the transaction in most instances will be declined. However, if due to a systems malfunction or for any reason whatsoever, a transaction occurs despite insufficient Available Funds on the Card (creating a "negative" amount, referred to herein as a "Shortage"), you agree to reimburse us, upon request, for the amount of the Shortage. In addition, we reserve the right to charge you a Shortage fee of $15 per transaction whenever you either create or enlarge the Shortages on your Be My Guest Dining Card.

**"VALID THRU" DATE - VALUE LOADED DOES NOT EXPIRE**

Please note that the Be My Guest Dining Card has a "valid thru" date indicated on the face of the Card. That is the date after which you may not use that Card. However, exceeding the "valid thru" date does not mean the Available Funds that are on the Card expire. If Available Funds remain on the Card after the "valid thru" date, simply contact us at the Customer Service number on the Card for instruction on how to redeem the Available Funds. We may reissue a Card to you, and if so, we reserve the right (subject to applicable law) to charge you a Reissuance Fee of $5.95. Or, if you wish, you may request a check to be issued with any Available Funds on the Card, for a check-issuance fee of $10. In this instance, American Express reserves the right to hold funds for ten (10) business days before redeeming any such Available Funds.

**SERVICE FEES**

You may leave Available Funds on the Card as long as you wish and may contact us at any time to redeem them, but if Available Funds remain on the Card for more than 12 months from the purchase date, we may deduct from the Available Funds a Service Fee of $2.00 per month beginning on the first month after 12 months from the purchase date. **Note: Such Service Fees will not apply in any state or jurisdiction in which they are prohibited or restricted.**

**NO WARRANTY OF AVAILABILITY OR UNINTERRUPTED USE**

From time to time the Be My Guest Dining Card service may be inoperative, and when this happens, you may be unable to use your Card or obtain information about Available Funds on your Card. Please notify us if you have any problems using your Be My Guest Dining Card. You agree that American Express is not responsible for any interruption of service.

**NO WARRANTY REGARDING GOODS AND SERVICES**

American Express is not responsible for the quality, safety, legality, or any other

9/11/2007 8:45 PM

aspect of any goods or services purchased by you with your Card.

**REFUSAL OF CARD**

American Express will not be liable for the failure of any restaurant to honor the Be My Guest Dining Card.

**CHANGING THESE TERMS AND CONDITIONS/CARD CANCELLATION**

We may change the terms of or add new terms to this Agreement at any time, in accordance with applicable law. In addition, we may suspend, cancel, add, modify or delete any feature offered in connection with your Be My Guest Dining Card at our sole discretion at any time, with or without cause, and without giving you notice, subject to applicable law. If we cancel your Card, any Available Funds remaining on the Card upon such cancellation after payment for all of your transaction and applicable fees will be returned to you. We may condition reimbursement upon return of the Card, in the event the Card has not expired. The Be My Guest Dining Card is the property of American Express.

**ASSIGNMENT WAIVER**

We may assign this Agreement at any time without notice to you. However, if we assign this Agreement, the terms of this Agreement will remain substantially and materially the same unless you are notified. In the event we reimburse you for a refund claim you have made or if we otherwise provide you with a credit or payment with respect to any problem arising out of any transaction made with the Be My Guest Dining Card, you are automatically deemed to assign and transfer to us any rights and claims (excluding tort claims) that you have, had or may have against any third party for an amount equal to the amount we have paid to you or credited to your Be My Guest Dining Card. You agree that you will not pursue any claim against or reimbursement from such third party for the amount that we paid or credited to your Card, and that you will cooperate with us if we decide to pursue the third party for the amount paid or credited. If we do not exercise our rights under this Agreement, we do not give up our rights to exercise them in the future.

**DATA PROTECTION AND PRIVACY INFORMATION WE COLLECT**

As part of providing you with the Be My Guest Dining Card, we obtain nonpublic personal information ("Cardholder Information") about you, including:

- Information provided to us by the Be My Guest Dining Card purchaser, such as your name and/or your address.
- Information you provide to us at the time of activation.
- Information about purchases you make with the Be My Guest Dining Card, such as the date of the purchase, the amount and the place of purchase.

In addition, we may obtain information from providers of identity verification data and demographic information, in connection with our efforts to protect against fraudulent or unauthorized use of the Be My Guest Dining Card.

**INFORMATION SECURITY**

Only those persons who need it to perform their job responsibilities are authorized to have access to Purchaser Information. In addition, we maintain physical, electronic, and procedural security measures that comply with federal regulations to safeguard Purchaser Information.

**DISCLOSURE**

To process Be My Guest Dining Card transactions, to provide customer service, to process claims for lost or stolen Cards, to develop marketing offers, to help protect against fraud, and to conduct research and analysis, it?s often necessary for us to disclose Cardholder Information to companies that work with us. For example, we may provide certain Purchaser Information to companies, including American Express Affiliates that perform business operations or services, including marketing services, on our behalf. And we may provide certain Cardholder Information to others outside of American Express as permitted by law, such as to government entities or other third parties in response to subpoenas.

**OFFERS**

We may develop marketing programs and send you offers for products and services that you may find of value. We do not share customer addresses with other companies for them to market their own products and services. Choice: If you prefer not to receive offers, you may opt out by calling us in the US toll free at 1-800-722-8614 or collect outside the US at 1-801-945-9450. If you opt out from

receiving these offers, we may still send important information about the Be My Guest Dining Card or other American Express products and services to you.

**TELEPHONE MONITORING/RECORDING**

From time to time we may monitor and/or record telephone calls between you or Additional Be My Guest Dining Cardholders and us to assure the quality of our customer service or as required by applicable law.

**NOTICES**

Any notice given by us shall be deemed given when deposited in the United States mail, postage prepaid, addressed to you at the latest address shown on our records.

**ARBITRATION**

**Purpose:**
This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

**Definitions:**
As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Be My Guest Dining Card or this Agreement as well as any related or prior agreement that you may have had with us or the relationships resulting from this Agreement, including the validity, enforceability or scope of this Arbitration Provision or the Agreement. For purposes of this Arbitration Provision, "you" and "us" also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of "Claims." "Claim" includes claims of every kind and nature, including but not limited to initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. "Claim" also includes claims by or against any third party using or providing any product, service or benefit in connection with the Card or this Agreement (including, but not limited to, third parties who accept the Card, third parties who use, provide or participate in programs accessed with the Card, enrollment services and rewards programs, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) your Be My Guest Dining Card; (b) the amount of Available Funds on the Be My Guest Dining Card; (c) advertisements, promotions or oral or written statements related to the Be My Guest Dining Card, goods or services purchased with the Card; (d) any benefits and services related to the Card; and (e) your enrollment for or activation of the Card. We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.

**Initiation of Arbitration Proceeding/Selection of Administrator:**
Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed. Claims shall be referred to either the National Arbitration Forum ("NAF"), JAMS, or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of one of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select either of the other organizations listed to serve as arbitrator administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows:

- The NAF at P.O. Box 50191, Minneapolis, MN 55404; website at www.arbitration-forum.com.
- JAMS at 1920 Main Street, Suite 300, Los Angeles, CA 92614; website: www.jamsadr.com.
- AAA at 335 Madison Avenue, New York, NY 10017; website: www.adr.org.

****Significance of Arbitration:**
IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO HAVE THEIR CLAIMS RESOLVED EXCEPT AS PROVIDED FOR IN THE CODE OF PROCEDURES OF THE NAF, JAMS OR AAA, AS APPLICABLE (THE "CODE"). FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO

ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR?S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**Restrictions on Arbitration:**
If either party elects to resolve a Claim by arbitration, that Claim shall be arbitrated on an individual basis. There shall be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Cardholders or other persons similarly situated. The arbitrator?s authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator?s authority to make awards is limited to you and us alone. Furthermore, Claims brought by you against us or by us against you may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless otherwise agreed to in writing by all parties.

**Arbitration Procedures:**
This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA"). The arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable Code. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. The arbitration proceeding shall not be governed by any Federal or state rules of civil procedure or rules of evidence. Either party may submit a request to the arbitrator to expand the scope of discovery allowable under the applicable Code. The party submitting such a request must provide a copy to the other party, who may submit objections to the arbitrator with a copy of the objections provided to the requesting party, within fifteen (15) days of receiving the requesting party?s notice. The granting or denial of such a request will be in the sole discretion of the arbitrator who shall notify the parties of his/her decision within twenty (20) days of the objecting party?s submission. The arbitrator shall take reasonable steps to preserve the privacy of individuals, and of business matters. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator?s decision will be final and binding, except for any right of appeal provided by the FAA. However, any party can appeal that award to a three-arbitrator panel administered by the same arbitration organization, which shall consider anew any aspect of the initial award objected to by the appealing party. The appealing party shall have thirty (30) days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel which will conduct an arbitration pursuant to its Code and issue its decision within one hundred and twenty (120) days of the date of the appellant?s written notice. The decision of the panel shall be by majority vote and shall be final and binding.

**Location of Arbitration/Payment of Fees:**
Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other fees) provided by the Code, to the extent that such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in the state or federal court closest to your billing address that would have jurisdiction over the Claim. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

**Continuation:**
This Arbitration Provision shall survive termination of your Be My Guest Dining Card as well as voluntary payment of any shortages in full by you, or any legal proceeding by us to collect a debt owed by you, and any bankruptcy by you or us. If any portion of this Arbitration Provision is deemed invalid or unenforceable under any principle or provision of law or equity, it shall not invalidate the remaining portions of this Arbitration Provision, the Agreement, each of which shall be enforceable regardless of such invalidity.

**APPLICABLE LAW**

This agreement is governed by the laws of the State of New York, USA, excluding choice of law principles. The Be My Guest Dining Card is issued by American Express Travel Related Services Company, Inc. ©2003 American Express Travel Related Services Company, Inc.

9/11/2007 8:45 PM

FDR815126   9/8/06   11:06 PM   Page 1

FDR 815126                                                        GD 25821 (09/06)

# AGREEMENT BETWEEN STARWOOD PREFERRED GUEST® CREDIT CARDMEMBER AND AMERICAN EXPRESS BANK, FSB

**Welcome to American Express Cardmembership**
This document and the accompanying supplement(s) constitute your Agreement. Please read and keep this Agreement. Abide by its terms. When you keep, sign or use the Card issued to you (including any renewal or replacement Cards), or you use the account associated with this Agreement (your "Account"), you agree to the terms of this Agreement. The words "you," "your" and "yours" mean the person who applied for the Account and the person to whom we address billing statements, as well as any person who agrees to be liable on the Account. The "Basic Cardmember" is the person who opened the Account. At your request, we may also issue a Card on your Account to another person (an "Additional Cardmember"). The term "Card" refers to the American Express® Card issued to you, all other Cards issued on your Account, and any other device (such as Account numbers and convenience checks) with which you may access your Account. "We," "our" and "us" refer to American Express Bank, FSB, the issuer of your Account.

**Using the Card**
You may use the Card to obtain goods and services from any person who accepts the Card (" Purchase(s)"). You may also use the Card to obtain loans ("Cash Advance(s)") through various means we may make available (e.g., ATM machines) up to the applicable limits on your Account. At our discretion, we may permit you to transfer balances from other accounts to your Account ("Balance Transfer(s)"). At our discretion, we may issue convenience checks that you can use to access your Account. Each convenience check may be used only by you. You may not use convenience checks to pay any amount you owe under this Agreement or to pay any other account you have with us or our affiliates. Transactions you make in response to promotional offers from us will be subject to the terms of the promotion and this Agreement.

All amounts charged to your Account, including Purchases, Cash Advances, Balance Transfers, convenience checks, annual fee(s), if any, any amounts guaranteed by use of the Card, other fees, and any Finance Charges, are "Charges." A convenience check that we identify as having been made payable to cash, to you, or to a bank, brokerage or similar asset account will be treated as a Cash Advance. Any other convenience check and/or a Balance Transfer will be treated as a Purchase, except as otherwise noted. If you make a Purchase or a Balance Transfer, or use a convenience check, that is governed by a promotional offer from us, the Charge will be included in a Promotional Balance, unless we notify you otherwise.

You agree not to let any person use a Card except a Cardmember whose name is on it. You agree to notify us if the Card is lost or stolen, or you suspect that it is being used without your permission. You agree to use the Account only for Purchases, Cash Advances, or Balance Transfers that are lawful and are permitted under this Agreement. We may issue you renewal or replacement Cards before a previously issued Card expires.

If you or an Additional Cardmember authorize a third party to bill Charges on a recurring basis to your Account ("Recurring Charge(s)"), we may (but are not required to) provide such third party with your current Account status, Card number and/or expiration date to permit that third party to continue billing your Account. We may take such steps even if your account number changes or if we issue a renewal or replacement Card to you or an Additional Cardmember. To withdraw authorization for a Recurring Charge, you must notify the third party.

The Card may be equipped with the ExpressPay feature ("ExpressPay"), which enables you to make Charges without having the Card "swiped" or imprinted at a participating merchant. You agree to use ExpressPay only in accordance with our instructions, and you agree not to attempt to get cash with ExpressPay from any source. You may cancel the ExpressPay feature on the Card or any Additional Card at any time upon notice to us by calling the number on the back of the Card.

**Annual Fee**
The annual fee is $30 for this Account.

**Credit Line**
A portion of your credit line may be available to you for Cash Advances up to your Cash Advance limit. We may, at any time and in our sole discretion, increase and/or decrease your credit line and/or Cash Advance limit. We may limit Charges at an automated teller machine ("ATM") to the lesser of (i) a total of $1,000 in any seven-day period, or (ii) the remaining amount of the Cash Advance limit on your Account; and we may impose additional limits at our sole discretion (in addition to any limits imposed by the ATM's owner). Your billing statements will show your credit line and Cash Advance limit and the unused portions of such

line and limit as of the statement date. You agree to manage your Account so that your balance for Cash Advances (including fees and Finance Charges) will not exceed the Cash Advance limit and your overall balance (including fees and Finance Charges) will not exceed your credit line. You agree to pay us, immediately upon request, the amount of any balance on your Account in excess of any applicable credit line or limit. We reserve the right to decline any attempted Charge, even if the Charge would not cause you to exceed your credit line or limit.

