1    **Matthew S. Hale, Esq.**
     **Calf. State Bar No. 136690**
     **45 Rivermont Drive, Newport News, VA 23601**
2    **Mailing Address: P.O. Box 1951**
     **Newport News, VA 23601**
3    **Telephone No. (757) 596-0309**
     **Facsimile No. (757) 596-3141**
4
     **Attorney for Plaintiff, SAMUEL A. BERRY**
5

**ELECTRONICALLY FILED**
**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF ORANGE**
**CIVIL COMPLEX CENTER**

**Nov  14 2005**

**ALAN SLATER, Clerk of the Court**
**by S. LILIO**

6                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
7                            **FOR ORANGE COUNTY**

8    **SAMUEL A. BERRY, as an individual and,** )    **Case No.: 05CC00049**
9    **on behalf of others similarly situated,**   )
                                                    )    **Assigned for all purposes to:**
10                      **Plaintiff,**              )    **Judge:    Kim G. Dunning**
                                                    )    **Dept:     CX-104**
11           **vs.**                                )
                                                    )
12                                                  )    **NOTICE OF RULING**
                                                    )
13   **AMERICAN EXPRESS PUBLISHING,**               )    **Date:  November 2, 2005**
     **CORPORATION, a New York corporation,**       )    **Time:  2:00 a.m.**
14   **AMERICAN EXPRESS TRAVEL**                    )    **Dept: CX-104**
     **RELATED SERVICES COMPANY, INC.,**            )
15   **a New York corporation, AMERICAN**           )
     **EXPRESS CENTURION BANK (dba,**               )
16   **AMERICAN EXPRESS BANK FSB, a**               )
     **Utah corporation, and DOES 1, through**      )
17   **100, inclusive,**                            )
                                                    )
18                                                  )
                      **Defendants.**               )
19                                                  )
                                                    )
20                                                  )
                                                    )
21                                                  )
                                                    )
22                                                  )
                                                    )
23   _____              )

24

25

                                        1

On November 2, 2005, Defendants' Motion to Stay Proceedings, and Compel Arbitration, and Plaintiff's Motion for Preliminary Injunction came on for hearing before the Honorable Kim G. Dunning. At this hearing, the Defendants were represented by attorney Andrew W. Mortiz. The Plaintiff was represented by attorney Matthew Hale.

After considering the argument of counsel to the Court by the Parties, through their attorneys, and good cause appearing therefore, the Court Ordered as followed:

1.    The Defendants' Motion to Stay Proceedings, and Compel Arbitration is denied.

2.    Plaintiff's Motion for Preliminary Injunction is denied without prejudice.

3.    A Status Conference is scheduled for Thursday, January 18, 2006, at 10:30 a.m.

Dated: November 14, 2005                    Respectfully submitted,


By:    _____
        Matthew S. Hale, Esq.
        Counsel for Plaintiff
        Samuel A. Berry

2

1

2

## PROOF OF SERVICE

3    I am employed in the City of Newport News, Virginia. I am over the age of eighteen (18)

4
and not a party to the within action; my business address is P.O. Box 1951, Newport News, VA

5
23601.

6    On Monday, November 14, 2005, I served by Federal Express overnight courier the

7
following documents: (1) Notice of Rule Re: November 2, 2005 Hearing

8
The foregoing documents were served on:

9

10    **Mr. Andrew W. Moritz, Esq.**
    **Stroock, Stroock & Laven**
11    **2029 Century Part East**
    **Los Angeles, CA 90067-3086**
12    **(310) 556-5907**

13    I declare under penalty of perjury, penalty of perjury pursuant to the laws of the State of

14
California, that the foregoing is true and correct. Executed on the 14th day of November 2005 in

15
Newport News, Virginia.

16

17    _____

18            Matthew S. Hale, Esq.

19

20

21

22

23

24

25

3

**Samuel A. Berry v. American Express Publishing Co., Inc., et al.**
**Notice of Ruling Re: November 2, 2005 Hearing**

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF ORANGE

3                    DEPARTMENT #CX-104

4

5   SAMUEL A. BERRY,                    )
                                        )
6              PLAINTIFF,               )
                                        )
7                 VS.                   ) NO. 05CC00049
                                        )
8   AMERICAN EXPRESS PUBLISHING, INC., )
    ET AL.,                             )
9              DEFENDANTS.              )
    _____)

10

11      HONORABLE KIM DUNNING, JUDGE PRESIDING

12              REPORTER'S TRANSCRIPT

13             NOVEMBER 2, 2005, 2005

14

15  APPEARANCES OF ATTORNEYS:

16      FOR THE PLAINTIFF: MATTHEW S. HALE,
                           ATTORNEY AT LAW

17

18

19

20      FOR THE DEFENDANTS: STROOCK & STROOCK & LAVAN LLP
                            BY:  ANDREW W. MORITZ,
21                               ATTORNEY AT LAW