We are not responsible for any losses or other consequences if a transaction on your Account is not approved for any reason, even if you have sufficient credit available. Except as otherwise required by applicable law, we will not be responsible if any merchant refuses to honor the Card or for any other problem you may have with a merchant.

**Promise to Pay**
You promise to pay all Charges, including Charges incurred by Additional Cardmembers, on your Account. This promise includes any Charge for which you or an Additional Cardmember indicated an intent to incur the Charge, even if you or the Additional Cardmember have not signed a charge form or presented the Card. You also promise to pay any Charge incurred by anyone that you or an Additional Cardmember let use the Card, even though you have agreed not to let anyone else use the Card.

**Status and Responsibility for Additional Cardmembers**
Additional Cardmembers do not have accounts with us. Instead, they are authorized users on your Account, and the Cards issued to them may be cancelled by you or us at any time. You must notify us to revoke an Additional Cardmember's permission to use your Account. You are responsible under this Agreement for all use of your Account by the Additional Cardmembers, and by anyone else you or an Additional Cardmember lets use the Card, and the Charges they incur will be billed to you. You have this responsibility even if you did not intend for an Additional Cardmember, or other person, to use the Card for any transactions.

An Additional Cardmember is not liable for Charges incurred by the Basic Cardmember or by other Additional Cardmembers. However, by each use of the Additional Card to incur Charges, the Additional Cardmember indicates his or her agreement to pay us for the Charge if you fail to or refuse to pay it, and we may, at our discretion, pursue Additional Cardmembers for payment of Charges they incur or authorize. You authorize us to provide Account information to Additional Cardmembers and to discuss the Account with them.

You agree to notify each Additional Cardmember, at the time he or she becomes an Additional Cardmember, that we may receive, record, exchange and use information about him or her in the same manner we do with information about you, as described below in the CONSUMER REPORTS, TELEPHONE MONITORING/RECORDING, and SUSPENSION/CANCELLATION sections of this Agreement.

**Billing Statements/Minimum Amount Due**
You must notify us immediately of any change in the mailing or e-mail address to which we send billing statements or notices that a billing statement has been posted ("Billing Address"). If you wish a Billing Address change to apply to more than one account you maintain with us, you must tell us. You agree that we may also update your Billing Address if we receive information that your Billing Address has changed or is incorrect.

The "New Balance" appears on your billing statement. To determine the New Balance, we begin with the outstanding balance on your Account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any Charges, subtract any credits or payments credited as of that billing period, and make other applicable adjustments.

Each billing statement will reflect a Minimum Amount Due. Payment is due by the time and date shown and in the manner prescribed on the statement. To calculate the Minimum Amount Due we will add together the following:
(1)   any amount past due;
(2)   the greatest of:
   a) 1/50th of the New Balance on the Closing Date of the billing statement (the calculation of which is rounded to the nearest whole dollar) (for purposes of this calculation we exclude from the New Balance any over-limit fee added to your Account during the billing period),
   b) the current billed Finance Charges; or
   c) $15 (or the New Balance if it is less than $15); and
(3)   any over-limit fee added to your Account during the billing period.

If the greatest of the three calculations in section (2) above is the current billed Finance Charges, then we will add $15 to the calculation of the Minimum Amount Due. At our option, we may also include in the Minimum Amount Due all or part of other fees incurred during the billing period and any part of the New Balance in excess of your credit line.

The Minimum Amount Due will not exceed the New Balance. You may pay more than the Minimum Amount Due, up to the entire outstanding balance, at any time.

**Payments**
All payments must be sent to the payment address shown on your billing statement and must include the remittance coupon from your billing statement. You must pay us in U.S. currency, with a single draft or check drawn on a U.S. bank and payable in U.S. dollars, or with a negotiable instrument payable in U.S. dollars and clearable through the U.S. banking system, or through an electronic payment method clearable through the U.S. banking system. Your Account number must be included on or with all payments. If we decide to accept a payment made in a foreign currency, you authorize us to choose a conversion rate that is acceptable to us to convert your remittance into U.S. currency, unless a particular rate is required by law.

Payments conforming to the above requirements that we receive no later than the hour specified on your billing statement will be credited to your Account as of the day received; payments conforming to the above requirements that we receive after the hour specified on your billing statement will be credited to your Account as of the following day.

If payment does not conform to the requirements stated above, crediting may be delayed. If this happens, additional Charges may be imposed. We may accept late payments, partial payments or any payments marked as being payment in full or as being settlement of any dispute without losing any of our rights under this Agreement or under the law. Our acceptance of any such payments does not mean we agree to change this Agreement in any way. You agree that an acceptance of such payments will not operate as an accord and satisfaction without our prior express written approval.

*Subject to applicable law, we will apply and allocate payments and credits among balances and Charges on your Account in any order and manner determined by us in our sole discretion.* In most cases, we will apply and allocate payments first to balances at lower **Annual Percentage Rates ("APRs")** and then to higher **APR** balances, and apply Purchase credits first to the balance from which the corresponding debit originated. However, for servicing, administrative, systems or other business reasons, we may apply and allocate payments and credits among balances and to Charges on your Account in some other order or manner that we may determine in our sole discretion. You agree that we have the unconditional right to exercise this discretion in a way that is most favorable or convenient to us.

**Authorization for Electronic Debit to Your Checking Account**
We reserve the right to process checks electronically by transmitting the amount of the check, the routing number, account number and check serial number to your financial institution. By submitting a check for payment, you authorize us to initiate an electronic debit from your bank or asset account. If we process your check electronically, your payment may be debited to your bank or asset account the same day we receive your check. Also, if we process your check electronically, you will not receive that cancelled check with your bank or asset account statement. If we cannot collect the funds electronically, we may issue a draft against your bank or asset account for the amount of the check.

**Finance Charges**
A. Finance Charges begin to accrue for each Charge as of the date the Charge is added to the daily balance, as described below. If payment in full for any New Balance shown on the statement for a billing period is credited to your Account by the Payment Due Date shown on that statement, then Finance Charges will not accrue for Purchases from the date on which payment in full of that New Balance is credited to your Account until the end of the billing period in which such payment is credited to your Account. In addition, Finance Charges will not accrue for Purchases during a billing period if (a) the Previous Balance shown on the billing statement for that billing period is zero or a credit balance, or (b) payment in full for the New Balance, if any, shown on the statements covering the two immediately preceding billing periods is credited to your Account by the

1

FDR815126   9/8/06   11:07 PM   Page 2

respective Payment Due Dates shown on those statements. For purposes of this paragraph, Purchases do not include Balance Transfers or convenience checks.

B. The Daily Periodic Rate ("DPR") for Purchases and the DPR for Cash Advances are each based on an **APR**, which may vary. The **APR** for Cash Advances is the Prime Rate plus 14.99%. A DPR is 1/365th of the **APR**. Your DPRs and **APRs** for Purchases appear on the accompanying supplement(s). When an **APR** changes, we apply it to any existing balance subject to that rate.

C. Effective with billing periods beginning on or after June 17, 2005, notwithstanding the foregoing, unless a higher rate applies under any other provision, the **APR** for all balances except Cash Advances will be equal to the Prime Rate plus 12.99% if during any Review Period any portion of any Minimum Amount Due is not credited to your Account by its Payment Due Date. The "Review Period" is the period, constituting approximately one year, of twelve consecutive billing periods ending with the Closing Date of the current billing period, whether or not you received a statement for each such billing period.

D. Notwithstanding the foregoing, the DPR (and corresponding **APR**) on all balances will increase to the Default Rate if during the Review Period (i) payment of your Minimum Amount Due is not credited to your Account by the Payment Due Date in any two billing periods or (ii) a payment on your Account is not honored by your bank or other financial institution. The "Review Period" is the period, constituting approximately one year, of twelve consecutive billing periods ending with the Closing Date of the current billing period, whether or not you received a statement for each such billing period. If the Default Rate is applied, it will apply to your Account for a minimum of twelve consecutive billing periods, beginning with the current billing period. The Default Rate is a DPR which corresponds to an **APR** equal to the Prime Rate plus 21.99%.

E. The "Prime Rate" is determined once with respect to each billing period. The Prime Rate for each billing period is the Prime Rate published in the Money Rates section (or successor section) of *The Wall Street Journal* on (a) the first day of that billing period or (b) the day that is two days prior to the Closing Date of that billing period, whichever is higher. In each case, if such a day is not a custom-ary publication day for *The Wall Street Journal*, we will substitute the closest preceding day that is a customary publication day. If *The Wall Street Journal* ceases or suspends publication, we may refer to the Prime Rate published in any other newspaper of general circula-tion in New York, New York, or we may substitute a similar reference rate at our sole discretion. Any increase or decrease to an **APR** resulting from a change in the Prime Rate takes effect as of the first day of the billing period. An increase in the Prime Rate means that the variable **APRs** (and corresponding DPRs) applicable to your Account will increase and you may incur higher Finance Charges and may have a higher Minimum Amount Due.

### Average Daily Balance Method for Calculation of Finance Charges

We use the Average Daily Balance method to calculate Finance Charges on your Account. Under this method, we calculate the Finance Charges on your Account by applying the DPR to the Average Daily Balance (as described below) separately for each balance subject to Finance Charges. Different periodic rates may be used for different balances. For example, different DPRs may be applied to separate balances, such as Purchase, Cash Advance, and Promotional Balances. To get the Average Daily Balance for each balance, we: (1) take the beginning balance for each day (including unpaid Finance Charges from previous billing periods), (2) add any new transactions, debits, or fees, (3) subtract any payments or credits credited as of that day, and (4) make any appropriate adjust-ments. *For each day after the first day of the billing period, we also add an amount of interest equal to the previous day's daily balance multiplied by the DPR for the balance.* This gives us the daily balance for the particular balance for that day and the beginning balance for that balance for the next day. If this balance is negative, it is considered to be zero. Then, we add up all the daily balances for each balance for the billing period and divide the total by the number of days in the billing period. This gives us the Average Daily Balance for that balance.

If you multiply the Average Daily Balance for each balance by the number of days in the billing period and the DPR for that balance, the result will be the Finance Charges assessed on that balance, except for variations caused by rounding. The total Finance Charge for the billing period is calculated by adding the Finance Charges assessed on all balances of the Account. *This method of calculating the Average Daily Balance and Finance Charge results in daily compounding of Finance Charges.* We may use mathematical formulas which produce equivalent results to calculate the Average Daily Balance, Finance Charge, and related amounts. For example, we may utilize computer programs or other computational methods that are designed to produce

### Suspension/Cancellation

In addition to any other actions we may take under this Agreement, we may suspend or cancel your Account or any Feature offered in connec-tion with your Account, we may reduce your credit line or cash advance

mathematically equivalent results while using fewer and/or simpler computational steps than are described in this Agreement.

At our discretion, we may exclude certain categories of debit transactions or fees from the calculation of the daily balances. Unless we elect to use a later date, we add a Charge to the daily balance as follows: We add a Cash Advance or Purchase to the appropriate daily balance as of the date of request or the transaction date on the billing statement. We add a convenience check to the appropriate daily balance as of the date of first deposit. We add a Balance Transfer other than through a convenience check to the appropriate daily balance as of the date of the request. We add periodic Finance Charges to the daily balance as described above. We add any other Charge to the appropriate daily balance as of the date of the transaction.

Periodic Finance Charges are added to the outstanding balance at the end of the billing period for which Finance Charges are calculated. In any such billing period, we will impose a minimum **Finance Charge of $0.50**, which will be added to the balance with the highest **APR** unless, for our convenience and in our sole discretion, we choose to add it to a balance with a lower **APR**. In our sole discretion, we also may round any calculations made in determining the Finance Charges on your Account in any way that is convenient to us. Any such rounding may apply to or cause variations in your DPRs.

### Late Fees

We may assess a Late Fee if a payment of at least the Minimum Amount Due is not credited to your Account by the Payment Due Date. The amount of the Late Fee depends on the amount of the Previous Balance on the statement on which the Late Fee appears, as follows:

| Previous Balance | Late Fee |
|---|---|
| Less than $100 | $15 |
| $100 to $1000 | $29 |
| Greater than $1000 | $35 |

### Other Fees

We may charge the following fees to your Account, subject to applicable law. Except as otherwise noted, these fees will be added to the Purchase Balance.

1. *Dishonored Payments*—We may charge a fee of $38 whenever any check, similar instrument, or electronic payment order that we receive as payment on your Account is not honored upon first presentment. If a Card is presented in connection with cashing a check at an American Express Travel Service Office or other authorized location and the check is not honored, we may charge a fee of $38. (We will also add a Charge to the Cash Advance balance of your Account in the amount of the check that was not honored.)

2. *Copies of Statements*—We may charge a fee of $5 for each billing period for which a copy of a billing statement is requested. We will not charge this fee for any request for a copy of any of the billing state-ments for the three billing periods immediately prior to the request.

3. *Account Re-opening Fee*—We may charge a re-opening fee of $25 if your Account is cancelled for any reason and you request reinstate-ment and such request is honored.

4. *Wire Transfers*—We may charge a fee of $15 each time a wire transfer from your Account is initiated and authorized.

5. *Stop Payment Orders*—We may charge a fee of $29 each time we receive a request to stop payment on a convenience check drawn on your Account.