22

23

24

    REPORTED BY:        JACKIE SIENSKI, CSR #12390, RPR
25                      COURT REPORTER PRO TEMPORE

26

1

2          SANTA ANA, CALIFORNIA; NOVEMBER 2, 2005

3

4                    AFTERNOON SESSION

5                      *  *  *  *  *

6

7          (WHEREUPON, THE FOLLOWING PROCEEDINGS WERE

8          HELD IN OPEN COURT)

9

10     THE COURT:  GOOD AFTERNOON.

11          COUNSEL, YOUR TIME IS VERY IMPORTANT, AND I

12     SINCERELY APOLOGIZE FOR THE DELAY IN STARTING TODAY'S

13     CALENDAR.  AND I APPRECIATE YOUR PATIENCE.

14          NO. 1, BERRY VS. AMERICAN EXPRESS.

15     MR. HALE:  GOOD AFTERNOON, YOUR HONOR.  MATTHEW HALE

16     FOR THE PLAINTIFF.

17     MR. MORITZ:  GOOD AFTERNOON, YOUR HONOR.

18     ANDREW MORITZ ON BEHALF OF THE DEFENDANTS,

19     AMERICAN EXPRESS.

20     THE COURT:  DO YOU WANT TO START WITH THE MOTION TO

21     COMPEL ARBITRATION?

22     MR. MORITZ:  YES, YOUR HONOR.  AS WE'RE THE MOVING

23     PARTY, WE'VE READ THE COURT'S TENTATIVE RULING.

24          ALTHOUGH WE RESPECTFULLY DISAGREE WITH THE

25     COURT'S RULING, INCLUDING PARTICULARLY WITH RESPECT TO THE

26     CHOICE OF LAW ANALYSIS, THAT WE BELIEVE THAT UTAH LAW

1   GOVERNS, PURSUANT TO CHOICE OF LAW PROVISION AND ANALYSIS

2   REQUIRED BY THE BOEHR DECISION FOLLOWING NEDLLOYD AND

3   WASHINGTON MUTUAL.  THAT ANALYSIS REQUIRES THAT IF THAT

4   PROVISION IS ENFORCEABLE, UTAH LAW SHALL BE APPLIED.  AND

5   THEREFORE THE COURT --

6       THE COURT:  I'M SORRY.  WE ALL AGREE THERE'S NO UTAH

7   CASE DIRECTLY ON POINT.  YOUR ARGUMENT AS TO THE

8   APPLICABILITY OF UTAH LAW IS BASED ON YOUR ANALYSIS WHICH

9   DEPENDS IN PART ON CITATION TO A GREAT NUMBER OF CASES

10  FROM OTHER STATES, BUT NOT IN CALIFORNIA.

11      MR. MORITZ:  WELL, THERE IS UTAH LAW GOVERNING THE

12  GENERALLY APPLICABLE DEFENSE OF UNCONSCIONABILITY.  IN

13  FACT, THERE ARE SEVERAL.

14      THE COURT:  DO WE ALL AGREE THERE'S NO UTAH CASE THAT

15  DISCUSSES CLASS ACTION WAIVERS AND ARBITRATIONS,

16  SPECIFICALLY?

17      MR. MORITZ:  UNCONSCIONABILITY OF A CLASS ACTION

18  WAIVER IN AN ARBITRATION AGREEMENT; IS THAT CORRECT?

19          I WOULD AGREE THAT THERE'S ANOTHER UTAH COURT

20  DECISION ADDRESSING THAT PARTICULAR ISSUE.

21      THE COURT:  NOW, UTAH HAS BOTH A SUBSTANTIVE AND A

22  PROCEDURAL KIND OF PRONG.  I THINK YOU CAN SEE THAT.

23      MR. MORITZ:  THAT'S CORRECT.

24      THE COURT:  DO YOU THINK IT'S FAIR TO SAY THAT THE

25  STATES THAT EITHER HAVE CONSIDERED IT, OR IT'S PRETTY

26  CLEAR FROM THE CASES THEY HAVE CONSIDERED, THAT THEY DON'T

1    HAVE A PROBLEM WITH THE CLASS ACTION WAIVER AND

2    ARBITRATION PROVISION.  THEY ARE NOT SO MUCH THE

3    SUBSTANTIVE STATES.  THEY ARE THE ONES THAT TALK ABOUT

4    ARBITRATION AS THE PROCEDURAL -- FROM THE PROCEDURAL

5    PRONG.

6        MR. MORITZ:  NO, I WOULDN'T AGREE WITH THAT,

7    YOUR HONOR.  FOR EXAMPLE, IN NEW YORK LAW, THE CASES HOLD

8    THAT THEY ENFORCE --

9        THE COURT:  LET ME ASK YOU, WHY IS IT NEW YORK LAW,

10   PARTICULARLY?

11       MR. MORITZ:  WELL, YOU ASKED ABOUT -- WELL, IN THIS

12   PARTICULAR CASE, IT RELATES TO THE -- WHEN WE GO DOWN THE

13   ROAD, TO THE MOTION FOR PRELIMINARY INJUNCTION.

14       THE COURT:  LET'S STAY ON YOUR OWN MOTION.

15       MR. MORITZ:  OKAY.  NEW YORK LAW IS ONE OF THE STATES

16   THAT -- YOU ASKED ME -- MOST OF THE STATES DEAL WITH IT.

17   IF THEY ARE GOING TO ENFORCE THE CLASS ACTION WAIVER, THE

18   CLASS ARBITRATION WAIVER, IT IS BECAUSE THEY FIND THAT

19   IT'S NOT -- THAT IT'S SUBSTANTIVE, OR THAT IT'S

20   PROCEDURALLY OKAY.  THAT'S WHAT YOU'RE SAYING?

21       THE COURT:  RIGHT.

22       MR. MORITZ:  BUT I'M SAYING THAT THERE ARE COURTS THAT

23   HOLD THAT THE SUBSTANCE OF SUCH A PROVISION IS NOT

24   UNCONSCIONABLE.  IT DOESN'T SHOCK THE CONSCIENCE.

25       THE COURT:  BUT WE'VE GOT TWO KINDS OF -- WELL, OKAY.

26   WE'VE GOT THREE KINDS OF RESULTS.  WE'VE GOT CALIFORNIA.

1    THIS PROVISION WOULD BE UNCONSCIONABLE.

2        MR. MORITZ:  IN CERTAIN CIRCUMSTANCES.

3        THE COURT:  ACTUALLY -- BUT WE'RE TALKING ABOUT -- I

4    THINK THIS IS WHAT DISCOVER BANK AND THE --

5        MR. MORITZ:  THE BOEHR -- I CALL IT THE BOEHR

6    DECISION.  BUT THAT'S THE REAL PARTY.  AND IN IT --

7        THE COURT:  BUT I'LL CALL IT THE NAME OF THE CASE,

8    WHICH IS DISCOVER BANK.  IT'S THE SUPREME COURT CASE.

9    THAT WAS PRECEDED BY A COUPLE YEARS.  IT'S CALLED THE

10   SZETELA CASE, WHICH IS ALSO A DISCOVER BANK CASE, THE ONE

11   FROM A COURT OF APPEAL DOWN THE STREET.

12        WE'VE HAD A COUPLE OF OTHER APPELLATE DECISIONS.

13   AND CALIFORNIA LAW IS PRETTY CLEAR.  I THINK THE

14   DISCOVER BANK CASE DEALT WITH THE CLAUSE VERY SIMILAR TO

15   THE ONE THAT IN THE PARTY'S AGREEMENT HERE.

16        OKAY.  SO WE'VE GOT STATES THAT SAY -- THAT LOOK

17   AT ARBITRATION AS KIND OF A SUBSTANTIVE OR SUBSTANTIVE AND

18   PROCEDURAL ISSUE.  WE'VE GOT SOME STATES THAT DEAL

19   PRIMARILY WITH ARBITRATION AS PROCEDURAL.  AND THEN --

20   RIGHT.  THERE ARE SOME.

21        MR. MORITZ:  I'M NOT SURE I UNDERSTAND WHAT YOU'RE

22   SAYING, YOUR HONOR, BUT --

23        THE COURT:  MAYBE I SHOULD JUST GO AHEAD AND LET YOU

24   RUN THROUGH.  BUT YOU SPENT A LOT OF TIME ON A LOT OF

25   OTHER STATES.  NOT VERY MUCH TIME ON UTAH, WHICH ISN'T

26   REALLY VERY SURPRISING.  THAT'S CERTAINLY NO CRITICISM.

1  BUT THERE ISN'T A LOT OF UTAH LAW.  WHAT THE COURT GLEANED

2  IN A REVIEW OF UTAH CASES, IS THAT A UTAH ARBITRATION ACT

3  IS BASED PRETTY CLOSELY ON THE FEDERAL ARBITRATION ACT.

4  AND SO UTAH, THEY TEND TO LOOK TOWARDS CASES DEALING WITH

5  THE FEDERAL ARBITRATION ACT.  IN FACT, FEDERAL CASES.

6          BUT I THINK THE UTAH SUPREME COURT HAS BEEN

7  PRETTY CLEAR.  HOWEVER, WE'RE OUR OWN COURT, AND WE'LL

8  DECIDE THE ISSUES.  WE PRETTY MUCH CAN DECIDE THE ISSUES

9  THE WAY WE THINK.  WE'RE NOT DEFERRING ANY KIND OF

10  ANALYSIS OR CONCLUSION TO ANY OTHER STATE OR FEDERAL BODY.

11  SO THAT SEEMS A PRETTY FAIR READING OF UTAH CASES.

12     MR. MORITZ:  I BELIEVE THAT THEY SET FORTH WHAT THEIR

13  STANDARD FOR UNCONSCIONABILITY ARE, WHAT THEY BELIEVE THAT

14  IS.

15     THE COURT:  YES, I AGREE.  BUT -- OKAY.  THE UTAH

16  COURTS HAVE NOT CONSIDERED THE CLASS ACTION WAIVER,

17  SPECIFICALLY.

18     MR. MORITZ:  THAT IS CORRECT.

19     THE COURT:  SO GO AHEAD.  NOW YOU'RE GOING TO TELL ME

20  ABOUT -- WHY YOU THINK THE WAY -- BECAUSE UTAH COURTS HAVE

21  CONSIDERED THE UNCONSCIONABILITY ASPECT JUST OF

22  ARBITRATION PROVISIONS IN GENERAL.

23          ONE WAY THAT THIS COURT SHOULD NECESSARILY KIND

24  OF EXTRAPOLATE THAT AND COME TO THE CONCLUSION UNDER UTAH

25  LAW.  THIS WOULD BE CONSCIONABLE.

26     MR. MORITZ:  WELL, IT'S NOT UNCONSCIONABLE.  UNDER

1   UTAH LAW, UNCONSCIONABILITY IS A HEAVY BURDEN.  THAT'S

2   WHAT THE SUPREME COURT SAYS.  THE SUPREME COURT OF UTAH.

3   IT REQUIRES ESTABLISHING CLEAR AND CONVINCING EVIDENCE

4   THAT AN AGREEMENT IS UNCONSCIONABLE.  AND SO WITH THAT IN

5   MIND, AND LOOKING --

6        THE COURT:  HOW IS THAT BURDEN DIFFERENT FROM THE

7   BURDEN THAT CALIFORNIA COURTS PUT ON?  THAT CALIFORNIA

8   COURTS, LIKE UTAH COURTS, LIKE THE IDEA OF ARBITRATION IN

9   GENERAL.

10       MR. MORITZ:  THAT'S CORRECT.

11       THE COURT:  IT'S A GOOD THING.  COURTS SHOULD

12  ENCOURAGE IT AND FIND THAT THESE PROVISIONS WORK, IF WE

13  CAN.

14            I MEAN, THAT'S PRETTY MUCH WHAT THE

15  CALIFORNIA APPELLANT AND SUPREME COURT LINE OF AUTHORITIES

16  SAY, DON'T YOU THINK?

17       MR. MORITZ:  THAT ARBITRATION IS FAVORED?

18       THE COURT:  ABSOLUTELY.

19       MR. MORITZ:  YES, I WOULD AGREE WITH YOUR HONOR.  AND

20  I WOULD AGREE WITH THE FACT THAT IN UTAH, COURTS LOOK TO

21  AND GIVE HEEDANCE TO THE FACT THAT WHEN AN ARBITRATION

22  AGREEMENT IS INVOLVED, THAT YOU INTERPRET THE AGREEMENT TO