6. *Over-limit Fee*—We may charge a fee of $35 in each billing period the New Balance on your statement exceeds your credit line.

7. *Convenience Check Usage/Balance Transfer Transaction Fee*—We may assess a transaction fee for each Balance Transfer and each convenience check drawn on your Account, as disclosed in the appli-cable Promotional Offer, in the materials accompanying the convenience check, or at the time of the transaction. This fee is a **Finance Charge** and, if assessed, will be added to the same Purchase or Cash Advance balance as the convenience check transaction or Balance Transfer. For convenience checks made payable to cash or to you, a bank, brokerage or similar account, however, unless other-wise disclosed in the applicable Promotional Offer, in the materials accompanying the convenience check, or at the time of the transac-tion, there will be a transaction fee of 3%, with a minimum of $5.

8. *ATM Fee*—We will impose a fee each time a Card is used to obtain cash or any other services from an ATM. This fee will be 3% of the amount of the cash withdrawn or other services obtained (including any additional fee imposed for use of the ATM by its operator), with a minimum of $5. This fee will be added to the Cash Advance balance.

limit (including to a level below your outstanding balance), and/or we may suspend or cancel the authorization of any Additional Cardmember to make Charges to your Account, at our sole discretion at any time, with or without cause, whether or not your Account is in default, and without giving you notice, subject to applicable law. Any such action on our part will not cancel your obligation to pay all Charges due on your Account under the terms of this Agreement in effect at the time of such action or as subsequently amended, and you agree to pay us all such Charges despite any such action. We may advise third parties who accept the Card that the Card(s) issued to you and/or Additional Cardmembers have been cancelled. If we cancel the Card or it expires, you may no longer use it and you must destroy it or return it to us or, if we request, to a third party. If you want to cancel the Account or any Additional Cards, you must notify us and destroy the Card(s).

If we agree to reinstate your Account after a cancellation, the new Agreement we send you (or, if we do not send you a new Agreement, this Agreement as it may be amended) will govern your reinstated Account. When we reinstate your Account, we may reinstate any Additional Cards issued in connection with your Account, and bill you the applicable annual fee(s).

### Default

We may consider your Account to be in default at any time if you fail to pay us any amount when it is due, or if you breach any other promise or obligation under this Agreement.

Subject to applicable law, we may also consider your Account to be in default at any time if any statement made by you to us in connection with this Account or any other credit program was false or misleading; if you breach any promise or obligation under any other agreement that you may have with us or with any of our affiliates; if we receive informa-tion indicating that you are bankrupt, intend to file bankruptcy, or are unable to pay your debts as they become due; or we receive information leading us to conclude that you are otherwise not creditworthy. In evalu-ating your creditworthiness, you agree that we may rely on information our credit characteristics, regardless of your performance on this Account. We may also consider your Account in default in the event of your death.

In the event of your default, and subject to any limitations or require-ments of applicable law, we may require payment of a portion of your outstanding balance greater than the Minimum Amount Due, declare the entire amount of your obligations to us immediately due and payable, and/or suspend or cancel your Account and/or any feature that may be offered in connection with the Account. You agree to pay all reasonable costs, including reasonable attorneys' fees, incurred by us (1) in connection with the collection of any amount due on your Account, whether or not any arbitration, litigation, or similar proceedings are initiated; and (2) in reasonably protecting ourselves from any loss, harm, or risk relating to any default on your Account.

### Transactions Made in Foreign Currencies

If you incur a Charge in a foreign currency, it will be converted into U.S. dollars on the date it is processed by us or our agents. Unless a particular rate is required by applicable law, you authorize us to choose a conversion rate that is acceptable to us for that date. Currently, the conversion rate we use for a Charge in a foreign currency is no greater than (a) the highest official conversion rate published by a government agency, or (b) the highest interbank conversion rate identified by us from customary banking sources, on the conversion date or the prior business day, in each instance increased by 2%. This conversion rate may differ from rates in effect on the date of your Charge. Charges converted by establishments (such as airlines) will be billed at the rates such establishments use.

### Benefits and Features

Subject to applicable law, we have the right to add, modify or delete any benefit, service, or Feature that may accompany your Account at any time and without notice to you.

### Arbitration

*Purpose:* This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

*Definitions:* As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to your Account, this Agreement, the Electronic Funds Transfer Services Agreement, and any other related or prior agreement that you may have had with us, or the relationships resulting from any of the above agreements ("Agreements"), except for the validity, enforce-ability or scope of this Arbitration Provision or the Agreements. For purposes of this Arbitration Provision, "you" and "us" also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of

FDR815126  9/8/06  11:07 PM  Page 3

"Claims." "Claim" includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. "Claim" also includes claims by or against any third party using or providing any product, service or benefit in connection with any account (including, but not limited to, credit bureaus, third parties who accept the Card, third parties who use, provide or participate in fee-based or free benefit programs, enrollment services and rewards programs, credit insurance companies, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) any of the accounts created under any of the Agreements, or any balances on such such accounts, (b) advertisements, promotions or oral or written statements related to any such accounts, goods or services financed under any of the accounts or the terms of financing, (c) the benefits and services related to Cardmembership (including fee-based or free benefit programs, enrollment services and rewards programs), and (d) your application for any account. We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.

*Initiation of Arbitration Proceeding/Selection of Administrator:* Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with this Agreement. Claims shall be referred to either the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of either of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitration administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows:

• NAF at P.O. Box 50191, Minneapolis, MN 55405;
  website: www.arbitration-forum.com.

• AAA at 335 Madison Avenue, New York, NY 10017;
  website: www.adr.org.

*Significance of Arbitration:* IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU OR WE WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

*Restrictions on Arbitration:* IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OTHER CARDMEMBERS OR OTHER PERSONS SIMILARLY SITUATED. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone. Furthermore, claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in this Agreement (including but not limited to the "*Continuation*" provision below) and without waiving either party's right to appeal such decision, should any portion of this "*Restrictions on Arbitration*" provision be deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) shall not apply.

*Arbitration Procedures:* This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16, as it may be amended (the "FAA"). The arbitration shall be governed by the applicable Code, except that to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable Code. The arbitrator shall apply applicable substantive law consistent with the FAA

and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. The arbitration proceeding shall not be governed by any Federal or state rules of civil procedure or rules of evidence. Either party may submit a request to the arbitrator to expand the scope of discovery under the applicable Code. The party submitting such a request must provide a copy to the other party, who may submit objections to the arbitrator with a copy of the objections provided to the requesting party, within fifteen (15) days of receiving the requesting party's notice. The granting or denial of such a request will be in the sole discretion of the arbitrator, who shall notify the parties of his/her decision within twenty (20) days of the objecting party's submission. The arbitrator shall take reasonable steps to preserve the privacy of individuals, and of business matters. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA. However, any party can appeal that award to a three-arbitrator panel administered by the same arbitration organization, which shall consider anew any aspect of the initial award objected to by the appealing party. The appealing party shall have thirty (30) days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel that will conduct an arbitration pursuant to its Code and issue its decision within one hundred and twenty (120) days of the date of the appellant's written notice. The decision of the panel shall be by majority vote and shall be final and binding.

*Location of Arbitration/Payment of Fees:* Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other fees) provided by the Code, to the extent that such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in the state or federal court closest to your billing address that would have jurisdiction over the Claim. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

*Continuation:* This Arbitration Provision shall survive termination of your accounts as well as voluntary payment of the Account balance in full by you, any legal proceeding by you or us to collect a debt owed by the other, any bankruptcy by you or us, and any sale by us of your Account (and in the case of sale, its terms shall apply to the buyer of any of your Account). Except as otherwise provided in the "*Restrictions on Arbitration*" provision above, if any portion of this Arbitration Provision (other than the "*Restrictions on Arbitration*" provision) is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Provision, the Agreement or any predecessor agreement you may have had with us, each of which shall be enforceable regardless of such invalidity.

**Waiver**

Our failure to exercise any of our rights under this Agreement, or any delay in enforcing any of our rights, or our waiver of our rights on any occasion, shall not constitute a waiver of such rights on any other occasion.

**Consumer Reports**

You authorize us to request consumer reports about you, to make whatever credit investigations we deem appropriate, to obtain and exchange any information we may receive from consumer reports and other sources, and to use such information for any purposes, subject to applicable law.

You authorize us to furnish information concerning your Account to consumer reporting agencies, or others, subject to applicable law. If you believe information we have furnished about your Account to a consumer reporting agency is inaccurate, you should write to us at American Express Credit Bureau Unit, P.O. Box 7871, Ft. Lauderdale, FL 33329-7871 and identify the specific information you believe is inaccurate.

You are hereby notified that information about your Account that may have a negative impact on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**Telephone Monitoring/Recording**

You agree that from time to time we may monitor and/or record telephone calls between you or Additional Cardmembers and us to assure the quality of our customer service or as required by applicable law.

**Use of Card at Federal Government Agencies**

American Express has entered into contracts that enable the Card to be accepted at certain federal government agencies and departments ("Agencies"). As with Card transactions at commercial establishments, when you choose to use your Card at an Agency, certain Charge information is necessarily collected by us. Charge information from Card transactions at Agencies may be used for processing Charges and payments, billing and collections activities and may be aggregated for reporting, analysis and marketing activities. Additional "routine uses" of Charge information by Agencies are published periodically in the Federal Register.

**Insurance Products Notice**

We identify insurance providers and products that may be of interest to you. In this role we may act on behalf of the insurance provider, as permitted by law. We receive compensation from insurance providers that may vary by provider and product. Also, we may receive additional compensation or financial benefit when AMEX Assurance Company or another American Express entity acts as the insurer or reinsurer for these products. The arrangements we have with providers, including the potential to insure or reinsure products, may also influence what products and providers we identify.

**Notices**

Any notice given by us shall be deemed given when deposited in the U.S. mail, postage prepaid, addressed to you at the latest Billing Address shown on our records.

**Changing this Agreement/Assignment of this Agreement**

We may change the terms of or add new terms to this Agreement at any time, in accordance with applicable law. We may apply any changed or new terms to any then-existing balances on your Account as well as to future balances. This written Agreement is a final expression of the agreement between the creditor and the debtor and the written Agreement may not be contradicted by evidence of any alleged oral agreement. We may also sell, transfer or assign this Agreement and the Account at any time without notice to you. You may not sell, assign or transfer your Account or any of your obligations under this Agreement.

**Assignment of Claims**

In the event you dispute a Charge and we credit your Account for all or part of such disputed Charge, we automatically succeed to, and you are automatically deemed to assign and transfer to us, any rights and claims (excluding tort claims) that you have, had or may have against any third party for an amount equal to the amount we credited to your Account. After we make such credit, you agree that without our consent you will not pursue any claim against or reimbursement from such third party for the amount that we credited to your Account, and that you will cooperate with us if we decide to pursue the third party for the amount credited.

**Applicable Law**

This Agreement and your Account, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of Utah (without regard to internal principles of conflicts of law), and by applicable federal law. We are located in Utah, hold your Account in Utah, and entered into this Agreement with you in Utah.

AMERICAN EXPRESS, FSB

**TO AMERICAN EXPRESS CARDMEMBERS IN THE UNITED STATES AND ITS TERRITORIES.**

**YOUR BILLING RIGHTS—KEEP THIS NOTICE FOR FUTURE USE.**

This notice contains important information about your rights and our responsibilities under the "Fair Credit Billing Act."

**Notify Us in Case of Errors or Questions About Your Account Statement**

If you think your statement is wrong or if you need more information about a transaction on your statement, write us on a separate sheet of paper at the address for billing inquiries listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can also telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and Account number.

• The dollar amount of the suspected error.

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your Account statement automatically from your savings, checking or other account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the statement was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including Finance Charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your statement that are not in question.

If we find that we made a mistake on your statement, you will not have to pay any Finance Charges related to any questioned amount. If we did not make a mistake, you may have to pay Finance Charges, and you will have to make up any missed payments on the questioned amounts. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your statement, and we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your statement was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with the Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations to this right:

(a)   You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b)   The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**Note for Ohio Residents:** The Ohio laws against discrimination require that all creditors make credit equally available to all credit-worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**AGREEMENT REGARDING THE ACCUMULATION OF STARPOINTS® IN CONNECTION WITH YOUR STARWOOD PREFERRED GUEST® CREDIT CARD FROM AMERICAN EXPRESS**

You will receive one Starpoint for each U.S. dollar of Eligible Spending ( as defined below) charged on your Starwood Preferred Guest Credit Card from American Express ("Card Account"), subject to the terms set forth below and to the Starwood Preferred Guest® loyalty program Terms and Conditions. Starpoints® will be credited to your Starwood Preferred Guest® Account after the billing period in which the Eligible Spending occurs.

You will receive one additional Starpoint for each U.S. dollar of Eligible Spending charged on your Card Account at Starwood branded hotels and resorts then participating in the Starwood Preferred Guest loyalty program, and at standalone retail establishments and online stores that, in each case, are wholly-owned by Starwood Hotels & Resorts Worldwide, Inc. ("Starwood").

If during any calendar year Eligible Spending on your Card Account is $30,000 or more, you (the Basic Cardmember) will be enrolled for at least twelve (12) months in the Gold Preferred Guest level of the Starwood Preferred Guest loyalty program (unless you are already enrolled at that or a higher level). Please allow 12 to 16 weeks after your Eligible Spending equals or exceeds such amount for the applicable calendar year for enrollment in the Gold Preferred Guest level to become effective. Enrollment in the Gold Preferred Guest level will expire after such 12-month period unless Eligible Spending on your Card Account equals or exceeds $30,000 during the next subsequent calendar year or you meet the criteria to maintain Gold Preferred Guest status as specified in the Starwood Preferred Guest loyalty program Terms and Conditions.