23  FAVOR ARBITRATION.  YOU RESOLVE ANY DOUBTS IN FAVOR OF

24  ARBITRATION, BECAUSE OF THE STRONG POLICY FAVORING

25  ARBITRATION.

26            THEREFORE, IF THERE'S A DOUBT IN THIS PARTICULAR

1   CASE, WHETHER THIS PROVISION IS UNCONSCIONABLE UNDER UTAH

2   LAW BECAUSE WE'RE DEALING WITH AN ARBITRATION AGREEMENT,

3   AND BECAUSE OF THAT STRONG POLICY FAVORING ARBITRATION,

4   THEN THE COURT SHOULD FIND THAT AGREEMENT INTERPRETED TO

5   BE ENFORCEABLE AND NOT UNCONSCIONABLE.

6          THIS IS PARTICULARLY TRUE WITH RESPECT TO THE

7   FACT THAT UNDER UTAH LAW, SINCE WE'RE TALKING ABOUT IT,

8   THE PROCEDURAL UNCONSCIONABILITY ASPECT IS COMPLETELY

9   MISSING FROM THIS CASE.  PLAINTIFF HASN'T ESTABLISHED

10  EVIDENCE THAT THIS ARBITRATION AGREEMENT IS PROCEDURALLY

11  UNCONSCIONABLE.

12         NOW, IF YOU'RE --

13  THE COURT:  COUNSEL, I DON'T THINK THAT UTAH REQUIRES

14  THAT BOTH PRONGS BE SATISFIED.

15  MR. HALE:  IN MOST COURTS THERE IS ONE QUOTE FROM A

16  COURT THAT STATES THAT THEY HAVE RECOGNIZED SITUATIONS

17  WHERE IT COULD OCCUR.  BUT IN THIS PARTICULAR CASE THE

18  SITUATION DOESN'T SEEM TO BE SO EGREGIOUS THAT IT WOULD BE

19  ESTABLISHING A RIGHT TO UNCONSCIONABILITY.

20  THE COURT:  I THOUGHT THAT UTAH SUPREME COURT'S

21  POSITION IS, THERE ARE TWO PRONGS, BUT YOU DON'T NEED TO

22  SATISFY BOTH TO FIND SOMETHING UNCONSCIONABLE.  IN OTHER

23  WORDS, IF THERE IS A SUBSTANTIVE AREA THIS

24  UNCONSCIONABILITY STANDARD IS MET THERE.  NOW, WE'RE

25  TALKING KIND OF IN A VACUUM.

26  MR. MORITZ:  RIGHT.

1    THE COURT:  JUST A MOMENT, PLEASE -- I'M SORRY -- THAT

2  YOU DON'T HAVE TO FIND ALSO A PROCEDURAL

3  UNCONSCIONABILITY; IS THAT TRUE?

4    MR. MORITZ:  THERE IS A QUOTE FROM A CASE THAT SAYS,

5  IF THEY RECOGNIZE THAT THERE MAY BE SITUATIONS WHERE AN

6  AGREEMENT WOULD BE SO SUBSTANTIVELY UNCONSCIONABLE, THAT

7  THE PROCEDURAL ELEMENT MAY NOT NEED BE SATISFIED.

8    THE OTHER WAY DOESN'T GO.  YOU CAN HAVE JUST

9  PROCEDURAL UNCONSCIONABILITY.  BUT THE COURT'S GENERALLY

10  LOOKS AT IT FROM BOTH STANDARDS.  LOOKING FOR PROCEDURAL;

11  LOOKING FOR SUBSTANTIVE.

12    THERE'S NOTHING THAT'S ABOUT THIS TYPE OF

13  AGREEMENT THAT'S SO SHOCKING TO THE CONSCIOUS,

14  PARTICULARLY GIVEN THE FACT THAT THE VAST MAJORITY OF

15  STATES, ACCORDING TO THE CALIFORNIA SUPREME COURT,

16  ACTUALLY UPHOLD THESE TYPE OF CLASS ACTION LABOR.  AND I'M

17  REFERRING TO THE DECENT OPINION.  CONCURRING THE DECENT

18  OPINION, THEY RECOGNIZE THAT AND CITE THE NUMEROUS CASES.

19  SO I'M NOT SURE YOU COULDN'T SAY THAT THIS IS A CASE THAT

20  INVOLVING SUBSTANTIVE UNCONSCIONABILITY THAT'S SHOCKING

21  THE CONSCIENCE.

22    BUT THAT BEING SAID, THE THERE'S NO EVIDENCE OF

23  PROCEDURAL UNCONSCIONABILITY HERE.  WE HAVE A FORMAL

24  AGREEMENT.

25    THE COURT:  THEN DON'T SPEND A LOT OF TIME ON IT.

26  TELL ME ABOUT THE SUBSTANTIVE UNCONSCIONABILITY.

1    MR. MORITZ:  WITH RESPECT TO THE SUBSTANTIVE

2  UNCONSCIONABILITY ISSUE, IT REALLY COMES DOWN TO THE CLASS

3  ACTION WAIVER, AND WHETHER THAT IS SHOCKING THE CONSCIENCE

4  TO REQUIRE A PERSON, A CUSTOMER IN A DISPUTE, TO ARBITRATE

5  THEIR CLAIMS ON AN INDIVIDUAL BASIS.

6        GIVEN THE FACT THAT THE LAW FAVORS ARBITRATION,

7  THEY WANT SPEEDY RESOLUTION TO CUSTOMER DISPUTES.

8  ARBITRATION IS FAVORABLE.  IT --

9    THE COURT:  SLOW DOWN.

10    MR. MORITZ:  -- ALLOWS THEM FOR THE OPPORTUNITY TO

11  HAVE A EFFICIENT, SPEEDY MECHANISM TO RESOLVE DISPUTES.

12    THE COURT:  THOSE ARE ALL PLATITUDES THAT WE ALL KNOW,

13  AND WE ALL ACCEPT ABOUT ARBITRATION.

14        LET'S TALK ABOUT THIS AGREEMENT.  YOU HAVE

15  CONCEDED AND ADMITTED YOU HAVE NO PROBLEM WITH THE

16  FOLLOWING STATEMENT, BECAUSE I BELIEVE YOU MADE IT IN YOUR

17  PAPERWORK, THAT IF YOUR MOTION TO COMPEL ARBITRATION IS

18  GRANTED, THIS COURT NEEDS TO DIRECT WHOEVER WILL CONDUCT

19  THE ARBITRATION IN UTAH TO DO THIS AS AN INDIVIDUAL CLAIM.

20        OKAY, NOW JUST BEAR WITH ME A MINUTE HERE.  THIS

21  TWO FILED -- THIS IS A PUNATIVE CLASS ACTION CASE.  THIS

22  IS NOT AN INDIVIDUAL CLAIM LAWSUIT.  BOTH SIDES IN A

23  PUNATIVE CLASS ACTION CASE, HAVE THE RIGHT TO

24  DETERMINATION AS TO CLASS CERTIFICATION.

25        NOW IN CALIFORNIA, WE SORT OF HANDLED THAT WITH

26  THE ARBITRATION, AND THE -- WHAT THE ARBITRATOR CAN DO.

1   BUT IN ORDER TO BEGIN YOUR MOTION, THIS COURT NEEDS TO

2   CHANGE THE VERY NATURE OF THIS LAWSUIT AND BASICALLY, IN

3   FACT, TAKE AWAY PLAINTIFF'S RIGHT.  AND SOME PEOPLE MAY

4   SAY THEY HAVE GOT A DUE PROCESS RIGHT, BECAUSE THEY HAVE A

5   RIGHT TO A HEARING ON CLASS CERTIFICATION ISSUES.  AND

6   JUST BASICALLY WITHOUT ANY KIND OF HEARING, WITHOUT ANY

7   KIND OF EVIDENCE, WITHOUT ANY KIND OF WHAT WE'RE USED TO,

8   I'M USING DUE PROCESS.  NOT THAT THERE'S A FUNDAMENTAL

9   CONSTITUTIONAL RIGHT TO THIS, BUT JUST THAT THIS IS THE

10  WAY CLASS ACTION CASES DEVELOPE, TO DETERMINATION AS TO

11  WHETHER CLASS CERTIFICATION IS APPROPRIATE OR NOT.  NOW I

12  MENTION IT NOW, BECAUSE THIS IS GOING TO COME UP WHEN WE

13  TALK ABOUT YOUR MOTION, TOO.

14      BUT SO, IN ORDER -- IT'S NOT JUST FOLLOWING THE

15  ARBITRATION.  I HAVE TO CHANGE THE NATURE OF THIS LAWSUIT

16  IN ORDER TO MAKE IT FIT THE ARBITRATION CLAUSE THAT YOU'RE

17  SEEKING TO ENFORCE.  I SEE THAT AS A LITTLE BIT OF A

18  PROBLEM.

19      MR. MORITZ:  I UNDERSTAND THAT WAS IN YOUR COURT'S

20  TENTATIVE RULING.  AND I UNDERSTAND YOUR COURT'S POSITION.

21  IT'S OUR POSITION THAT HAVING AGREED TO ARBITRATE THEIR

22  CLAIMS, SET UPON ELECTION BY EITHER PARTY, THEY ARE BOUND

23  TO ARBITRATION, PURSUANT TO THE TERMS OF THE ARBITRATION.

24  AND THAT'S WHAT OUR POSITION IS.

25      THE COURT:  ACCORDING TO THE ARBITRATION AGREEMENT, I

26  THINK IT'S FAIR TO READ IT, THEN IF YOU'RE AGREEING WITH

1    INDIVIDUAL CLAIMS.

2        MR. MORITZ:  THAT'S CORRECT.

3        THE COURT:  WE'RE NOT DEALING WITH INDIVIDUAL CLAIMS

4    HERE.  WE'RE DEALING WITH A PUNITIVE CLASS ACTION.  WHAT

5    WOULD HAPPEN -- AND I'M NOT SUGGESTING ANYTHING TO

6    ANYBODY.  BUT THAT WOULD HAPPEN IF YOU WAITED UNTIL AFTER

7    THE CLASS CERTIFICATION MOTION, AND THE COURT FINDS THERE

8    IS NO CLASS.  THERE'S NOT AN INDIVIDUAL CLAIM, AND YOU

9    MAKE A MOTION TO COMPEL ARBITRATION.

10        AT THAT POINT DO YOU RUN THE RISK?  WELL, YOU

11    KNOW IT FUNNELS ALONG IN THE COURT SYSTEM FOR SO LONG,

12    IT'S TOO LATE TO MAKE A MOTION TO COMPEL ARBITRATION.

13        BUT IT'S THE ONE THING TO TAKE -- PREDISPUTE, TO

14    TAKE FUTURE POTENTIAL DISPUTE OUT OF THE COURT SYSTEM, AND

15    PUT IT INTO ARBITRATION.  AND IT SEEMS QUITE ANOTHER TO

16    TELL ONE PARTY.  ALTHOUGH IN ALL FAIRNESS, I THINK IT'S

17    BILATERAL, ALTHOUGH I'M NOT AWARE OF --

18        MR. MORITZ:  IT IS.

19        THE COURT:  -- OF TOO MANY CASES WHERE A DEFENDANT

20    WANTS TO BE PART OF A CLASS AND BRING A WHOLE BUNCH OF

21    OTHER PEOPLE IN.  BUT IT'S WORDED SO THAT IT'S RECIPROCAL

22    THAT YOU CAN ONLY SUE FOR CERTAIN KINDS OF THINGS.  BUT

23    THE WAY IT'S REPORTED IS, IF YOU SUE FOR THESE KINDS OF

24    THINGS, THEN THIS ARBITRATION PROVISION CLICKS IN HERE.

25    BY DESIGN, BY LUCK, BY WHATEVER, IT'S NOT A STATUTE FOR

26    DAMAGES.  IT'S NOT AN INDIVIDUAL CLAIM.  IT'S A PUNITIVE

1  CLASS ACTION.

2       SO IT SEEMS THAT UNDER -- THERE'S ONE LINE OF

3  REASONING, IT'S NOT PARTICULARLY UNREASONABLE THAT THEIR

4  LAWSUIT DOESN'T EVEN FALL WITHIN THE ARBITRATION

5  PROVISIONS.  BECAUSE IT'S NOT AN INDIVIDUAL CLAIM.  YOU

6  WANTED TO TRANSFORM IT TO AN INDIVIDUAL CLAIM, BUT IN

7  ORDER TO DO THAT, YOU NEED AN ORDER FROM THIS COURT, THAT

8  IT'S NOT ONLY, DO YOU ARBITRATE, BUT YOU HAVE TO CHANGE

9  THE NATURE OF THIS LAWSUIT AND MAKE AN INDIVIDUAL CLAIM.

10      I THINK IT IS A BIG PROBLEM.  I THINK THAT'S A

11 BIG PROBLEM.  PLUS, I'M PRETTY SURE I DON'T AGREE WITH