Upon each annual renewal of your Card Account, you will receive from Starwood a certificate that offers 50% off regular rack rates for a stay of up to five consecutive nights, exclusive of room tax, gratuities and service charges, at participating Starwood hotels and resorts, subject to

blackout dates and availability of rooms at the time of reservation, and further subject to any additional terms and conditions specified on the certificate.

**Your Card Account must be active (i.e., not cancelled) for any given billing period to earn Starpoints using the Card. In addition, to receive any of the benefits of this Agreement, your Card Account must be active (i.e., not cancelled) at the time such benefit is scheduled to be provided to you.**

You may have more than one Starwood Preferred Guest Credit Card from American Express account; however if you have or had any such account, you are not eligible to receive Bonus Starpoints you may be offered for any other such account. "Eligible Spending" includes purchases of goods or services, which purchases have not been returned or otherwise rescinded, and are not subject to a credit; it does NOT include fees, Finance Charges, Cash Advances (including the use of checks, line activators, automated teller machines or other means of accessing your account), Balance Transfers, or adjustments to your account. We reserve the right not to award any Starpoints for transactions we determine are not made with the good faith intention of consuming the item charged.

Membership in the Starwood Preferred Guest loyalty program and the earning of and redemption of any benefits of the program, including without limitation Starpoints and award certificates, are subject to the Starwood Preferred Guest loyalty program Terms and Conditions and you should refer to that document, which can be found at www.SPG.com, for details on redemption of Starpoints, Starwood's right to change program terms, and other conditions which may apply. We assume no responsibility for and we have no liability for Starpoints credited to your Starwood Preferred Guest Account or any other benefits or features of the Starwood Preferred Guest loyalty program or for the actions of Starwood in connection with your Starwood Preferred Guest Account or otherwise.

We reserve the right to change these terms and conditions at any time, subject to applicable law. Terms used have the meanings assigned to them in the AGREEMENT BETWEEN STARWOOD PREFERRED GUEST CREDIT CARDMEMBER AND AMERICAN EXPRESS BANK, FSB.

**AGREEMENT BETWEEN STARWOOD PREFERRED GUEST® CREDIT CARDMEMBER AND AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. CONCERNING ELECTRONIC FUND TRANSFER SERVICES**

ONCE YOU ENROLL IN PAY BY COMPUTER, PAY BY PHONE OR ANY OTHER AMERICAN EXPRESS ELECTRONIC FUNDS TRANSFER SERVICE (HEREAFTER THE "PROGRAM"), YOU WILL BE SUBJECT TO THIS ELECTRONIC FUNDS TRANSFER AGREEMENT (THE "EFT AGREEMENT").

**Scope of Agreement**

This EFT Agreement covers your participation in the Program. In this EFT Agreement, the words "you" and "your" refer to the Basic Cardmember and also include all Additional Cardmembers who have enrolled in the Program. The words "we," "our" and "us" refer to American Express Travel Related Services Company, Inc. The words "your American Express Accounts" refer to your card account governed by your Cardmember Agreement ("Card Account") or any other American Express Accounts that we permit you to enroll in the Program. The words "your Bank Account" refer to the account held by a bank, securities firm or other financial institution from which payment will be made when you make transactions under the Program. The words "your bank" mean the bank, securities firm or other financial institution that holds your Bank Account. The words "other options" refer to electronic payment transfer options and/or other cash access that American Express may make available from time to time, including the option to pay your Account bill electronically using a computer, phone or other device.

Your Account is governed by the Cardmember Agreement that is attached to this EFT Agreement. That agreement and the capitalized terms in it also apply here.

**Payment for Cash Transactions**

Each time you initiate a transaction under the Program, you instruct and authorize us or our agent to draw a check or initiate an automated clearing house ("ACH") debit in your name on your Bank Account, payable to us or to our agent, in the amount of the transaction. The amount of the transaction is the amount of the Account bill you paid or other funds transfer you authorized, plus any applicable fees or charges.

We may charge a fee of $58 for each check or ACH debit drawn by us or our agent in connection with the Program that is not honored upon first presentment, subject to applicable law. Your bank may also assess its customary charge for such items, if any.

**Dishonored Requests for Payments**

If any check or ACH debit drawn by us or our agent in connection with the Program is not honored by your bank, we have the right to charge the amount of any such transaction, and the dishonored payment fee referred to above, to the Card Account or to collect the amount from you. If this happens, we may cancel your right to participate in the Program.

For certain Bank Accounts, you may have a separate agreement with us or with a participating bank, securities firm, or other financial institution that allows a line of credit to be accessed in the event that your Bank Account contains insufficient funds to make payment to us. You should refer to the appropriate agreement relating to that line of credit for the terms and conditions that govern its use.

**Liability for Unauthorized Transactions and Advisability of Prompt Reporting**

You must tell us AT ONCE if you believe a transaction under the Program has been made without your authorization. Telephoning is the best way of minimizing possible losses. If a transaction was unauthorized, and within two days after you learn about it you notify us that the transaction was unauthorized, we will not hold you liable for that transaction. In any event, even if you fail to notify us, your liability for any unauthorized transaction or series of related unauthorized transactions shall not exceed $50. If you believe that someone has transferred or may transfer money from your Bank Account without your permission, call:1-800-528-4800 (within U.S.) or 1-336-393-1111 (outside U.S.) anytime, or write: American Express Credit Department, P.O. Box 53850, Phoenix, Arizona 85072-3830.

**Our Liability for Improper Transactions or Payments**

If a transaction is not completed as you have directed or if we do not complete a transfer to or from your Bank Account on time in the correct amount, we will research and correct it as necessary, once you advise us. We will also reimburse you for your actual losses or damages, if any, caused by our error. However, there are some exceptions. We will not be liable to you in the following instances:

- if, through no fault of ours, your Bank Account does not or did not contain enough money to complete the transaction or the transfer would exceed an established credit limit;
- if the funds in your Bank Account are or were at the time of the attempted transaction subject to legal process or other encumbrance restricting the transaction;
- if circumstances beyond our control (such as fire or flood) prevent or prevented the transaction, despite reasonable precautions that we have taken;
- if a technical malfunction known to you prevented the transaction;
- or any other exceptions stated in this EFT Agreement.

**Business Day**

For purposes of this EFT Agreement, our business days are Monday through Friday. Holidays are not included.

**Arbitration**

The Card Account is governed by the Cardmember Agreement contained herein. The Arbitration provision contained within that agreement applies to this EFT Agreement. Please refer to that provision as you read this EFT Agreement.

**Privacy**

Electronic funds transfers you initiate pursuant to this EFT Agreement are covered by the American Express Privacy Policy, a copy of which was given to you together with your American Express Card. To view our Privacy Policy online, please visit www.americanexpress.com.

**How to Contact Us**

If for any reason you wish to contact us about the Program, about your participation in the Program, or about transactions relating to the Program, write or call us as follows:

Address: American Express Travel Related Services Company, Inc., Electronic Funds Services, P.O. Box 297815, Ft. Lauderdale, FL 33329-7815 or e-mail us by clicking on the Customer Service link online at www.americanexpress.com.

Telephone: 1-800-CASH-NOW, 24 hours a day, seven days a week.

**In Case of Errors or Questions About Your Transactions**

Write or call us at the number or address given above as soon as you can if you think your statement or receipt is wrong or if you need more information about a transaction listed on your statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. If you are delayed in contacting us due to extenuating circumstances (such as a hospital stay), we may extend this 60 days for a reasonable time.

1. Tell us your name and Account number.

4

FDR815126   9/8/06   11:08 PM   Page 5

2. Describe the error or the transaction you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.

3. Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within 10 business days* from the date you notified us.

We will tell you the results of our investigation within 10 business days* after we hear from you and we will correct any error promptly. If we need more time, however, we may take up to 45 calendar days to investigate your complaint or question. If we decide to do this we will assure that your bank recredits your Bank Account within 10 business days* for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within 10 business days* following your oral notification, we may not recredit your Bank Account.

If notification of an error is received within 30 calendar days after your Bank Account is opened, we will have 20 business days to provide you with the results of our investigation and correct any error, and 90 days to complete the investigation.

If we determine that there was no error, we will send you a written explanation within three business days after we finish our investigation. Upon your request we will provide you with copies of the documents that we used in our investigation. If we have provisionally recredited your Bank Account during the investigation and determine that there was no error, we will notify you of the date on which we will redebit your Bank Account, and the amount to be debited. You should realize that your Bank Account contains sufficient funds to cover this debit. If it does not, we have the right to charge such amount to the Account or to collect the amount from you. If this happens, we may cancel your right to participate in the Program.

**Termination**

We, or any bank or financial institution participating in the Program, may add to or remove from the Program any or all ATMs or extend or limit the services provided at any location without notifying you beforehand. In addition, we may discontinue the Program at any time.

Your right to participate in the Program will be terminated or suspended if the Card Account is cancelled or suspended, if you cancel the authorization you have given your bank to directly charge checks to your Bank Account, if the Bank Account from which payment will be made when you make transactions under the Program is closed to withdrawal transactions by us or our agents, if your participation in the Program is inactive for 18 consecutive months or more, or if the Card Account is no longer in good standing.

In addition to the foregoing, we may revoke your right to participate in the Program, at any time, at our sole discretion, with or without cause, subject to applicable law. If we do so, we will send you written notice, but we may not send you the notice until after the revocation. We also have the right to deny authorization for any requested transaction, at any time, at our sole discretion, with or without cause, and without giving you notice, subject to applicable law. You may terminate your participation in the Program but you must do so by writing to us at the address disclosed in the Section of this EFT Agreement entitled "HOW TO CONTACT US."

**Prior Agreements and Assignments**

This EFT Agreement supercedes all prior agreements you may have with us relating to the Program. We have the right to assign this EFT Agreement to a subsidiary or affiliate company at any time.

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.

**Note for Massachusetts Residents**
**General Disclosure Statement.** Any documentation provided to you which indicates that an electronic funds transfer was made shall be admissible as evidence of such transfer and shall constitute prima facie proof that such transfer was made.

The initiation by you of certain electronic funds transfers from your Bank Account will, except as otherwise provided in this EFT Agreement, effectively eliminate your ability to stop payment of the transfer.

UNLESS OTHERWISE PROVIDED IN THIS EFT AGREEMENT, YOU MAY NOT STOP PAYMENT OF ELECTRONIC FUNDS TRANSFERS; THEREFORE, YOU SHOULD NOT EMPLOY ELECTRONIC ACCESS FOR PURCHASES OR SERVICES UNLESS YOU ARE SATISFIED THAT YOU WILL NOT NEED TO STOP PAYMENT.

**Disclosure of Account Information to Third Parties.** If you give us your written authorization to disclose information about you, your Account or the transactions that you make to any person, that authorization shall automatically expire 45 days after we receive it.

**Optional Limit on Obtaining Cash.** You have the option to request that we limit the total amount of cash that you may obtain from ATMs in a single day to $50. If you elect this option we will take all reasonable steps to comply with your request.

*For Massachusetts residents: 10 calendar days instead of business days.

## THE PURCHASE PROTECTION PLAN

**Description of Coverage**
**How the Purchase Protection Plan Works.** When an American Express® Cardmember charges a covered purchase with his or her Card Account†, the Purchase Protection Plan protects that item for 90 days from the date of purchase if it is stolen or accidentally damaged, including vandalism. The coverage is limited to $1,000 per Occurrence, up to $50,000 per Cardmember Account per policy year, and is in EXCESS of other sources of indemnity.

**How You Benefit**
• Items of personal property purchased worldwide with the Card are covered, including gifts purchased for others.
• As a Cardmember, your purchase is covered for 90 days from the date of purchase when you charge any portion of the price of the purchased item with your Card Account.¹ You will only be reimbursed for the amount charged to your Card.
• The Purchase Protection Plan provides coverage for up to $1,000 per Occurrence of theft or accidental damage, including vandalism, ("Occurrence"), not to exceed $50,000 per Cardmember Account per policy year.
• The program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit²) up to the amount charged to the Card, and not to exceed the original purchase price.³ The Purchase Protection Plan does not reimburse for shipping and handling expenses or installation, assembly, or other service charges.

**Who is Covered**
You are covered under this Plan and coverage remains effective as long as you are a U.S. resident Cardmember, that is, the American Express Card has been issued in your name, and you maintain your Permanent Residence in the 50 United States of America, the District of Columbia, Puerto Rico, or the U.S. Virgin Islands.³

Your Permanent Residence is considered your primary dwelling.

**Key Terms to Know**
• Benefits will not be paid if, on the date of Occurrence, on the date of claim filing, or on the date of would-be claim payment any amount due on your Card Account is unpaid for one or more billing cycle(s) or your Card Account is cancelled.⁴
• You must provide proof of purchase and satisfactory proof of the theft, accidental damage, including vandalism, while coverage is in effect to qualify for payment under the Purchase Protection Plan. Remember to keep all your American Express Charge receipts, original store receipts, and damaged items.
• Coverage under the Purchase Protection Plan is EXCESS; this means that if, at the time of Occurrence, you have other valid and collectible insurance or indemnity – such as but not limited to homeowner's or renter's insurance – the Purchase Protection Plan will cover that amount not covered by such other insurance or indemnity, up to the limits of the Purchase Protection Plan.
• Product rebates, discounts or money received from lowest price comparison programs will be deducted from the original cost of the item.