12 YOUR ANALYSIS, WHICH WAS SET OUT IN YOUR PAPERWORK WHERE

13 UTAH LAW IS INVOLVED.

14     MR. MORITZ:  WELL, YOUR HONOR, TO CONCLUDE THAT WHAT

15 IS SET FORTH IN OUR PAPERS, WE RESPECTFULLY DISAGREE WITH

16 THE COURT'S RULING, AND WITH THE COURT'S REASONING TO THE

17 CHOICE OF LAW ANALYSIS.

18      WE ARE PREPARED TO SUBMIT ON THE TENTATIVE RULING

19 WHICH WAS WHAT I WOULD HAVE DONE.  BUT WE WOULD BE

20 PREPARED TO SUBMIT ON THE TENTATIVE RULING WITH THE

21 UNDERSTANDING THAT THE COURT'S RULING AND THIS MOTION IS

22 WITH RESPECT TO THE ISSUE OF WHETHER OR NOT PLAINTIFF'S

23 CLAIM IS SUBJECT TO ARBITRATION.  AND THE COURT'S RULING

24 IS NOT WITH RESPECT TO WHETHER OR NOT PLAINTIFF HAS

25 ESTABLISHED AN ELEMENT OF HIS AFFIRMATIVE CLAIM IN THIS

26 CASE, THAT THE ARBITRATION PROVISION IS SOMEHOW

1  UNCONSCIONABLE.  WHICH IS AN UNDERSTANDING THAT IS DRIVEN

2  BY --

3      THE COURT:  BY PLAINTIFF'S MOTION TO FOR PRELIMINARY

4  INJUNCTION.

5      MR. MORITZ:  WELL, ALSO BY THE FACT THAT --

6      THE COURT:  YOU'RE GOING TO HAVE A CHANCE TO ADDRESS

7  THAT TOO.

8      MR. MORITZ:  RIGHT.  ALSO WITH RESPECT TO THE FACT

9  THAT A RULING DENYING A MOTION TO COMPEL ARBITRATION IS

10  SUBJECT TO APPEAL, SUBJECT TO AUTOMATIC APPEAL.

11      THE COURT:  I DON'T THINK IT'S AN AUTOMATIC APPEAL.  I

12  THINK YOU ACTUALLY HAVE TO DO SOMETHING.  YOU'RE TALKING

13  ABOUT A STAY.

14      MR. MORITZ:  WELL, YOU HAVE TO ACTUALLY FILE A NOTICE

15  OF APPEAL.

16      THE COURT:  YES.

17      MR. MORITZ:  1294 OF CODE OF CIVIL PROCEDURE.  BUT OUR

18  POSITION WOULD NOT BE TO WAIVE ANY RIGHT -- TO WAIVE ANY

19  CHALLENGE TO THE FACT THAT ANY DETERMINATION MADE BY THIS

20  COURT IN THE CONTEXT OF THIS MOTION, THAT THE ARBITRATION

21  PROVISION IN ANY WAY IS SOMEHOW UNCONSCIONABLE.

22      THE COURT:  I'M SORRY.  YOU'RE TELLING ME THAT YOU

23  DISAGREE WITH THE COURT'S RULING, AND YOU THINK SOMEHOW BY

24  DISAGREEING, YOU'VE GIVEN UP YOUR RIGHT TO APPEAL?

25      MR. MORITZ:  NO, NO.  I'M JUST SAYING THAT IT'S OUR

26  UNDERSTANDING THAT THE COURT'S RULING IN THIS REGARD

1   RELATES TO THIS PARTICULAR MOTION, NOT WITH RESPECT TO

2   PLAINTIFF'S AFFIRMATIVE CLAIM BROUGHT UNDER THE C.L.R.A.

3       THE COURT:  I'M NOT RULING ON THE MERITS OF THE

4   LAWSUIT.  I'M RULING ON YOUR MOTION TO COMPEL ARBITRATION.

5       MR. MORITZ:  THANK YOU.

6       THE COURT:  IT'S REALLY SIMPLE.

7           YES, COUNSEL.

8       MR. HALE:  MAY I GO TO THE PODIUM, YOUR HONOR?

9       THE COURT:  YES.

10      MR. MORITZ:  I WANT TO INTERJECT AND CLARIFY IT, SO WE

11  DON'T GO DOWN THE WRONG TRACK HERE.  WE DO HAVE AN

12  INDIVIDUAL CLAIM HERE.  IF YOU LOOK AT THE PRAYER OF MY

13  CLIENT, IT SAYS THAT THIS LAWSUIT WAS BROUGHT ON BEHALF,

14  INDIVIDUALLY OF SAM BERRY, AND UPON THE BASIS OF -- ON

15  BEHALF OF A PUNATIVE CLASS.

16      THE COURT:  IT'S THE STANDARDS OF THE CLASS ACTION.

17      MR. HALE:  WE WOULD NOT HAVE BEEN ABLE TO FILE THIS,

18  HAD HE NOT BROUGHT AN INDIVIDUAL CLAIM.  SO THAT WAS IN

19  PLAY.

20      THE COURT:  COURT'S DISCUSSION WAS TO GRANT THE

21  DEFENDANT'S MOTION.  COURT HAS TO COMPLETELY KNOCK OUT THE

22  CLASS ACTION ALLEGATIONS, ESSENTIALLY.

23      MR. HALE:  RIGHT.

24      THE COURT:  DO YOU AGREE?

25      MR. MORITZ:  I AGREE WITH THAT THAT WAS THE PROPER

26  APPLICATION LAW UNDER KAGAN.  AND THE COURT'S RULING ON

1    DISCOVER BANK.

2        THE COURT:  SO YOU'RE WILLING TO HAVE THE COURT DO

3    THAT AND SEND THIS TO ARBITRATION?

4        MR. HALE:  NO, I'M NOT WILLING TO SEND IT.  IT DOESN'T

5    NEED ARBITRATION.  IF I COULD GO THROUGH MY LITANY HERE.

6        THE COURT:  SURE.

7        MR. HALE:  I THINK THE ONE IMPORTANT ELEMENT THE COURT

8    HAS MISSED HERE, WHICH IS VERY IMPORTANT, IS THAT THIS

9    CASE IS OUTSIDE THE FAA, THE FEDERAL ARBITRATION ACT,

10   9 U.S.C., SECTION 1 THROUGH 16.  THE REASON FOR THAT IS,

11   THE UNITED STATES SUPREME COURT IN THE GILMER CASE SAID

12   THAT CASES ARE ONLY ELIGIBLE FOR ARBITRATION UNDER THE FAA

13   IF ONE COULD GET THE SAME AVAIL -- THEMSELVES TO THE SAME

14   RIGHTS AND REMEDIES THEY COULD IN COURT.

15        NOW, PURSUANT TO THE ARBITRATION CLAUSE THERE,

16   AMERICAN EXPRESS' CARD MEMBER CONTRACT, IT TALKS IN TERMS

17   OF ONLY "YOU AND US" MAY GO TO COURT AND FIGHT THIS OUT.

18   ALL RIGHT?

19        BY THAT VERY NATURE "YOU AND US," YOU'RE

20   EXCLUDING THE TYPE -- THEY ARE EXCLUDING THE TYPE OF

21   BROAD-BASED PUBLIC POLICY, PUBLIC INTEREST, INJUNCTIVE

22   LAWSUITS, AND CLASS ACTION.  CLASS ACTIONS IS A REMEDIAL

23   REMEDY IN THAT SITUATION.

24        AS A CONSEQUENCE, THIS ENTIRE CASE BASED ON THE

25   FAA, DOESN'T FALL WITHIN THE FAA.  AND THIS DOESN'T HAVE

26   TO GO TO ARBITRATION.  AND WE MAY PROCEED PURSUANT TO

1  STATE LAW.

2      THE COURT:  WHICH STATE LAW?

3      MR. HALE:  WELL, IN THIS CASE.

4      THE COURT:  MAYBE WE DON'T NEED TO GET YET.

5      MR. HALE:  WE DON'T NEED TO GET THERE.

6      THE COURT:  OKAY.

7      MR. HALE:  STAY THIS CASE SOLELY ON THE FAA, I WOULD

8  SUBMIT THAT YOUR DECISION IN THIS CASE WOULD BE COMPLETELY

9  UNASSAILABLE IN THE COURT OF APPEAL AND EVEN IN THE

10 UNITED STATES SUPREME COURT, YOUR HONOR.

11     THE COURT:  THAT'S THE BEAUTY AND THE FOILLE OF WHAT

12 WE DO HERE.  I CAN BE RIGHT FOR THE WRONG REASON, AND I'M

13 STILL RIGHT.  I CAN BE WRONG FOR ANY REASON, AND I'M STILL

14 WRONG.

15     MR. HALE:  I'M JUST ASKING YOU TO MODIFY YOUR ORDER TO

16 INCLUDE THE FINDING OF THE FAA.

17     THE COURT:  LET'S BE REAL CLEAR.

18         THE TENTATIVE RULING IS SUPPOSED TO HELP AND

19 ASSIST YOU IN ARGUMENT.  THE RULING, IF THE COURT -- IF

20 YOU HAVEN'T PERSUADED THE COURT, WILL BE -- THE MOTION TO

21 COMPEL ARBITRATION IS DENIED.

22         SO I'M NOT AWARE THAT I ACTUALLY HAVE TO DENY IT

23 WITH REASON, LIKE WE DO WITH SOME OTHER.  I DON'T THINK

24 YOU'RE FORECLOSED FROM TAKING ANY POSITION YOU WANT.

25     MR. HALE:  I MEAN, IT'S OBVIOUS THIS CASE IS GOING TO

26 GO UP ON APPEAL.

1     THE COURT:  APPARENTLY.

2     MR. HALE:  AND I THOUGHT, IF THE COURT WOULD ELUCIDATE

3     ITS DECISION, IT WOULD MAKE IT EASIER FOR EVERYBODY.

4     I'LL JUST THROW THAT OUT THERE.  I HOPE I DIDN'T

5     OFFEND YOU.

6     THE COURT:  NO OFFENSE TAKEN.  IT'S JUST -- YOU JUST

7     NEED -- WE ALL JUST NEED TO BE ON THE SAME PAGE RIGHT NOW,

8     CANDIDLY.  AND NOTHING YOUR COLLEAGUE HAS SAID HAS

9     CONVINCED THE COURT YET THAT I SHOULD DO ANYTHING OTHER

10    THAN TO DENY THE MOTION TO COMPEL ARBITRATION.

11    APPARENTLY A PROMISE FROM BOTH OF YOU, THAT

12    YOU'RE GOING TO GET A REVIEW FROM HIGHER COURT.  YOU'VE

13    GOT REALLY COMPREHENSIVE PAPERWORK HERE.  SO IF THE COURT

14    OF APPEALS CAN CONSIDER WHATEVER YOU PRESENT TO IT.

15    MR. HALE:  THAT'S TRUE.

16    THE COURT:  IT'S ALL IN HERE.

17    MR. HALE:  OKAY.  WELL, SO THE FIRST ANALYSIS OR LEVEL

18    WOULD BE THE FAA.  AND THEN WE MOVE ON TO THE STATE LAW

19    WHOSE LAW APPLIES.  AND I THINK CLEARLY IN LIGHT OF THE

20    SUPREME COURT, CALIFORNIA SUPREME COURT'S DECISION IN THE

21    DISCOVER BANK CASE AND THE BROUGHTON CASE AND THE CRUZ

22    CASE IN WHICH BOTH OF THOSE DEAL WITH INJUNCTIONS.  THIS

23    IS OUTSIDE ARBITRATION, BECAUSE IT ALL IMPLICATES

24    BROAD-BASED PUBLIC POLICY AND REMEDIAL-TYPE ISSUES, AND

25    INJUNCTION OF CLASS ACTION.  AND BECAUSE OF THAT, THE

26    ANTI-WAIVER PROVISIONS OF CALIFORNIA LAW MUST BE APPLIED.

1    THERE IS NO LAW, AS MR. MORITZ HAS TOLD THE

2   COURT, ON POINT IN UTAH DEALING WITH THESE ISSUES.  I

3   WOULD SUBMIT THE 130 CASES THAT HAVE BEEN CITED BY THE

4   DEFENSE IN THIS CASE HAVE ABSOLUTELY NO RELEVANCE, BECAUSE

5   AS I POINTED OUT IN MY PAPERS, THE KAGAN DECISION SAYS

6   THAT WHEN CALIFORNIA LOOKS OUTSIDE TO A SISTER STATE TO

7   SEE IF THEY HAVE LAW, WITH A CHOICE OF LAW SITUATION, AND