**Purchases Not Covered**
• travelers checks, tickets of any kind, negotiable instruments (such as gift certificates, gift cards and gift checks), cash or its equivalent;
• animals or living plants;
• consumable or perishable items with limited life spans (such as, but not limited to, perfume, light bulbs, batteries);
• at the time of purchase, used, rebuilt, refurbished, or remanufactured items;
• if the damaged or stolen item consists of articles in a pair or set, coverage will be limited to no more than the value of any particular part or parts, unless the articles are unusable individually and cannot be replaced individually, regardless of any special value the article(s) may have had as part of a set or collection;
• permanent household and/or business fixtures, including, but not limited to, carpeting, flooring and/or tile;
• business fixtures, including, but not limited to, air conditioners, refrigerators, heaters;
• custom hospital, medical and dental equipment and devices;
• rare stamps or coins;

• antique, previously owned items;
• items purchased for resale, professional, or commercial use;
• items still under installment billing (except those purchased from American Express Merchandise Services);
• motorized vehicles and watercraft, aircraft, and motorcycles or their motors, equipment, parts or accessories;
• items rented, leased or borrowed for which you will be held responsible.

**Occurrences Not Covered**
• items lost or misplaced;
• items stolen from motor vehicles;
• items not reasonably safeguarded by you (for example, unlocked or unattended items stolen from public facilities will not be covered);
• items stolen from baggage not carried by hand under your personal supervision or under the supervision of a traveling companion known by you;
• items that you damage through alteration (including cutting, sawing, and shaping);
• items damaged due to normal wear and tear, inherent product defect or normal course of play (such as, but not limited to, golf and tennis balls);
• Occurrences caused by any of the following: fraud; abuse; natural disaster including, but not limited to, flood, earthquake, tornado or hurricane; war or hostilities of any kind (e.g., invasion, rebellion, insurrection); confiscation by order of any government, public authority, or customs official; risks of contraband; illegal activity or acts; radioactive contamination;
• items lost, damaged, or stolen under the care and control of a third party or common carrier;
• manufacturer's defects;
• items at an unoccupied construction site.

**How to File a Claim**
Remember, to insure prompt processing of your claim, you need to report any theft or damage immediately following the date of the Occurrence, including for gifts purchased with the Card. Remember also, you need to retain your receipts and your damaged item (if required) until the claim process is complete.

1. Call toll-free 1-800-322-1277 to report your claim (overseas, call collect at 1-303-273-6498).
   **Note:** *You must report your claim within 30 days from the date of Occurrence.*

2. You may be sent a Purchase Protection Claim Form which you must complete, front and back, sign, and return to the claims office with the following required documents³ (keep copies for your own records):
   • the American Express Charge receipt;
   • the original itemized store receipt;
   • the insurance declaration forms for your other sources of insurance or indemnity (e.g., homeowner's or renter's insurance);
   • a photograph of and/or repair estimate for the damaged item (damage claims only); and
   • for theft and vandalism claims, a report regarding the stolen or vandalized item must be filed with the appropriate authority before you call to file a claim with the Purchase Protection Plan.
   **Note:** *You must return your completed claim form and required documents within 60 days from the date of Occurrence to remain eligible for coverage.*

3. The program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit²) up to the amount charged to the Card, and not to exceed the original purchase price. The Purchase Protection Plan does not reimburse for shipping and handling expenses, or installation, assembly, or other service charges.⁴
   **Note:** *No payment will be made for invalid claims or on any claims not substantiated in the manner required by the Insurer.*

4. For damage claims, you may be required to send in the damaged item(s), at your expense, for further evaluation of your claim.
   **Note:** *If requested, you must send in the damaged item within 30 days from the date of request to remain eligible for coverage.*

**Important Additional Information for You**
The benefits provided under the Purchase Protection Plan apply only to you. Only you have any legal or equitable right, remedy, or claim to insurance proceeds and/or damages under or arising from the Purchase Protection Plan.

All reasonable and practical steps must be taken to avoid or lessen any chance of property covered by the Purchase Protection Plan being stolen or damaged.

When a benefit has been paid under the Purchase Protection Plan, the Insurer becomes subrogated, to the extent of such payment, to all your rights and remedies against any responsible party. Upon our request, you must provide us reasonable assistance, including signing documents if necessary, to bring suit in your name.

The Purchase Protection Plan is underwritten by AMEX Assurance Company ("Insurer"), Administrative Office, Green Bay, Wisconsin. This document serves only as a description of coverage and is not a policy or contract of insurance; the actual terms, conditions and exclusions of Policy AX0951 ("Policy") govern the Purchase Protection Plan. The Policy has been issued to American Express Travel Related Services Company, Inc. ("American Express"), the Policyholder. This document replaces all existing prior Descriptions of Coverage for the Purchase Protection Plan.

Kenneth J. Ciak, President
AMEX Assurance Company
6726-11-01

Timothy Meehan, Secretary
AMEX Assurance Company

*1. For those eligible and enrolled in the Membership Rewards program, the cost of a covered product may also be purchased through redemption of a Membership Rewards program redemption certificate.*

*2. For those eligible and enrolled in the Membership Rewards program, benefits are also paid when the purchased item is received through the redemption of a Membership Rewards program redemption certificate.*

*3. Credit reimbursement does not apply to New York State residents.*

*4. For those eligible and enrolled in the Membership Rewards program, payment or credit will not exceed the original assigned value of the personal property received through redemption of a Membership Rewards program redemption certificate up to the stated limits, excluding shipping and handling expenses.*

*5. Important note for those enrolled in the Membership Rewards program: A Membership Rewards program redemption certificate can only be redeemed by eligible Cardmembers. Benefits will not be paid when a Membership Rewards program redemption certificate has been transferred to non-eligible Cardmembers and/or non-Cardmembers.*

*6. Does not apply to New York State residents.*

*7. When eligible and enrolled in the Membership Rewards program, proof of assigned value placed on such property when using a Membership Rewards program redemption certificate, must be submitted in addition to other required documents, if requested.*

## THE BUYER'S ASSURANCE PLAN

### Description of Coverage

**How The Buyer's Assurance Plan Works.** When a Cardmember charges the entire cost of a covered product with his or her Card account[1], the Buyer's Assurance Plan will extend the terms of the original manufacturer's warranty for a period of time equal to the duration of the original manufacturer's warranty, up to one additional year, on warranties of five years or less that are eligible in the U.S.

### How You Benefit

- The Buyer's Assurance Plan mirrors manufacturers' warranties for covered products purchased entirely with your Card account, up to one additional year.
- When your covered product's manufacturer's warranty expires, the Buyer's Assurance Plan takes effect. The Buyer's Assurance Plan cannot pay more than the actual amount charged to your Card for the item or $10,000, whichever is less (not to exceed $50,000 per Cardmember account per policy year for all Occurrences combined).
- Coverage is provided for any product malfunction, defect or damage covered by the terms of the product's original warranty ("Occurrence") – at no extra cost.
- For items charged entirely with the Card, the program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit[3]), not to exceed the original purchase price. The Buyer's Assurance Plan does not reimburse for shipping and handling expenses or installation, assembly, professional advice, maintenance or other service charges.[5]
- Where the personal property consists of articles in a pair or set, this Policy shall be liable for one item in the pair or set which form the basis of claim hereunder.
- No product registration or enrollment is required for any covered products, including gifts purchased for others.

### Who is Covered

You are covered under this Plan and coverage remains effective as long as you are a U.S. Resident Cardmember, that is, the American Express Card has been issued to you in your name, and you maintain your permanent residence within the 50 United States of America, the District of Columbia, Puerto Rico or the U.S. Virgin Islands.[4]

Your permanent residence is considered your primary dwelling place.

### Key Terms to Know

- Benefits will not be paid if, on the date of Occurrence, on the date of claim filing, or on the date of would-be claim payment, any amount due on your Card account is unpaid for one or more billing cycle(s) or your Card account is cancelled.[5]
- You must provide proof of purchase and satisfactory proof of the covered Occurrence while coverage is in effect to qualify for benefits under the Buyer's Assurance Plan. Remember to keep all your American Express charge receipts, original store receipts, original manufacturers' warranties, and products requiring repair.
- If you purchase an additional service contract or extended warranty with a product which is otherwise eligible under the Buyer's Assurance Plan, and the combined coverage provided by both the original manufacturer's warranty and the purchased service contract does not exceed five years, then the product is eligible for coverage under the Buyer's Assurance Plan. The Buyer's Assurance Plan will extend the warranty time period and mirror coverage of the original manufacturer's warranty up to one additional year after both the original manufacturer's warranty and the purchased service contract have expired. If, however, you purchase an American Express® Service Plan with a purchase from American Express Merchandise Services, the Buyer's Assurance Plan will apply before the Service Plan is in effect. If the combined coverage of the original manufacturer's warranty and the purchased service contract exceeds five years then the product purchased is not eligible under the Buyer's Assurance Plan and no coverage applies.
- If you buy an additional service contract or an extended warranty for a computer, computer component or part that already comes with an original U.S. Manufacturer's warranty, unless such coverage is provided from, and administered by, the original manufacturer, coverage under the Buyer's Assurance Plan does not apply.

### Products Not Covered

- products not having manufacturers' warranties valid in the U.S.;
- at the time of purchase, used, rebuilt, refurbished or remanufactured items;
- products covered by an unconditional satisfaction guarantee;
- motorized vehicles (such as cars, trucks, motorcycles, boats, airplanes) and their parts, subject to high risk, combustible wear and tear, or mileage stipulations (including batteries, carburetors, pipes, hoses, pistons, brakes, tires, or mufflers);
- motorized devices and their parts used for agriculture, landscaping, demolition or construction;
- motorized devices and their parts which are permanent additions or fixtures to a residential or commercial building;
- business fixtures, including, but not limited to, air conditioners, refrigerators, heaters;
- land or buildings;
- consumable or perishable items;
- animals or living plants;
- one-of-a-kind products which cannot be replaced;
- items purchased for resale, professional, or commercial use;
- items still under installment billing (except those purchased from American Express Merchandise Services); and
- products with manufacturers' warranties, or combined manufacturer's warranties and service plan agreements, lasting in excess of five years.

### Occurrences Not Covered

- any physical damage, including damage as a direct result of natural disaster or a power surge, except to the extent the manufacturer's warranty covers damage;
- Occurrences caused by any of the following: fraud; abuse; war or hostilities of any kind (e.g., invasion, rebellion, insurrection); confiscation by order of any government, public authority, or customs official; risks of contraband; illegal activity or acts; radioactive contamination;
- mechanical failure covered under product recall;
- all Occurrences that take place outside the Buyer's Assurance Plan coverage effective period.

### How to File a Claim

Remember, you need to report any Occurrence immediately, including that for gifts purchased with the Card. Remember also, you need to retain your receipts, the original manufacturer's warranty and the product requiring repair until the claim process is complete. You may also be asked to obtain a repair estimate.

1. Call toll-free 1-800-225-3750 to notify us of your claim (overseas, call collect at 1-303-273-6498).

   **Note:** *You must report your claim within 30 days from the date of Occurrence.*

2. The program administrator will decide whether to have the item repaired or replaced, or to reimburse you (cash or credit[3]) up to the amount charged to the Card, and not to exceed the original purchase price. The Buyer's Assurance Plan does not reimburse for shipping and handling expenses or installation, assembly, or other service charges.[5]

   **Note:** *No payment will be made for invalid claims or claims not substantiated in the manner required by the Insurer.*

3. You must return all requested documentation within 60 days from the date of Occurrence to remain eligible for coverage.

4. For some claims, you may be required to send in the damaged product, at your expense, for further evaluation of your claim.

   **Note:** *If requested, you must send in the damaged product within 30 days from the date of request to remain eligible for coverage.*

### Additional Information for You

The benefits provided under the Buyer's Assurance Plan apply only to you and Additional Cardmembers on your Account. Only you and those persons have any legal or equitable right, remedy, or claim to insurance proceeds and/or damages under or arising from the Buyer's Assurance Plan.

Subject to the terms and conditions of the Plan, if the Cardmember is notified that any warranty has ended for any reason (such as bankruptcy of the manufacturer or other responsible party), the Buyer's Assurance Plan will continue to provide coverage, not to exceed one year from the date the Cardmember is notified of such an event. The Cardmember may be asked to provide proof in the form of a public announcement or other official documentation.

The Buyer's Assurance Plan is underwritten by AMEX Assurance Company ("Insurer"), Administrative Office, Green Bay, Wisconsin. This document serves only as a description of coverage and is not a policy or contract of insurance; the actual terms, conditions and exclusions of Policy AX0953 ("Policy") govern the Buyer's Assurance Plan. The Policy has been issued to American Express Travel Related Services Company, Inc. ("American Express"), the Policyholder. This document replaces all existing prior Descriptions of Coverage for the Buyer's Assurance Plan.

Kenneth J. Ciak, President
AMEX Assurance Company
6717-11-01

Timothy Meehan, Secretary
AMEX Assurance Company

*1. For those eligible and enrolled in the Membership Rewards program, the entire cost of a covered product may also be purchased through redemption of a Membership Rewards program redemption certificate.*

*2. Credit reimbursement does not apply to New York State residents.*

*3. For those eligible and enrolled in the Membership Rewards program, payment or credit will not exceed the original assigned value of the personal property received through redemption of a Membership Rewards program redemption certificate up to the stated limits, excluding shipping and handling expenses.*

*4. Important note for those enrolled in the Membership Rewards program: A Membership Rewards program redemption certificate can only be redeemed by eligible Cardmembers. Benefits will not be paid when a Membership Rewards program redemption certificate has been transferred to non-eligible Cardmembers and/or non-Cardmembers.*

*5. Does not apply to New York State residents.*

## CAR RENTAL LOSS AND DAMAGE INSURANCE PLAN

### Description of Coverage

Car Rental Loss and Damage Insurance provides the Cardmember, if the Cardmember is the primary renter, as (defined below) with insurance coverage for damage to or theft of most Rental Autos when the Cardmember uses the Card (as described below) to reserve and pay for an

FDR815126   9/8/06   11:08 PM   Page 7

auto rental from any Commercial Car Rental Company ("Rental Company") other than those located in Australia, Ireland, Israel, Italy, Jamaica, and New Zealand.[1] This coverage is always excess insurance.