8   THEY HAVE A LAW, WE WOULD SEEM IT'S IN HARMONY WITH OURS

9   AND APPLY OUR LAW.

10    THE COURT:  TENNESSEE TRIAL COURT DECISION THAT YOU

11   CITED IS REALLY IMPORTANT.

12    MR. HALE:  IT IS IMPORTANT.  IT'S PERSUASIVE; BUT NOT

13   DISPOSITIVE.

14    THE COURT:  IT IS NOT.

15    MR. HALE:  THE SAME THING I WOULD SAY WITH JUDGE

16   POLLOCK'S DECISION IN THE VOSS CASE IN THE SOUTHERN

17   DISTRICT OF NEW YORK WHERE HE FINDS ARBITRATION CLAUSES

18   INOPERATIVE.

19    SO I JUST WANTED TO SAY THAT, YOUR HONOR.  AND I

20   THINK THE THIRD ANALYSIS -- THIRD LEVEL OF ANALYSIS HERE

21   WOULD BE THAT THE ARBITRATION CLAUSE, THEN, ON CLASS

22   ACTIONS AND INJUNCTIONS, IS JUST UNDER BASIC CALIFORNIA

23   AND CONTRACT LAW IS UNCONSCIONABLE.  IT'S PROCEDURALLY AND

24   SUBSTANTIVELY UNCONSCIONABLE.  SO THAT'S WHAT I HAVE TO

25   SAY ABOUT THOSE ISSUES.

26    DO YOU HAVE ANY QUESTIONS, OR WOULD YOU LIKE ME

1  TO MOVE ON TO THE OTHER ONE?

2      THE COURT:  NO.  ACTUALLY, MR. MORITZ GETS AN

3  OPPORTUNITY TO CLOSE OUT, AND THEN WE'LL START WITH YOU,

4  THE ARGUMENT ON THE SECOND MOTION.

5      MR. MORITZ:  MY ONLY ISSUE, YOUR HONOR, IS WHETHER OR

6  NOT THE PLAINTIFF IS ACTUALLY SEEKING -- ONLY SOLELY

7  SEEKING CLAIMS FOR INJUNCTIVE RELIEF.  THAT'S THE POSITION

8  HE'S TAKEN IN HIS PAPERS.

9      THE COURT:  I THINK THAT WAS ALSO THE POSITION THAT

10  WAS TAKEN WHEN YOU WERE REMANDED TO FEDERAL COURT, AS

11  WELL.  JUDGE STOTLER WROTE A VERY LENGTHY DECISION.  AND

12  THAT WAS, I THINK, ONE OF THE PIVOTAL POINTS IN MAKING A

13  FINDING THAT THE CASE DOESN'T HAVE A VALUE OF FIVE

14  MILLION, BECAUSE INJUNCTIVE RELIEF.  THAT'S CERTAINLY WHAT

15  THE PRAYER SAYS.

16      MR. MORITZ:  THE PLAINTIFF DOES PRAY FOR STATUTORY

17  DAMAGES IN THE COMPLAINT.  AND THAT'S NOT INJUNCTIVE

18  RELIEF.  SO THAT'S MY ONLY ISSUE WITH WHAT THE PLAINTIFF

19  SAYS, IT'S THE WHOLE --

20      THE COURT:  AND THAT WOULD CHANGE THE ANALYSIS NOW?

21      MR. MORITZ:  WELL, CLAIMS FOR MONETARY RELIEF DON'T

22  FALL WITH ANY TYPE OF CRUZ OR BROUGHTON ANALYSIS.  BECAUSE

23  ACTUALLY THOSE CASES HAVE HELD THE CLAIMS FOR MONETARY

24  RELIEF ARE SUBJECT TO ARBITRATION.

25      THE COURT:  SO WHAT PARAGRAPH WAS THE PRAYER?  BECAUSE

26  WE'RE GETTING ATTORNEYS' FEES.

1    MR. MORITZ:  PAGE 32, I BELIEVE, OF THE COMPLAINT,

2  YOUR HONOR.  THE LAST PRAYER IS TO ALL CAUSES OF ACTION.

3    THE COURT:  OH, OKAY.  I SEE, THANK YOU.

4    MR. HALE:  JUST FOR THE COURT'S INFORMATION, I DO MY

5  OWN TYPING.  A LOT OF TIMES I CUT AND SPLICE THINGS.

6  THAT'S JUST SOMETHING I DIDN'T CATCH IN THE PROCESS.  NOT

7  UNLIKE WHERE I DIDN'T FIT UNDER "PURSUANT TO LAWS OF

8  CALIFORNIA."  WHERE I COME FROM IN DELIVERANCE, VIRGINIA,

9  WE DON'T HAVE TO DO THAT.

10    WE ARE NOT SEEKING MONETARY DAMAGES IN THIS CASE.

11  AND THIS CASE WILL NOT BE AMENDED LATER TO SEEK MONETARY

12  DAMAGES.

13    THE COURT:  COURT'S GOING TO DENY THE MOTION TO COMPEL

14  ARBITRATION.

15    MR. HALE:  MAY I GIVE NOTICE, YOUR HONOR?

16    MR. MORITZ:  WELL, WE'RE THE MOVING PARTIES,

17  YOUR HONOR.

18    MR. HALE:  I THINK PREVAILING PARTIES GIVES NOTICE.

19    THE COURT:  IT ACTUALLY DOESN'T MATTER A WHOLE LOT

20  HERE.  AND, IN FACT, TRUTH BE TOLD, NOBODY NEEDS TO GIVE

21  NOTICE.  BUT WE'VE GOT TWO MOTIONS, AND ONE OF THEN IS

22  DEFENDANT'S; ONE OF THEM IS PLAINTIFF'S.

23    WE'LL JUST -- IF YOU'RE WILLING TO GIVE NOTICE ON

24  BOTH, THAT'S FINE.

25    MR. HALE:  I WILL DO THAT.

26    MR. MORITZ:  MY CONCERN WITH THAT IS THAT -- I DON'T

1

2

3   STATE OF CALIFORNIA  )
                         )  SS.
4   COUNTY OF ORANGE     )

5

6

7                    REPORTER'S CERTIFICATE

8

9

10

11      I, JACKIE SIENSKI, CSR NO. 12390, RPR, COURT REPORTER

12  IN AND FOR THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

13  COUNTY OF ORANGE, DO HEREBY CERTIFY THAT THE FOREGOING

14  TRANSCRIPT IS A TRUE AND CORRECT TRANSCRIPT OF MY SHORTHAND

15  NOTES AND A FULL, TRUE AND CORRECT STATEMENT OF THE

16  PROCEEDINGS HAD IN SAID CAUSE.

17

18      DATED THIS *10th* DAY OF *March*___, 2005.

19

20

21

22

23  _____

24  JACKIE SIENSKI, CSR NO. 12390, RPR

25  COURT REPORTER PRO TEMPORE

26



**Travelers Cheques
& Prepaid Services**

July 02, 2007

        T    Ref: 03160634 - 000001

DAVID LEE
65 LANCASTER AVE
KENTFIELD, CA 94904

Dear valued customer,

Thank you for your recent purchase of American Express Travelers Cheques,
Gift Cheques, Foreign Currency and/or Prepaid Cards provided to you by
GIFT CARDS ON LINE.

If your purchase contains Travelers Cheques please sign them immediately
and review the Purchase Agreement enclosed with the cheques.

If your purchase contains Gift Cheques, an American Express Travelers
Cheque product, please advice the recipient to sign them immediately and to
review the terms and conditions enclosed with the cheques.

If your purchase contains an American Express Gift Card(s), please use or
gift the Gift Card(s) as soon as possible. Subject to applicable law, a
monthly service fee of $2.00 applies, but is waived for the first 12 months
(365 days) after your purchase. Please ensure that the terms and conditions
accompanying the Gift Card(s) are provided to the recipient(s).

This letter serves as your confirmation receipt. Please carry it separately
from your Cheques or Prepaid Cards.

It has been our pleasure to serve you and we hope we can be of service to
you again.

| Product Description | Quantity | Denom | First Serial # |
|---------------------|----------|-------|----------------|
| GIFT CARD           | 1        | 25    | GX 110672099   |

**AMERICAN EXPRESS® TRAVELERS CHEQUES, GIFT CHEQUES, AND PREPAID PRODUCTS**

## TRAVELERS CHEQUES

### IMPORTANT REMINDERS

- Sign each Cheque IMMEDIATELY in the upper left corner. You are not protected in case of loss or theft until you do so. Never countersign a Cheque until you are ready to use it.
- When using a Cheque, countersign (in the lower left corner) only when the person accepting is WATCHING. While countersignature is all that American Express requires, the procedures of some acceptors may call for additional information.
- Carry this Record of Purchase SEPARATELY from your Cheques. Having this record will help expedite a refund if your Cheques are lost or stolen.

### MORE HELPFUL HINTS

- Handle and safeguard your Cheques as you would your cash.
- Keep your Cheques with you or in a safe place AT ALL TIMES. An inside breast pocket of your coat or jacket or a zippered compartment of your handbag is most secure. Never leave your Cheques in your hotel room, luggage, or car.

### PURCHASE AGREEMENT

**IMPORTANT:**

Read this Agreement carefully. By either buying, signing, accepting, or using these American Express Travelers Cheques ("Cheques"), you agree to everything written here. *You agree: (a) to sign your Cheques immediately in the upper left corner, (b) Not to resell, consign, or take any similar action to transfer your Cheques to any other individual, company, or entity for resale or reuse.*

**REFUND:**

American Express Travel Related Services Company, Inc. ("Amexco") will replace or refund the amount shown on any lost or stolen Cheque *in accordance with applicable laws and* only if you meet all of the requirements below:

BEFORE LOSS

- You **have signed** the Travelers Cheque in permanent ink in the upper left corner.
- You **have not signed** the Cheque in the lower left corner.
- You **have not given** the Cheque to another person or company to hold or to keep, or as part of a fraudulent scheme.
- You **have not used** the Cheque in violation of any law, including as part of an illegal bet, game of chance, or other prohibited action.
- Your Cheque **has not been taken** by court order or by government action.
- You **have safeguarded** the Cheque as a prudent person would safeguard a like amount of cash.