"Rental Auto" means a four-wheeled, two-axle passenger-type motor vehicle, designed for and sold to accommodate private passenger transport on public roads.

### Who is Eligible for Coverage

You are eligible for coverage if:

1. You are a Basic or Additional Cardmember and an American Express® Card or Optima® Card in association with that Card (the "Card") has been issued to you in your name;

2. You are of an account status and class that is provided Car Rental Loss and Damage Insurance as a benefit of Cardmembership ("Cardmember");

3. Your Card account is billed from a U.S. operating center in U.S. dollars; and

4. You maintain your Permanent Residence within the 50 United States of America, the District of Columbia, Puerto Rico or the U.S. Virgin Islands.

"Permanent Residence" means the Covered Person's one primary dwelling place where the Covered Person permanently resides and intends to return.

A PERSONAL, GOLD, Rewards Plus Gold Cardmember who is enrolled at an accredited four-year college, university or graduate school in the United States and is receiving student benefits provided as a benefit of Cardmembership is not eligible for benefits under this Policy.

"Commercial Car Rental Company" or "Car Rental Company" means any commercial car rental agency which rents Rental Autos.[2] For the purposes of this Description of Coverage, Commercial Car Rental company means "Rental Company."

### How To Activate Coverage

Coverage for theft of or damage to a Rental Auto is activated when the Cardmember:[3]

1. presents his or her eligible Card to the Rental Company to reserve the Rental Auto by making a reservation; or by placing a hold or deposit at the time the Rental Auto is checked out;

2. declines the full Collision Damage Waiver or similar option (CDW), or pays for a partial collision damage waiver, offered by the Rental Company;

3. is the primary renter, which is defined as the Cardmember, who is named on the written agreement with the Rental Company as the person renting and taking control and possession of the Rental Auto ("Primary Renter"); and

4. uses the Card to pay for the entire auto rental from the Rental Company at the time of vehicle return.

Coverage continues in effect while the Cardmember remains in control and possession of the Rental Auto. A Cardmember, who is physically challenged and unable to operate the Rental Auto, may be the Primary Renter if he/she is the Cardmember entering into the rental transaction.

### When Coverage Terminates

Coverage for theft of or damage to the Rental Auto terminates when:

1. the Rental Company resumes control of the Rental Auto, or 30 consecutive days after the Rental Auto was checked out, whichever is earlier; or

2. the Policy is cancelled.

### Length of Coverage

Car Rental Loss and Damage Insurance covers eligible Rental Autos when rented under a written rental agreement from a Rental Company for no more than 30 consecutive days.

**Note:** *In no event shall coverage be provided when the Cardmember rents a Rental Auto beyond 30 consecutive days from the same Rental Company, regardless of whether the original agreement is extended, or a new written agreement is entered into, or a new vehicle is rented.*

Additionally, no coverage will be provided when the Primary Renter rents a Rental Auto for more than 30 consecutive days out of a 45-day period within the same geographic market/location (75 mile radius).

### What is Covered

Car Rental Loss and Damage Insurance reimburses a Cardmember for payments for damage to or theft of a Rental Auto that the Cardmember is required to make, up to the lesser of: 1) the actual cost to repair the Rental Auto; 2) the wholesale Book value minus salvage and depreciation costs, or 3) the purchase invoice price of the Rental Auto minus salvage and depreciation costs. The coverage also reimburses the Cardmember for reasonable charges (those charges incurred at the closest facility that are usual and customary in the vicinity in which the

loss or disablement took place) imposed by the Rental Company, such as towing or storage and Loss of Use.

"Loss of Use" means the unavailability of a Rental Auto and consequent loss of revenue by the Rental Company due to damage or theft. Unless otherwise required by law, the Rental Company must submit a fleet utilization log indicating that during such time:

1. no other Rental Auto was available; and

2. there was a demand for a Rental Auto.

Car Rental Loss and Damage Insurance covers no other type of loss. For example, in the event of a collision involving the Cardmember's Rental Auto, damage to any other driver's car or the injury of anyone or anything is not covered.

**Note:** *This policy does not provide liability or any other coverage such as Uninsured Motorists, benefits under any Worker's Compensation law, Disability benefits law or other mandated Government Plans.*

### What Excess Coverage Means

Car Rental Loss and Damage Insurance is an excess insurance plan. This means that this excess coverage will reimburse the Cardmember only for losses/expenses not covered by plans, such as a partial collision damage waiver, any personal auto insurance, employer's auto insurance or reimbursement plan or other sources of insurance. When these other plans apply, a Cardmember must first seek payment or reimbursement and receive a determination based on the stated terms of such other Plans, that any such Plans do not provide coverage before this excess coverage will reimburse the Cardmember.

### Vehicles Not Covered

Car Rental Loss and Damage Insurance does not cover rentals of:

1. expensive cars, which means cars with an original manufacturer's suggested retail price of $50,000 or more when new;

2. exotic cars regardless of year or value, including but not limited to Chevrolet Corvette, Toyota Supra, Mazda RX-7, Dodge Viper and Stealth, Plymouth Prowler, Mitsubishi 3000 GT, Nissan 300 ZX, Jaguar XJS, Acura NSX, Mercedes SL, SLK, S Coupe and E320 Coupe and Convertible, BMW M3, Z3 and 8 Series, Cadillac Allante and all Porsche, Ferrari, Lamborghini, Maserati, Aston Martin, Lotus, Bugatti, Vector, Shelby Cobra, Bentley, Rolls Royce;

3. trucks, pick-ups, cargo vans, custom vans;

4. full-sized vans, including but not limited to, Ford Econoline or Club Wagon, Chevy Van or Sportvan, GMC Vandura and Rally, Dodge Ram Vans and Ram Wagon;

5. vehicles which have been customized or modified from the manufacturer's factory specifications except for driver's assistance equipment for the physically challenged;

6. vehicles used for hire or commercial purposes;

7. mini-vans used for commercial hire;
   **Note:** *Passenger Mini-Vans (not Cargo Mini-Vans) with factory specified seating capacity of 8 passengers or less, including but not limited to, Dodge Caravan, Plymouth Voyager, Ford Windstar and Nissan Quest, are covered when rented for personal or business use only.*

8. antique cars, which means cars that are 20 years old or have not been manufactured for 10 or more years;

9. limousines;

10. full-sized sport utility vehicles, including but not limited to, Chevrolet/GMC Suburban, Tahoe and Yukon, Ford Expedition, Lincoln Navigator, Toyota Land Cruiser, Lexus LX450, Range Rover or full-sized Ford Bronco;

11. sport/utility vehicles when driven "off-road"; and
    **Note:** *Compact sport/utility vehicles, including but not limited to Ford Explorer, Jeep Grand Cherokee, Nissan Pathfinder, Toyota Four Runner, Chevrolet Blazer and Isuzu Trooper and Rodeo are covered when driven on paved roads.*

12. off-road vehicles, motorcycles, mopeds, recreational vehicles, golf or motorized carts, campers, trailers and any other vehicle which is not a Rental Auto.

### Losses Not Covered

Car Rental Loss and Damage Insurance does not cover losses caused by or contributed to by:

1. operation of the Rental Auto in violation of the terms and conditions of the Rental Company agreement (including but not limited to losses occurring when: a person not permitted to operate the vehicle pursuant to terms of the rental agreement was in possession or control of the vehicle; or, driving the vehicle outside of the authorized rental territory);

2. leased or rented vehicles;

3. costs attributed to the Commercial Car Rental Company's normal course of doing business;

4. intentional damage;

5. illegal activity, such as losses where the Rental Auto was used for, or involved in illegal activity or felony;

6. pre-existing conditions, damage or defect;

7. alcohol intoxication on the part of the driver, as defined in the state where the Accident occurred;

8. voluntarily taking any drug or acting under the influence or effect of that drug (unless taken as prescribed or administered by a Doctor);

9. war or military activity;

10. radioactivity;

11. confiscation by authority;

12. wear and tear, including gradual deterioration;

13. damage which is due and confined to freezing, mechanical or electrical breakdown or failure unless such damage results from a theft covered by the Policy;

14. failure to return keys to the Rental Company when the vehicle is stolen;

15. theft or damage to unsecured vehicles;

16. theft of or damage to vans (flats or blowouts), unless damaged by fire, malicious mischief, vandalism, or stolen, unless the loss is coincident with and from the same cause as other loss covered by the Policy; and

17. off-road operation of the vehicle.

Car Rental Loss and Damage Insurance does not cover, and benefits will not be paid for:

1. sales tax related to repair of damages, unless reimbursement of such sales tax is required by law;

2. damage to any vehicle other than the Rental Auto;

3. damage to any property other than the Rental Auto, owner's property, or items not permanently attached to the Rental Auto;

4. the injury of anyone or anything;

5. expenses assumed, waived or paid for by the Rental Company or its insurer;

6. expenses covered by the Cardmember's personal auto insurer, employer or employer's insurer, or authorized driver's insurer;

7. value added tax or similar tax, unless reimbursement of such tax is required by law;

8. diminishment of value;

9. any Rental Auto used for hire or commercial purposes; and

10. depreciation, unless reimbursement for depreciation is required by law.

### How to File a Claim

Notification of damage, including vandalism, theft, or an accident must be reported to the appropriate law enforcement agency as soon as reasonably possible. This requirement applies regardless of whether the Rental Auto is involved with other vehicles. Failure to notify may result in denial of benefits.

If a loss occurs, a Cardmember should promptly notify the Car Rental Loss and Damage Claims Unit toll free at (800) 338-1670 in the U.S. only or call (440) 914-2950 from other locations worldwide. If the failure of a Cardmember to promptly report a loss prejudices the rights of the Insurer, the claim may be denied.

A representative will answer any questions a Cardmember may have and will send the Cardmember a claim form with instructions. Complete and sign the claim form. Written proof of loss, which includes the claim form and all other requested documentation (listed below), must be received within 60 days following the date of the damage or theft by American Express Car Rental Loss and Damage Claims Unit, PO Box, 94729, Cleveland, Ohio 44101-4729. If the proof of loss and other documentation is not received within 60 days of the date of loss, coverage may be denied.

Required documentation may consist of, but is not limited to:

1. our signed and completed claim form;

2. an itemized repair bill;

3. a copy of charge slip for the rental of the Rental Auto, Rental Auto contract or machine generated receipt to show rental was charged and paid for with an American Express Card;

4. a police report (if applicable);

5. photos of the damaged vehicle, if available;

6. a copy of the Cardmember's, authorized driver's or employer's auto insurance coverage, or a notarized letter stating no insurance;

7. a copy of all claim documents and correspondence, provided by the Car Rental Company;

FDR815126  9/8/06  11:08 PM  Page 8

8. a copy of the Rental Company's utilization log;

9. a copy of the driver's license of the Cardmember and/or author-ized driver, unless the driver's license number shows on the rental agreement;

10. a copy of the written rental agreement, front and back, which docu-ments when the Rental Auto was checked out and checked in; and

11. information pertaining to other available insurance coverage(s).

Cardmember cooperation with issues related to their benefits is required. If all required documentation is not received within 180 days of the date of loss (except for documentation which has not been furnished for reasons beyond the Cardmember's control), coverage may be denied.

**How Benefits are Paid**

All Car Rental Loss and Damage Insurance payments reimbursable under the policy are payable to the Cardmember; except that payment may be made, at the discretion of the Insurer, jointly to the Cardmember and the Commercial Car Rental Company when the Car Rental Company has not been reimbursed for the covered loss or damage, or the Cardmember has not validly assigned his/her payments to the Rental Company or any other party.

**Note:** *Benefits will not be paid if, on the date of loss, on the date of claim filing, or on the date of potential claim payment, any amount due on Your Card account is past due or Your Card is cancelled.*[4]

**Rights of Recovery**

In the event of a payment under this Policy, the Insurer is entitled to all the rights of recovery that the Cardmember, to whom payment was made, has against another. That Cardmember must sign and deliver to the Insurer any legal papers relating to that recovery, do whatever else is necessary to help the Insurer exercise those rights and do nothing after loss to harm the Insurer's rights.

When a Cardmember or Commercial Car Rental Company has been paid damages under Policy No. AX0925, and also recovers from another, the amount recovered from the other shall be held by that Cardmember or Commercial Car Rental Company in trust for the Insurer and reim-bursed to the extent of the Insurer's payment.

As a condition precedent to coverage, the Cardmember is required, and has a duty to fully cooperate with the Insurer in any investigations, subrogation matters or legal proceedings by providing copies of any and all legal notices and any and all statements, including sworn statements and contributing any other papers and documents to reasonably assist in the disposition of the legal matter.

**Notification of Legal Action**

When a Cardmember is served with suit and/or summons papers relating to a Car Rental and Damage claim, the Cardmember must notify (see address and phone number under "Claims Notice" section) and provide copies of the suit or summons papers to the Car Rental Loss and Damage claims unit within 15 days of when the Cardmember is served. Failure to comply may result in denial of benefits.

**Additional Information for You**

This coverage is underwritten by AMEX Assurance Company ("Insurer") through insurance Policy AX0925 (the "Policy") issued to American Express Travel Related Services Company, Inc. and its participating subsidiaries, affiliates and licensees. The Policy may be changed or terminated.

This Description of Coverage is an important document. Please keep it in a safe place. Although it describes the present form of insurance as it exists at the time of printing, this document is not the Policy or contract of insurance. The benefits described in this document are subject to all of the terms, conditions and exclusions of the Policy issued by the under-writer. This document replaces any prior Description of Coverage under the Policy may have been furnished to the Cardmember.