AFTER LOSS

- You **promptly notify** Amexco of the loss or theft of the Cheque.
- You **promptly report** all facts of the loss or theft to Amexco and also to the police if Amexco asks you to.
- You **promptly inform** Amexco of the serial number of the lost or stolen Cheque and the place and date of its purchase.
- You **promptly complete** Amexco's refund forms and provide Amexco with acceptable proof of your identity.
- You **give** Amexco all reasonable information and help requested to make a complete investigation of the loss or theft. Amexco reserves the right to investigate the loss or theft **and to verify compliance with this Purchase Agreement** and shall not be responsible for any delays resulting from such an investigation.
- Please note that for quality assurance purposes your telephone call to Amexco may be monitored or recorded *and that you consent to such monitoring and recording.*

**NO STOP PAYMENT**

Amexco cannot stop payment on any Cheque.

**CASH AGREEMENT: American Express Travel Related Services Company, Inc. ("Amexco") will not replace or refund any CASH, including foreign currencies, that are lost or stolen, once it has been received, by or on behalf of the consumer.**

## GIFT CHEQUES

Purchaser/Recipient agrees to abide by the Terms & Conditions that are included in the Gift Cheque package.

## AMERICAN EXPRESS PREPAID PRODUCTS (TRAVELERS CHEQUE CARD AND GIFT CARD)

Purchaser/Recipient agrees to abide by the Terms & Conditions that are included in the Card package.

IMPORTANT PRIVACY AND OPT OUT NOTICE FOR UNITED STATES PURCHASERS: We may develop marketing programs that provide offers for products and services that you may find of value. When we do this we may work with other companies, such as direct marketing firms, mailing shops, and companies that sell Prepaid Products to deliver these offers to you, and we may provide certain items of nonpublic personal information about you that we collect (as described in our full Privacy Statement) to these companies to distribute these offers to you. IF YOU PREFER THAT WE NOT SHARE PERSONAL INFORMATION ABOUT YOU TO DELIVER THESE MARKETING OFFERS TO YOU, YOU MAY OPT OUT FROM THESE DISCLOSURES AND FROM RECEIVING THESE OFFERS BY CALLING US AT 1-800-722-8614. Your opt out choice will apply only to the information we collect in connection with your purchase of Prepaid Products. For more information, call 1-800-722-8614 for a copy of our Privacy Statement for American Express Prepaid Products Purchasers ("Privacy Statement").



**Travelers Cheques
& Prepaid Services**

July 02, 2007

T    Ref: 03160632 - 000001

DAVID LEE
65 LANCASTER AVE
KENTFIELD, CA 94904

Dear valued customer,

Thank you for your recent purchase of American Express Travelers Cheques,
Gift Cheques, Foreign Currency and/or Prepaid Cards provided to you by
GIFT CARDS ON LINE.

If your purchase contains Travelers Cheques please sign them immediately
and review the Purchase Agreement enclosed with the cheques.

If your purchase contains Gift Cheques, an American Express Travelers
Cheque product, please advice the recipient to sign them immediately and to
review the terms and conditions enclosed with the cheques.

If your purchase contains an American Express Gift Card(s), please use or
gift the Gift Card(s) as soon as possible. Subject to applicable law, a
monthly service fee of $2.00 applies, but is waived for the first 12 months
(365 days) after your purchase. Please ensure that the terms and conditions
accompanying the Gift Card(s) are provided to the recipient(s).

This letter serves as your confirmation receipt. Please carry it separately
from your Cheques or Prepaid Cards.

It has been our pleasure to serve you and we hope we can be of service to
you again.

| Product Description | Quantity | Denom | First Serial # |
|---------------------|----------|-------|----------------|
| DINING CARD         | 1        | 75    | CX 001066800   |

AMERICAN EXPRESS® TRAVELERS CHEQUES, GIFT CHEQUES, AND PREPAID PRODUCTS

## TRAVELERS CHEQUES

### IMPORTANT REMINDERS

- Sign each Cheque IMMEDIATELY in the upper left corner. You are not protected in case of loss or theft until you do so. Never countersign a Cheque until you are ready to use it.
- When using a Cheque, countersign (in the lower left corner) only when the person accepting is WATCHING. While countersignature is all that American Express requires, the procedures of some acceptors may call for additional information.
- Carry this Record of Purchase SEPARATELY from your Cheques. Having this record will help expedite a refund if your Cheques are lost or stolen.

### MORE HELPFUL HINTS

- Handle and safeguard your Cheques as you would your cash.
- Keep your Cheques with you or in a safe place AT ALL TIMES. An inside breast pocket of your coat or jacket or a zippered compartment of your handbag is most secure. Never leave your Cheques in your hotel room, luggage, or car.

### PURCHASE AGREEMENT

**IMPORTANT:**

Read this Agreement carefully. By either buying, signing, accepting, or using these American Express Travelers Cheques ("Cheques"), you agree to everything written here. *You agree: (a) to sign your Cheques immediately in the upper left corner, (b) Not to resell, consign, or take any similar action to transfer your Cheques to any other individual, company, or entity for resale or reuse.*

**REFUND:**

American Express Travel Related Services Company, Inc. ("Amexco") will replace or refund the amount shown on any lost or stolen Cheque *in accordance with applicable laws and* only if you meet all of the requirements below:

BEFORE LOSS

- You **have signed** the Travelers Cheque in permanent ink in the upper left corner.
- You **have not signed** the Cheque in the lower left corner.
- You **have not given** the Cheque to another person or company to hold or to keep, or as part of a fraudulent scheme.
- You **have not used** the Cheque in violation of any law, including as part of an illegal bet, game of chance, or other prohibited action.
- Your Cheque **has not been taken** by court order or by government action.
- You **have safeguarded** the Cheque as a prudent person would safeguard a like amount of cash.

AFTER LOSS

- You **promptly notify** Amexco of the loss or theft of the Cheque.
- You **promptly report** all facts of the loss or theft to Amexco and also to the police if Amexco asks you to.
- You **promptly inform** Amexco of the serial number of the lost or stolen Cheque and the place and date of its purchase.
- You **promptly complete** Amexco's refund forms and provide Amexco with acceptable proof of your identity.
- You **give** Amexco all reasonable information and help requested to make a complete investigation of the loss or theft. Amexco reserves the right to investigate the loss or theft **and to verify compliance with this Purchase Agreement** and shall not be responsible for any delays resulting from such an investigation.
- Please note that for quality assurance purposes your telephone call to Amexco may be monitored or recorded *and that you consent to such monitoring and recording.*

**NO STOP PAYMENT**

Amexco cannot stop payment on any Cheque.

**CASH AGREEMENT: American Express Travel Related Services Company, Inc. ("Amexco") will not replace or refund any CASH, including foreign currencies, that are lost or stolen, once it has been received, by or on behalf of the consumer.**

## GIFT CHEQUES

Purchaser/Recipient agrees to abide by the Terms & Conditions that are included in the Gift Cheque package.

## AMERICAN EXPRESS PREPAID PRODUCTS (TRAVELERS CHEQUE CARD AND GIFT CARD)

Purchaser/Recipient agrees to abide by the Terms & Conditions that are included in the Card package.

IMPORTANT PRIVACY AND OPT OUT NOTICE FOR UNITED STATES PURCHASERS: We may develop marketing programs that provide offers for products and services that you may find of value. When we do this we may work with other companies, such as direct marketing firms, mailing shops, and companies that sell Prepaid Products to deliver these offers to you, and we may provide certain items of nonpublic personal information about you that we collect (as described in our full Privacy Statement) to these companies to distribute these offers to you. IF YOU PREFER THAT WE NOT SHARE PERSONAL INFORMATION ABOUT YOU TO DELIVER THESE MARKETING OFFERS TO YOU, YOU MAY OPT OUT FROM THESE DISCLOSURES AND FROM RECEIVING THESE OFFERS BY CALLING US AT 1-800-722-8614. Your opt out choice will apply only to the information we collect in connection with your purchase of Prepaid Products. For more information, call 1-800-722-8614 for a copy of our Privacy Statement for American Express Prepaid Products Purchasers ("Privacy Statement").

P/N 06-00886-009

# The American Express® Gift Card Cardholder Agreement

The following terms and conditions govern your use of the American Express Gift Card ("Terms and Conditions"). By purchasing, signing or using the American Express Gift Card, you are agreeing to the Terms and Conditions. The terms "you" and "your" refer to the person who purchased the American Express Gift Card and/or the person who is using the American Express Gift Card. The terms "we," "our" and "us" refer to American Express Travel Related Services Company, Inc. The term "Gift Card" refers to the American Express Gift Card.

## The Gift Card
The Gift Card is a prepaid payment device that comes with a set dollar value printed on the front of the card. It is not a credit card, charge card or debit card. The Gift Card can be used at retailers, restaurants, amusement parks, sporting events, movie and other theaters, spas, salons and certain other merchants that are located in the United States and that accept the American Express Card. A location where the Gift Card can be used is referred to in these Terms and Conditions as a "Merchant." The Gift Card cannot be used at car rentals, cruise lines, for recurring billing purchases, or at casinos or ATMs. Usage restrictions apply for international airlines.

## Service Fees
We encourage you to use your Gift Card soon! While you may leave Available Funds, as defined herein, on the Gift Card as long as you wish, starting 366 days after the date your Gift Card was purchased, and subject to applicable law, we will deduct a monthly service fee of $2.00 from your Available Funds. If we send you a replacement card for a lost or stolen Gift Card, the initial 12 month (365 day) waiver period is still tracked from the date your original Gift Card was purchased.

## Other Fees
Subject to applicable law, we will deduct a $5.95 replacement card fee from your Available Funds to replace a lost or stolen Gift Card. Subject to applicable law, if you ask us to issue you a check for the amount of any Available Funds remaining on the Gift Card after the "valid thru" date expires, we will deduct a $10.00 check-issuance fee from the check we send you."