*Kenneth J. Ciak* signature          *Paul R. Johnston* signature

Kenneth J. Ciak          Paul R. Johnston
President          Secretary
AMEX Assurance Company          AMEX Assurance Company

CRLDI-DOC-CCSG 11/05

*1. For those eligible and enrolled in Membership Rewards, if a Membership Rewards redemption certificate is used, coverage is provided only to Rental Autos rented in the United States.*

*2. When used in conjunction with a Membership Rewards redemp-tion certificate, the participating Car Rental Companies are limited to Hertz, National and Budget.*

*3. If eligible and enrolled in Membership Rewards, coverage is also activated when the Cardmember (1) presents a Membership Rewards redemption certificate and (2) uses a Membership Rewards redemption certificate at a participating Commercial Car Rental Company. Important note for those enrolled in Membership Rewards: A Membership Rewards redemption certifi-cate can only be redeemed by eligible Cardmembers. Benefits will not be paid when a Membership Rewards redemption certificate has been transferred to non-eligible Cardmembers and/or non-Cardmembers.*

*4. Does not apply to New York State residents.*

**ADDITIONAL INFORMATION FOR RESIDENTS OF LOUISIANA**

The **Rights of Recovery** section is replaced with the following:
If the Company makes any payment under this Policy and the Cardmember has the right to recover damages from another, the Company shall be subrogated to that right. However, the Company's right to recover is subordinate to the Cardmember's right to be fully compensated.

CRLDI-RDR1-LA 11/05

**ADDITIONAL INFORMATION FOR RESIDENTS OF SOUTH DAKOTA**

Under **Losses Not Covered**, item number 5. is replaced with the following:

Car Rental Loss and Damage Insurance does not cover losses caused by or contributed to by:

5. violation of criminal law, or commission of a criminal act, whether cited or charged;

Under **Losses Not Covered**, item number 7. is replaced with the following:

Car Rental Loss and Damage Insurance does not cover losses caused by or contributed to by:

7. consumption of alcohol at or in excess of the legal blood alcohol level for a felony conviction in the state or locality in which the Accident occurred;

CRLDI-RDR1-SD 11/05

**ADDITIONAL INFORMATION FOR RESIDENTS OF VERMONT**

Under **Losses Not Covered**, the following item is hereby removed:

7. alcohol intoxication on the part of the driver, as defined in the state where the Accident occurred;

CRLDI-RDR1-VT 11/05

**ADDITIONAL INFORMATION FOR RESIDENTS OF WISCONSIN**

Under **Losses Not Covered**, the following items are hereby removed:

5. illegal activity, such as losses where the Rental Auto was used for, or involved in illegal activity or felony;

7. alcohol intoxication on the part of the driver, as defined in the state where the Accident occurred;

9. voluntarily taking any drug or acting under the influence or effect of that drug (unless taken as prescribed or administered by a Doctor);

Under **Losses Not Covered**, the following item is added:

18. the use of the Rental Auto for unlawful purposes, or for trans-portation of liquor in violation of law, or while the driver is under the influence of an intoxicant or a controlled substance or con-trolled substance analog, or a combination thereof, or under the influence of any other drug to a degree which renders him or her incapable of safely driving, or under the combined influence of an intoxicant and any other drug to a degree which renders him or her incapable of safely driving, or any use of the motor vehicle in a reckless manner.

CRLDI-RDR1-WI 11/05

**ADDITIONAL INFORMATION FOR RESIDENTS OF WEST VIRGINIA**

Under How Benefits are Paid, the Footnote, to the note that reads:
Note: Benefits will not be paid if, on the date of loss, on the date of claim filing, or on the date of potential claim payment, any amount due on Your Card account is past due or Your Card is cancelled, is hereby revised to read as follows:

*Does not apply to West Virginia and New York State residents.*
CRLDI-RDR1-WV 11/05

$100,000 – $250,000 –
$500,000 – $1,500,000[3]
**TRAVEL ACCIDENT INSURANCE**
**UNDERWRITTEN BY**
**AMEX ASSURANCE COMPANY**
ADMINISTRATIVE OFFICE,
DE PERE, WISCONSIN
(HEREIN CALLED "THE COMPANY")

**Description of Coverage**

**Covered Persons:** A person shall be a Covered Person under the Blanket Master Group Policy AX0948 (the "Policy") only if:

1. he or she is:

a. *For $100,000 coverage,* a Basic or Additional Cardmember who has any of the following Cards, or the extended payment account offered in conjunction with any of the following, issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name: American Express® Rewards Green Card, American Express® Preferred Rewards Green Card, American Express® Rewards Gold Card, American Express® Preferred Rewards Gold Card, American Express® Business Card, American Express® Cash Rebate Card, American Express® Community Business, American Express® Credit Card, American Express® Investment Management Account Gold Card, American Express® Costco Cash Rebate Credit Card, The American Express® Costco Card (IDC): American Express® Costco Business Card, Bank of Hawaii Credit Card from American Express, Bank of Hawaii Gold Credit Card from American Express, Best Rate Card, Blue for Business from American Express, Blue for Students℠, Blue from American Express, Business Capital Line from OPEN from American Express, Business Gold Card from OPEN from American Express, American Express® Business Management Account from OPEN from American Express, Business *Membership Rewards®* Card, American Express® Business Purchase Account from OPEN from American Express, Buyer's Bonus Card, Continental OnePass Credit Card from American Express, Corporate Card from OPEN from American Express℠ including beginning with account number 37134, American Express® Business Cash Rebate Card from OPEN from American Express, Corporate Costco Card from OPEN from American Express, Delta SkyMiles® Business Credit Card from OPEN from American Express, Gold Delta SkyMiles® Business Credit Card from OPEN from American Express, Delta SkyMiles® Credit Card, Delta SkyMiles® Options Card, American Express Executive Business Card from OPEN from American Express, Gold American Express Portfolio Credit Card, Gold Card, Gold Delta SkyMiles® Credit Card, Gold Senior Card, Gold Student Card, *Membership Rewards®* Credit Card from American Express, *Membership Rewards®* Options℠ Credit Card from American Express, National Multiple Sclerosis Credit Card, Optima® Card Accounts, Optima® Cash Rewards Card, Optima® Gold Card, Optima® Platinum Card, Optima® Platinum Cash Rebate Card, Optima® Platinum Preferred Card, Personal Card, Personal Choice Card, Personal Senior Card, Personal Student Card, Platinum Cash Rebate Card, Platinum Delta SkyMiles® Credit Card, Platinum ShopRite Credit Card from American Express, Starwood Preferred Guest Credit Card from American Express, The American Express® Golf Card, The Fidelity American Express® Card, The Fidelity American Express® Gold Card, The Hilton HHonors® Platinum Credit Card from American Express, Binghamtonb Savings Bank Gold Credit Card from American Express, Binghamton Savings Bank Business Credit Card from American Express, The New York Knicks Card from American Express, The New York Rangers Card from American Express, The Small Business Card from American Express; or

b. *For $250,000 coverage,* a Basic or Additional Cardmember who has a Rewards Plus Gold Card, Corporate Rewards Plus Gold Card or the extended payment account offered in conjunction issued by American Express Travel Related Services Company, Inc. or its par-ticipating subsidiaries ("American Express") in his or her name; or

c. *For $500,000 coverage,* a Basic or Additional Cardmember who has a Platinum Card®, Fidelity American Express Platinum Card®, American Express® Investment Management Account Platinum Card, American Express Business Platinum Card® from OPEN from American Express, Lexus Platinum Card®, American Express Platinum Financial Services Card, LAC/IDC Platinum Card or the extended payment account offered in conjunction issued by American Express Travel Related Services Company, Inc. or its par-ticipating subsidiaries ("American Express") in his or her name on a Platinum Card Account; or

d. *For $1,500,000 coverage,* a Basic or Additional Cardmember who has a Centurion Card, American Express® Business Centurion Card® from OPEN from American Express℠ or the extended payment account offered in conjunction issued by American Express Travel Related Services Company, Inc. or its participating subsidiaries ("American Express") in his or her name on a Centurion Card Account; or

e. the spouse, Domestic Partner or dependent child under age 23 of any eligible person described in (a), (b), (c), (d) above; and

2. his or her Permanent Residence is in the 50 United States, District of Columbia, Puerto Rico, or U.S. Virgin Islands.

**Definitions**

"Accident" whenever used in this Policy means an unexpected event which causes Injury and shall also include exposure resulting from a mishap on a Common Carrier Conveyance in which the Covered Person is traveling.

"Additional Cardmember" means any individual who has received an American Express Card at the request of a Basic Cardmember for use in connection with the Basic Cardmember's American Express Card account.

"American Express Card" shall mean, unless otherwise specified, any of the Cards or Accounts listed above under Covered Persons.

"Basic Cardmember" means any individual who has asked American Express to issue one or more American Express Cards and who has an American Express Card account.

"Common Carrier Conveyance" means an air, land or water vehicle (other than a rental) licensed to carry passengers for hire and available to the public.

A trip is a "Covered Trip" if:

1. it is a trip taken by the Covered Person between the point of departure and the final destination as shown on the Covered Person's ticket or verification issued by the Common Carrier Conveyance; and
2. the Covered Person's entire fare for such trip on that Common Carrier Conveyance has been actually charged to a specific American Express Card account prior to any Injury.

"Domestic Partner" means a person of the same or opposite gender who meets the following requirements:

1. has shared a residence with the Basic or Additional Cardmember for the last 12 months and plans to continue doing so;
2. is not married to any other person and is not committed to another Domestic Partner;
3. is at least 18 years old;
4. is not related to the Basic or Additional Cardmember by blood closer than would bar marriage per state law; and
5. is financially independent with the Basic or Additional Cardmember and documentation of mutual financial support such as copies of joint home ownership or lease, common bank accounts, credit cards or investments can be supplied.

"Injury" means bodily injury which:

1. is caused by an Accident which occurs while the Covered Person is insured by the Policy; and
2. results in Loss insured by the Policy; and
3. creates a Loss due, directly and independently of all other causes, to such accidental bodily injury.

"Permanent Residence" means the Covered Person's one primary dwelling place, where the Covered Person permanently resides.

**Benefit Amounts**

*As a benefit of Cardmembership, the Covered Person will receive a benefit level of $100,000 − $250,000 − $500,000 − $1,500,000 depending on the type of American Express Card account used to charge the Common Carrier Conveyance fare for the Covered Trip. Please refer to the* **Covered Persons** *section of this Description of Coverage. If you are still unsure what benefit level of coverage applies to your American Express Card, please contact the Customer Service Center toll-free number listed on the back of your Card, also shown on your Card statement.*

*Table of Losses*

| | | |
|---|---|---|
| Loss of Life | $100,000 | $250,000 |
| *Dismemberment* | | |
| Loss of both hands or both feet | $100,000 | $250,000 |
| Loss of one hand and one foot | $100,000 | $250,000 |
| Loss of entire sight of both eyes | $100,000 | $250,000 |
| Loss of entire sight of one eye | | |
| and one hand or one foot | $100,000 | $250,000 |
| Loss of one hand or one foot | $50,000 | $125,000 |
| Loss of entire sight of one eye | $50,000 | $125,000 |

*Table of Losses*

| | | |
|---|---|---|
| Loss of Life | $500,000 | $1,500,000 |
| *Dismemberment* | | |
| Loss of both hands or both feet | $500,000 | $1,500,000 |
| Loss of one hand and one foot | $500,000 | $1,500,000 |
| Loss of entire sight of both eyes | $500,000 | $1,500,000 |
| Loss of entire sight of one eye | | |
| and one hand or one foot | $500,000 | $1,500,000 |
| Loss of one hand or one foot | $250,000 | $750,000 |
| Loss of entire sight of one eye | $250,000 | $750,000 |

"Loss" as used above with reference to hand or foot means complete and permanent severance through or above the wrist or ankle joint, and as used with reference to eye means the irrecoverable loss of the entire sight of such eye.

**$100,000 − $250,000 − $500,000 − $1,500,000**
**Maximum Indemnity per Covered Person**

In no event will multiple American Express Cards obligate the Company to pay for more than one Loss sustained by any one Covered Person as a result of any one Accident. The Company's obligation under the Policy will be determined according to the highest amount payable under the specific American Express Card actually used to charge the Common Carrier Conveyance fare for the Covered Trip as stated in the Benefit Amounts.

In no event will a Loss from an Injury while coverage is in force under the Policy AX0948 obligate the Company to pay benefits under Policy AX0949, the Company's Business Travel Accident Insurance policy, in addition to any benefits payable by the Company under the Policy AX0948. The American Express Cards listed under this Policy do not receive coverage under Policy AX0949.

**Accidental Death and Dismemberment Benefit**

The Company will pay the applicable benefit amount as determined from the Table of Losses if a Covered Person suffers a Loss from an Injury while coverage is in force under the Policy; but only if such Loss occurs within 100 days after the date of the Accident which caused the Injury. Benefits will be paid for the greatest Loss. In no event will the Company pay for more than one Loss sustained by the Covered Person as the result of any one Accident.

**Description of Benefits**

**Common Carrier Benefit:** This Benefit is payable if the Covered Person sustains Injury as a result of an Accident which occurs while riding solely as a passenger in, or boarding, or alighting from or being struck by a Common Carrier Conveyance used on a Covered Trip.

**Exposure and Disappearance**

If the Covered Person is unavoidably exposed to the elements because of an Accident on a Covered Trip which results in the disappearance, sinking or wrecking of the Common Carrier Conveyance, and if as a result of such exposure, the Covered Person suffers a Loss for which Benefits are otherwise payable under the Policy, such Loss will be covered under the Policy.