## Before Using the Gift Card
Before using your Gift Card, you must sign your signature on the back, where indicated. Write down the Gift Card number and the Customer Service number on a separate piece of paper in case the Gift Card is lost or stolen. If you are required to activate the Gift Card, instructions will be provided on the face of the card. We reserve the right to delay activation and use of the Gift Card for up to 4 hours after purchase. During activation or any Customer Service call, we may request that you provide the card security code printed on the front of your Gift Card, as well as additional identification information such as your home phone number, date of birth, and zip code. We may use this data for a range of purposes, including but not limited to facilitating refunds if the Gift Card is lost or stolen, enhancing usage at Merchants that may require zip code authorization, and aiding in collection efforts in the event of a "shortage." We will hold your information in confidence in accordance with the section below entitled "Data Protection and Privacy."

## Information about Available Funds on the Gift Card
The value of the funds available on the Gift Card at any given time is referred to in these Terms and Conditions and on the back of your Gift Card as the "Available Funds." The Available Funds on the Gift Card at the time of purchase is printed on the front of the Gift Card and, if activation is required, these funds will only be available for spending after activation. If activation is required, the Gift Card has no value until it is activated. As you use the Gift Card, the Available Funds will be reduced by the full amount of each purchase including taxes, and any other fees. Once the Available Funds are depleted, the Gift Card is no longer valid and you agree (i) not to use the Gift Card and (ii) after you are sure that you do not intend to return any merchandise purchased with the Gift Card, to cut it in half and discard it.

## Tracking Available Funds
You must keep track of the amount of Available Funds. To obtain your Available Funds balance or to request information about previous transactions, visit www.americanexpress.com/giftcard or call toll free within the United States — 1-877-AXP-GIFT ("Customer Service Number"). **Please note:** Your Available Funds balance will reflect all authorization requests that have been submitted by Merchants. If you have a question about a transaction that has been posted to your Gift Card (e.g., the same transaction has been posted twice or for the incorrect amount), please notify us immediately, but no later than 60 days from the date of the transaction, by calling the Customer Service Number

## "Valid Thru" Date

The "valid thru" date indicated on the Gift Card is required to ensure that the Gift Card can be used at Merchants that request and/or require customers to provide a plastic expiration date during the transaction process. You may not use the Gift Card after the "valid thru" date. The Available Funds on the Gift Card do not expire, but may be reduced by service fees or other fees as described in these Terms and Conditions. If Available Funds remain on the Gift Card after the "valid thru" date, call the Customer Service Number to obtain a free replacement Gift Card or for instructions on how to redeem the Available Funds. Subject to applicable law, if you ask us to issue you a check for the amount of any Available Funds remaining on the Gift Card after the "valid thru" date, we will deduct a check-issuance fee of $10.00 from the check we send you. Before redeeming any Available Funds, we may hold the Available Funds for 10 business days after you request a check to ensure that all transactions have posted to our system. We reserve the right to decline to issue a replacement Gift Card.

## Lost or Stolen Cards

YOU AGREE TO SAFEGUARD YOUR GIFT CARD AND TREAT IT LIKE CASH. If your Gift Card is lost, stolen or used improperly, contact us immediately at the Customer Service Number — 1-877-AXP-GIFT. You must provide the Gift Card number and other identifying details. We cannot provide a replacement card if you do not have your Gift Card number available. If our records show that there are still Available Funds remaining on the Gift Card, we will cancel the Gift Card and send you a replacement card. Subject to applicable law, when replacing a lost or stolen Gift Card, we will deduct a $5.95 replacement card fee from your Available Funds. The replacement card will be in the amount of Available Funds on your lost/stolen Gift Card at the time you notified us that it was lost/stolen. NO REFUNDS WILL BE PROVIDED FOR AMOUNTS DEBITED FROM YOUR LOST/STOLEN GIFT CARD BEFORE YOU NOTIFY US.

## Using the Card

To use the Gift Card at a Merchant, present the Gift Card at the time of payment and sign the receipt with the same signature you used when you signed the back of the Gift Card. Retain the receipt as a record of the transaction. You agree to use the Gift Card only at Merchants and only for lawful purposes. You authorize us to deduct the full amount of each purchase including taxes and any other fees from the Available Funds whenever your Gift Card is used to make a purchase. You agree to keep track of the Available Funds on your Gift Card by using our website or the Customer Service Number and

not to use the Gift Card for any purchase that exceeds the Available Funds. The Gift Card is not transferable and you agree not to permit any other person to use your Gift Card after it is activated. If you believe your Gift Card has been lost or stolen, you agree to notify us immediately. You acknowledge that purchases made with prepaid cards, such as the Gift Card, are similar to those made with cash or travelers cheques. You cannot "stop payment" or lodge a "billing dispute" on such transactions. Any problems or disputes you may have regarding a purchase should be addressed directly with the Merchant.

## Combining Forms of Payment / "Split Tender" Transactions

If you wish to use your Gift Card to purchase an item for more than the Available Funds, depending on the Merchant's policy, you may be able to use your Gift Card toward a portion of the final purchase price, and then use another form of payment to pay the balance of the final purchase price. This is called a "split tender" transaction because you would be splitting the final transaction amount between your Gift Card and another form of payment. Before you request a "split tender" transaction, please call the Customer Service Number to check your Gift Card's Available Funds balance. Then, you must ask the Merchant if two forms of payment will be accepted for the purchase. If the Merchant agrees, first request that a specific dollar amount be placed on the other form of payment (e.g., the final transaction amount less your Available Funds balance), and then use your Gift Card to pay the remaining balance. Some retailers, particularly department stores, will only allow a "split tender" transaction if the second form of payment is cash or check. Internet and most mail order merchants do not permit "split tender" transactions. We do not guarantee that the Merchant will accept two forms of payment, such as two gift cards.

## Using Your Gift Card at Restaurants and other "Tip" Oriented Merchants

When a restaurant or other "tip" oriented Merchant (e.g., spas, hair salons, etc.) requests approval from us to complete your transaction, the Merchant will often add a fixed percentage (approximately 20%) to the amount reflected on the bill presented to you prior to payment. This additional amount is meant to cover the tip that they expect you will add to the bill. As a result of this increased authorization request, your Gift Card may be declined if you have insufficient Available Funds to cover the amount that the Merchant requested us to approve. If you have more than sufficient Available Funds on your Gift Card to cover the amount that the Merchant requested us to approve, it will result in a "hold" on your Available Funds for the

additional amount if you do not add the amount they expect. Once the Merchant sends us the final transaction amount you designate, we will remove the "hold" on your Available Funds for any additional amount exceeding the final transaction amount. This may take 3 to 7 days and during this period you will not be able to use any Available Funds in a "hold" position. As an illustration, if your meal, not including a tip, totaled $50 but the restaurant seeks approval from us for $60 (e.g., includes a $10 tip in the authorization request) and you choose to pay only the $50 for the meal with your Gift Card, leaving the tip in cash, then the additional $10 would be placed on "hold" until we receive a submission from the restaurant reflecting a final transaction amount of $50 on your Gift Card. TO AVOID A DECLINE OF, OR A HOLD ON, YOUR GIFT CARD, YOU CAN ASK THE MERCHANT TO AUTHORIZE A SPECIFIC DOLLAR AMOUNT. WE DO NOT GUARANTEE THAT THE MERCHANT WILL FULFILL THIS REQUEST.

## Using Your Gift Card at Gasoline Merchants

If you use your Gift Card to purchase gasoline, we recommend that you pay inside, not at the pump. If you pay at the pump, the terminal may be pre-programmed to seek a pre-authorization for $75 and this amount could increase from time to time ("Pre-Authorization Request"). The Pre-Authorization Request seeks to confirm that you have sufficient Available Funds on your Gift Card to pay for an average purchase of gas. If you have insufficient Available Funds on your Gift Card to cover the Pre-Authorization Request, your attempt to use your Gift Card at the pump will be declined. If you have sufficient Available Funds on your Gift Card to cover the Pre-Authorization Request, you will be permitted to continue your transaction at the pump. However, if the dollar amount of your actual gasoline purchase is less than the amount of the Pre-Authorization Request that we approved, a "hold" on your Available Funds will result equal to the difference between the two amounts. Once the Merchant sends us the final amount of your actual gasoline purchase, we will remove the "hold" on your Available Funds for any additional amount exceeding this final amount. This may take 3 to 7 days and during this period you will not be able to use any Available Funds in a "hold" position. TO AVOID A DECLINE OF, OR A HOLD ON, YOUR GIFT CARD, WE RECOMMEND THAT YOU PREPAY FOR YOUR GASOLINE INSIDE THE STATION.

## Using Your Gift Card at Lodging Merchants

If a lodging-Merchant accepts gift cards for reservations or at check-in, the Merchant will often seek authorization for the estimated amount of your lodging stay. Your Gift Card may be declined if you have insufficient Available Funds to cover the estimated amount of your lodging stay. If you have more than sufficient Available Funds on your Gift Card to cover the estimated amount that the Merchant requested us to approve, it will result in a "hold" on your Available Funds for the additional amount until the Merchant sends us the final amount of your lodging stay. Once the Merchant sends us the final amount, we will remove the "hold" on your Available Funds for any additional amount we had authorized that exceeded this final amount. While some lodging companies may require use of a credit card to make a reservation, you can use your Gift Card to make final payment at the end of your stay. TO AVOID A DECLINE OF, OR A HOLD ON, YOUR GIFT CARD, WE RECOMMEND THAT YOU USE AN AMERICAN EXPRESS CHARGE OR CREDIT CARD TO MAKE THE LODGING RESERVATION AND WHEN PROVIDING A FORM OF PAYMENT AT CHECK-IN.

## Transactions in Excess of Available Funds

If you attempt to use the Gift Card when there are insufficient Available Funds for the particular transaction (e.g., $100 purchase when the Gift Card only has $75 in Available Funds), and the Merchant does not fulfill a request to process a "split tender" transaction as described above, the transaction will usually be declined. However, if due to a systems malfunction or for any reason whatsoever, a transaction occurs despite insufficient Available Funds on the Gift Card (creating a negative amount on the Gift Card, referred to herein as a "Shortage"), you agree to reimburse us, upon request, for the amount of the Shortage.

## Returning Merchandise

PLEASE BE AWARE OF THE MERCHANT'S RETURN POLICIES PRIOR TO COMPLETING THE TRANSACTION. If you wish to return any merchandise purchased with the Gift Card, you will be subject to the Merchant's return policies. If the Merchant agrees to issue a credit to the Gift Card, such funds may not be available for 3 to 7 days.

## No Warranty Regarding Goods and Services

We are not responsible or liable to you for the quality, safety, legality, or any other aspect of any goods or services purchased from any Merchant with your Gift Card. If you have a dispute with a Merchant, you agree to settle the dispute directly with the Merchant.