If the Covered Person disappears because of an Accident on a Covered Trip which results in the disappearance, sinking or wrecking of the Common Carrier Conveyance, and if the Covered Person's body has not been found within 52 weeks after the date of such Accident, it will be presumed, subject to there being no evidence to the contrary, that the Covered Person suffered Loss of life as a result of Injury covered by the Policy.

**Coverage Requirements**

A Covered Person will be fully insured for benefits under the Policy while taking a trip on a Common Carrier Conveyance only when the fare has been charged to the specific American Express Card. Eligibility for coverage will remain in effect as long as the definition of a Covered Person is met.

**Premiums**

The premium for this coverage is payable by American Express.

**Exclusions**

This Policy does not cover any Loss caused or contributed to by (1) intentionally self-inflicted Injury, suicide or any attempt thereat, while sane; (2) war or any act of war whether declared or undeclared; however, any act committed by an agent of any government, party, or faction engaged in war, hostilities, or other warlike operations provided such agent is acting secretly and not in connection with any operation of armed forces (whether military, naval or air forces) in the country where the Injury occurs shall not be deemed an act of war; (3) Injury to which a contributory cause was the commission of or attempt to commit an illegal act by or on behalf of the Covered Person or his/her beneficiaries; (4) Injury received while serving as an operator or crew member of any conveyance; (5) Injury received while driving, riding as a passenger in, boarding or alighting from a rental vehicle; or (6) sickness, physical or

mental infirmity, pregnancy, or any medical or surgical treatment for such conditions, unless treatment of the condition is required as the direct result of a covered Injury.

**Beneficiary**

A Basic Cardmember may designate a beneficiary or change a previously designated beneficiary for himself/herself and his/her spouse/Domestic Partner and dependent children who are not also Basic or Additional Cardmembers. An Additional Cardmember may designate a beneficiary for himself/herself and his/her spouse/Domestic Partner and dependent children who are not also Basic or Additional Cardmembers or spouses/Domestic Partners or dependent children of Basic Cardmembers. No persons other than those stated above may designate or change a previously designated beneficiary. For such designation or change to become effective, a written request, on a form satisfactory to the Company, must be filed with American Express. Such designation or change shall take effect as of the date it was signed by the designator provided that it has been received by American Express, but any payment of proceeds made by the Company prior to receipt of such designation of change shall fully discharge the Company to the extent of such payment.

**Claims**

Notice of claim must be given to AMEX Assurance Company, Claims Administrative Office, PO Box 19018, Green Bay, WI 54307-9018 within 20 days after the occurrence or commencement of any Loss covered by the Policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the claimant to the Company at its Administrative Office, or to any authorized agent of the Company, with information sufficient to identify the Covered Person shall be deemed notice to the Company.

**Payment of Claims**

Benefits for Loss of life of a Covered Person will be paid to the designated beneficiary. Benefits for all other Losses sustained by a Covered Person will be paid to the Covered Person, if living, otherwise to the designated beneficiary. If more than one beneficiary is designated and the beneficiaries' respective interests are not specified, the designated beneficiaries shall share equally. If no beneficiary has been designated, or if the designated beneficiary does not survive the Covered Person, the benefits will be paid to the first surviving class of the following: 1) spouse or Domestic Partner; 2) children, equally per stirpes; and 3) the estate.

In determining such person or persons, the Company may rely upon an affidavit by a member of any of the classes of preference beneficiaries described above. Payment based upon any such affidavit shall fully discharge the Company from all obligations under the Policy unless, before such payment is made, the Company has received at its Administrative Office written notice of a valid claim by some other person(s). Any amount payable to a minor may be paid to the minor's legal guardian.

**Time Limit on Actions**

No action at law or in equity shall be brought to recover under the Policy after the expirations of three years, five years for Centurion Card, Corporate Centurion Card℠ from OPEN from American Express, after the time written proof of loss is required to be furnished.

The benefits described herein are subject to all of the terms and conditions of the Policy. This Description of Coverage replaces any prior Description of Coverage which may have been furnished in connection with the Policy.

Kenneth J. Ciak
President
6713-11-01-COM

Timothy S. Meehan
Secretary

**Notice to Florida Residents Only:** The benefits of the Policy providing your coverage are governed primarily by the laws of a state other than Florida.

*1. If, after reading this Description of Coverage, you are still unsure what benefit level of coverage applies to your American Express Card, please contact the Customer Service Center toll-free number listed on the back of your Card, also shown on your Card statement.*

**RETURN PROTECTION**

**Program Description**

Return Protection offers you guaranteed product satisfaction on designated items purchased entirely with an eligible American Express Card. If you try to return a designated item within 90 days from the date of purchase and the merchant won't take it back, American Express will refund the full purchase price, up to $300 per item, excluding shipping and handling, and up to a maximum of $1,000 annually per Cardmember Account.

**How to File a Return Protection Request**

Once you have verified that the merchant will not accept the designated item, call 1-800-297-8019 within 90 days of the purchase date to notify us of your request. Within 30 days from the date of your initial call, we need to receive the following:

- Original store receipt
- American Express Card record of charge
- Any other items deemed reasonable by us to process your request

Once your request has been approved, you will be instructed to send the purchased item to us within 30 days. Please keep a record of your shipping statement, as you will need to provide proof of shipping in the event that your designated items are not received. You are responsible for the shipping and handling charges for the item. The refund – up to $300 per item and up to a maximum of $1,000 per Cardmember per year – will be reimbursed to you.

**Limitations**

Purchases must be made in the United States and charged in full on your Card. A refund will not be paid if, on the date we receive your Return Protection Request, or on the date of would-be payment, any amount on your Card Account is past due for one or more billing cycle(s) or your Card is cancelled. Refunds are limited to $300 per designated item, and $1,000 annually per Cardmember Account. The item must be in "like new" condition (not visibly used or worn) and in working order to be eligible. An item is eligible if it may not be returned by the Cardmember to the merchant from which it was originally purchased. Any item purchased from a merchant that has an established return/satisfaction guarantee program which is greater than or equal to the terms of Return Protection, and provides coverage for claim, will not be eligible for a Return Protection Refund. Product rebates, discounts or money received from lowest price comparison programs will be deducted from the original cost of the item. The maximum you will be compensated will not exceed the manufacturer's suggested retail price.

Items not eligible for a refund are: animals and living plants; one-of-a-kind items (including antiques, artwork, and furs); limited edition items; going-out-of-business sale items; consumable or perishable items with limited life spans (such as perfume, light bulbs, non-rechargeable batteries); jewelry (including, but not limited to, loose gems, precious stones, metals, and pearls); watches; services and additional costs (such as installation charges, warranties, shipping, or memberships); rare and precious coins; used, altered, rebuilt and refurbished items; custom-built items, cellular phones; pagers; compact discs; digital video discs; mini discs; audiotapes; videotapes; computer software; firmware (such as console games, Nintendo, etc.); maps; books of any kind; health care items (such as blood pressure machines and diabetes equipment); formal wear; tickets of any kind; motorized vehicles (such as cars, trucks, motorcycles, boats, or airplanes) and their parts; land and buildings; firearms; ammunition; negotiable instruments (such as promissory notes, stamps and travelers checks); cash and its equivalent; and items permanently affixed to home, office, vehicles, etc., (such as garage door openers, car alarms).

If you have any questions regarding a Return Protection Request or the Return Protection program, please call our Customer Service Department at 1-800-297-8019.

© 2006 American Express

**Mr. David Lee**
**65 Lancaster Ave**
**Kentfield, CA 94904-1604**

November 30, 2006

**Certified Mail, Return Receipt Requested**
**Article Number 7006-0100-0004-6922-55411**

Mr. Kenneth I. Chenault
Chairman & C.E.O.
American Express Travel Related Services Company, Inc.
200 Vesey Street
New York, NY 10285-4601

Dear Mr. Chenault:

It has recently come to my attention that the law in California has been changing when it comes to credit cards and the arbitration provisions contained in them. As a holder, in good standing, of American Express "Platinum" card issued by your bank, which I frequently (and to your company's great financial benefit) use, I find this to be unacceptable. Thus, this letter is a demand, made under California Civil Code Section 1782, that the Bank of America Corporation (including any and all of its affiliates and subsidiaries) "correct, repair, replace, or otherwise rectify the goods or services" which I believe violate California Civil Code Section 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision in the contract." That provision was obviously designed to deprive me of my access to legal remedies, such as injunctive relief and class actions. Please remove it from the Cardmember agreement.

This demand is made on behalf of me personally, and on behalf of a class of others similarly situated.

I look forward to hearing from you in writing, concerning this letter

Very truly yours,

David Lee



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| Postage | $ | $0.39 | 0654 |
| Certified Fee | | $2.40 | 17 |
| Return Receipt Fee (Endorsement Required) | | $1.85 | |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $4.64 | 11/30/2006 |

Sent To
Kenneth I. Chenault
Street, Apt. No.; or PO Box No.
200 Vesey Street
City, State, ZIP+4
New York, NY 10285-4601

PS Form 3800, June 2002        See Reverse for Instructions

7006 0100 0004 6922 5411

SAN RAFAEL CA KENTFIELD STA
USPS
NOV 30 2006

**Mr. David Lee**
**65 Lancaster Ave**
**Kentfield, CA 94904-1604**

November 30, 2006

**Certified Mail, Return Receipt Requested**
**Article Number 7006-0100-0004-6922-5398**

Mr. David E. Poulsen
President & C.E.O.
American Express Centurion Bank
200 Vesey Street
New York, NY 10285-4601

Dear Mr. Poulsen:

  It has recently come to my attention that the law in California has been changing when it comes to credit cards and the arbitration provisions contained in them. As a holder, in good standing, of American Express "Platinum" card issued by your bank, which I frequently (and to your company's great financial benefit) use, I find this to be unacceptable.  Thus, this letter is a demand, made under California Civil Code Section 1782, that the Bank of America Corporation (including any and all of its affiliates and subsidiaries) "correct, repair, replace, or otherwise rectify the goods or services" which I believe violate California Civil Code Section 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision in the contract."  That provision was obviously designed to deprive me of my access to legal remedies, such as injunctive relief and class actions.  Please remove it from the Cardmember agreement.

  This demand is made on behalf of me personally, and on behalf of a class of others similarly situated.

  I look forward to hearing from you in writing, concerning this letter

Very truly yours,

David Lee

U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

NEW YORK NY 10285-4601

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.39 | 0654 |
| Certified Fee | | $2.40 | 17 |
| Return Receipt Fee (Endorsement Required) | | $1.85 | |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $4.64 | 11/30/2006 |

Postmark Here

Sent To
Mr. David Poulsen

Street, Apt. No.; or PO Box No.
200 Vesey Street

City, State, ZIP+4
New York, NY 10285-4601

PS Form 3800, June 2002          See Reverse for Instructions

7006 0100 0004 6922 5398

# Mr. David Lee
## 65 Lancaster Ave
## Kentfield, CA 94904-1604

November 30, 2006

**Certified Mail, Return Receipt Requested**
**Article Number 7006-0100-0004-6922-5404**

Mr. Douglas H. Short, III
President & C.E.O.
American Express Bank, FSB
4315 South 2700 West
Salt Lake City, UT 84184-0000

Dear Mr. Short:

It has recently come to my attention that the law in California has been changing when it comes to credit cards and the arbitration provisions contained in them. As a holder, in good standing, of American Express "Platinum" card issued by your bank, which I frequently (and to your company's great financial benefit) use, I find this to be unacceptable. Thus, this letter is a demand, made under California Civil Code Section 1782, that the Bank of America Corporation (including any and all of its affiliates and subsidiaries) "correct, repair, replace, or otherwise rectify the goods or services" which I believe violate California Civil Code Section 1770(a)(19) which makes it illegal to "insert[] an unconscionable provision in the contract." That provision was obviously designed to deprive me of my access to legal remedies, such as injunctive relief and class actions. Please remove it from the Cardmember agreement.

This demand is made on behalf of me personally, and on behalf of a class of others similarly situated.

I look forward to hearing from you in writing, concerning this letter.

Very truly yours,

David Lee



U.S. Postal Service™
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

SALT LAKE CITY UT 84184-0000

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.39 |
| Certified Fee | | $2.40 |
| Return Receipt Fee (Endorsement Required) | | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $4.64 |

0654

SAN RAFAEL CA KENTFIELD
Postmark Here
USPS
11/30/2006

7006 0100 0004 6922 5404

Sent To
Douglas H. Short, III
Street, Apt. No.; or PO Box No. 4315 South 2700 West
City, State, ZIP+4 Salt Lake City, UT 84184-0000

PS Form 3800, June 2002    See Reverse for Instructions

**AMERICAN EXPRESS**

December 11, 2006

**American Express Cards**
777 American Expressway
Fort Lauderdale, FL 33337

Mr. David Lee
65 Lancaster Avenue
Kentfield, CA 94904-1604

Re: 3725 707422 21007

Dear Mr. Lee,

Thank you for your correspondence to Kenneth Chenault, Chairman.  Mr. Chenault has asked me to respond on his behalf. Per your request, I am corresponding via letter; therefore I did not attempt to personally contact you by telephone.  I welcome this opportunity to be of assistance.

Although the credit card laws in California are changing, American Express Cards are governed by the laws of the State of Utah.   I have enclosed a copy of the Cardmember Agreement in regards to our position of arbitration provisions.

Mr. Lee, we appreciate the fact that you brought this matter to our attention.  You have been a valued Cardmember with American Express, and we appreciate your loyalty. If you have any questions, please contact me directly at 800 297 6197 extension 36369.

Sincerely,

Dina Colton
Executive Assistant

Enclosure

American Express Travel Related
Services Company, Inc.