## Refusal of Gift Card

We are not responsible or liable to you if any Merchant refuses to honor the Gift Card or for any other problems you may have with any Merchant. If a Merchant fails to honor the Gift Card, please call the Customer Service Number to report the incident.

### No Warranty of Availability or Uninterrupted Use

From time to time the Gift Card service may be inoperative, and when this happens, you may be unable to use your Gift Card or obtain information about your Available Funds. Please notify us if you have any problems using your Gift Card. You agree that we are not responsible for any interruption of service.

### Special Offers for Gift Card Usage

When you use your Gift Card there may be special offers available from time to time at participating merchants. We reserve the right to add to, change and/or cancel the offers at any time, change and/or terminate the merchants that extend the offers, and condition redemptions on certain requirements (e.g., minimum purchase amount, presentation of coupons or redemptions code at the point-of-sale). Terms, conditions and restrictions of each offer, including but not limited to availability during defined time periods, are described in our communications. We are not responsible or liable to you if a merchant refuses to honor an offer. Please call the participating merchant customer service number to report any such incident.

### Changing these Terms and Conditions / Notices / Gift Card Cancellation

We may change the terms of, or add new terms to, these Terms and Conditions at any time, with or without cause, and without giving you notice, in accordance with applicable law. In addition, we may suspend, cancel, add, modify or delete any feature offered in connection with your Gift Card at our sole discretion at any time, with or without cause, and without giving you notice, subject to applicable law. Any notice given by us shall be deemed given when deposited in the United States mail, postage prepaid, addressed to you at the latest address shown on our records. If we cancel your Gift Card, any Available Funds remaining on the Gift Card upon such cancellation, after payment for all applicable fees, will be returned to you. If the "valid thru" date on the Gift Card has not expired, we may condition reimbursement upon return of the Gift Card. The Gift Card is our property.

### Assignment and Waiver

We may assign these Terms and Conditions to a third party at any time without notice to you. However, if we assign these Terms and Conditions, the terms will remain substantially and materially the same unless you are notified. In the event we reimburse you for a refund claim you have made for a lost or stolen Gift Card, or if we otherwise provide you with a credit or payment with respect to any problem arising out of any transaction made with the Gift Card, you are automatically deemed to assign and transfer to us any rights and claims, excluding tort claims, that you have, had or may have against any third party for an amount equal to the amount we have paid to you or credited to your Gift Card. You agree that you will not pursue any claim against, or reimbursement from, such third party for the amount that we paid or credited to your Gift Card, and that you will cooperate with us if we decide to pursue the third party for the amount paid or credited. Neither our failure to exercise any of our rights under these Terms and Conditions, nor our delay in enforcing or exercising any of our rights, shall constitute a waiver of such rights. Furthermore, if we waive any right under these Terms and Conditions on one occasion, such waiver shall not operate as a waiver as to any other occasion.

### Data Protection and Privacy

**Information We Collect / Information Security:** We may obtain personal information ("Cardholder Information") about you, including information (i) provided to us by the Gift Card purchaser, such as your name and/or your address, (ii) provided by you at the time of activation or during customer service calls, and (iii) about purchases made with the Gift Card, such as the date, the amount and the place of purchase. For purposes of fraud prevention and regulatory compliance, we may also obtain information from providers of identity verification data and demographic information. Only those persons who need it to perform their job responsibilities are authorized to have access to Cardholder Information. We also maintain physical, electronic, and procedural security measures that comply with federal regulations to safeguard Cardholder Information.

**Disclosure:** We will use Cardholder Information to process Gift Card transactions, to provide customer service, to process claims for lost or stolen Gift Cards and to help protect against fraud. We may also use Cardholder Information for marketing purposes and to conduct research and analysis. It is often necessary for us to disclose Cardholder Information for the same purposes to companies that work with us. For example, we may provide certain Cardholder Information to companies, including our affiliated companies, that perform business operations or services, including marketing services, on our behalf. We may provide certain Cardholder Information to others outside of American Express as permitted by law, such as to government entities or other third parties in response to subpoenas.

**Offers / Choice:** We may develop marketing programs and send you offers for products and services. We do not share customer addresses with other companies for them to market their own

products and services. If you prefer not to receive offers, you may opt out by calling us in the United States toll free at 1-800-722-8614. If you opt out from receiving these offers, we may still send important information about the Gift Card or other American Express products and services to you.

## Telephone Monitoring / Recording
From time to time we may monitor and/or record telephone calls between you and us to assure the quality of our customer service or as required by applicable law.

## Arbitration
**Purpose:** This Arbitration Provision sets forth the circumstances and procedures under which Claims (as defined below) may be arbitrated instead of litigated in court.

**Definitions:** As used in this Arbitration Provision, the term "Claim" means any claim, dispute or controversy between you and us arising from or relating to the Gift Card or these Terms and Conditions as well as any related or prior agreement that you may have had with us or the relationships resulting from any of the above agreements ("Agreements"), including the validity, enforceability or scope of this Arbitration Provision or the Agreements. For purposes of this Arbitration Provision, "you" and "us" also includes any corporate parent, or wholly or majority owned subsidiaries, affiliates, any licensees, predecessors, successors, assigns, any purchaser of any accounts, all agents, employees, directors and representatives of any of the foregoing, and other persons referred to below in the definition of "Claims." "Claim" includes claims of every kind and nature, including but not limited to, initial claims, counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, regulations, common law and equity. "Claim" also includes claims by or against any third party using or providing any product, service or benefit in connection with the Gift Card (including, but not limited to, third parties who accept the Gift Card, third parties who use, provide or participate in programs accessed with the Gift Card, enrollment services and rewards programs, debt collectors and all of their agents, employees, directors and representatives) if and only if, such third party is named as a co-party with you or us (or files a Claim with or against you or us) in connection with a Claim asserted by you or us against the other. The term "Claim" is to be given the broadest possible meaning that will be enforced and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to (a) your Gift Card; (b) the amount of Available Funds on the Gift Card; (c) advertisements, promotions or oral or written statements related to the Gift Card, goods or services purchased with the Gift Card; (d) any benefits and services related to the Gift Card; and (e) your application for or activation of the Gift Card. We shall not elect to use arbitration under the Arbitration Provision for any Claim that you properly file and pursue in a small claims court of your state or municipality so long as the Claim is individual and pending only in that court.

**Initiation of Arbitration Proceeding/Selection of Administrator:** Any Claim shall be resolved, upon the election by you or us, by arbitration pursuant to this Arbitration Provision and the code of procedures of the national arbitration organization to which the Claim is referred in effect at the time the Claim is filed (the "Code"), except to the extent the Code conflicts with these Terms and Conditions. Claims shall be referred to either the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. If a selection by us of one of these organizations is unacceptable to you, you shall have the right within 30 days after you receive notice of our election to select the other organization listed to serve as arbitrator administrator. For a copy of the procedures, to file a Claim or for other information about these organizations, contact them as follows: NAF at P.O. Box 50191, Minneapolis, MN 55404; website: www.arbitration-forum.com; AAA at 335 Madison Avenue, New York, NY 10017; website: www.adr.org.

**Significance of Arbitration:** IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM. FURTHER, YOU AND WE WILL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT ALSO MAY NOT BE AVAILABLE IN ARBITRATION.

**Restrictions on Arbitration:** IF EITHER PARTY ELECTS TO RESOLVE A CLAIM BY ARBITRATION, THAT CLAIM SHALL BE ARBITRATED ON AN INDIVIDUAL BASIS. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED ON A CLASS ACTION BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC, OTHER GIFT CARDHOLDERS OR OTHER PERSONS SIMILARLY SITUATED. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to you and us alone. Furthermore, claims

brought by you against us, or by us against you, may not be joined or consolidated in arbitration with Claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. Notwithstanding any other provision in these Terms and Conditions (including but not limited to the *"Continuation"* provision below) and without waiving either party's right to appeal such decision, should any portion of this *"Restrictions on Arbitration"* provision be deemed invalid or unenforceable, then the entire Arbitration Provision (other than this sentence) shall not apply.

**Arbitration Procedures:** This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1–16, as it may be amended ("FAA"). The arbitration shall be governed by the applicable Code, except that (to the extent enforceable under the FAA) this Arbitration Provision shall control if it is inconsistent with the applicable code. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of either party, shall provide a brief written explanation of the basis for the decision. The arbitration proceeding shall not be governed by any Federal or state rules of civil procedure or rules of evidence. Either party may submit a request to the arbitrator to expand the scope of discovery allowable under the applicable Code. The party submitting such a request must provide a copy to the other party, who may submit objections to the arbitrator with a copy of the objections provided to the requesting party, within 15 days of receiving the requesting party's notice. The granting or denial of such a request will be in the sole discretion of the arbitrator, who shall notify the parties of his/her decision within 20 days of the objecting party's submission. The arbitrator shall take reasonable steps to preserve the privacy of individuals, and of business matters. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA. However, any party can appeal that award to a three-arbitrator panel administered by the same arbitration organization, which shall consider anew any aspect of the initial award objected to by the appealing party. The appealing party shall have 30 days from the date of entry of the written arbitration award to notify the arbitration organization that it is exercising the right of appeal. The appeal shall be filed with the arbitration organization in the form of a dated writing. The arbitration organization will then notify the other party that the award has been appealed. The arbitration organization will appoint a three-arbitrator panel that will conduct an arbitration pursuant to its Code and issue its decision within 120 days of the date of the appellant's written notice. The decision of the panel shall be by majority vote and shall be final and binding.

**Location of Arbitration/Payment of Fees:** Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other fees) provided by the Code, to the extent that such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in the state or federal court closest to your residence that would have jurisdiction over the Claim. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

**Continuation:** This Arbitration Provision shall survive termination of your Gift Card as well as voluntary payment in full of any Shortages, any legal proceeding by you or us to collect a debt owe by the other, and any bankruptcy by you or us. Except as otherwise provided in the *"Restrictions on Arbitration"* provision above, if any portion of this Arbitration Provision (other than the *"Restrictions on Arbitration"* provision) is deemed invalid or unenforceable under any principle or provision of law or equity, it shall not invalidate the remaining portions of this Arbitration Provision, these Terms and Conditions or any predecessor agreement you may have had with us, each of which shall be enforceable regardless of such invalidity.

## Applicable Law

These Terms and Conditions and your Gift Card, and all questions about their legality, enforceability and interpretation, are governed by the laws of the State of New York, USA (without regard to internal principles of conflicts of law).

The Gift Card is issued by American Express Travel Related Services Company, Inc.

©2006 American Express Travel Related Services Company, Inc.