STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND (State Bar No. 083013)
STEPHEN J. NEWMAN (State Bar No. 181570)
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086
Telephone: 310-556-5800
Facsimile: 310-556-5959
lacalendar@stroock.com

Attorneys for Defendants
  AMERICAN EXPRESS TRAVEL RELATED
  SERVICES COMPANY, INC., AMERICAN EXPRESS
  CENTURION BANK and AMERICAN EXPRESS
  BANK, FSB

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID J. LEE and DANIEL R. LLOYD, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>AMERICAN EXPRESS TRAVEL RELATED SERVICES, INC., a New York corporation, AMERICAN EXPRESS CENTURION BANK, a Utah corporation, AMERICAN EXPRESS BANK, FSB, a Utah corporation, and DOES 1 through 100, inclusive,<br><br>                    Defendants. | Case No. CV-07-4765 (CRB)<br><br>THE HON. CHARLES R. BREYER<br><br>**REPLY BRIEF IN SUPPORT OF DEFENDANT AMERICAN EXPRESS BANK, FSB'S MOTION TO DISMISS**<br><br>DATE:    November 30, 2007<br>TIME:    10:00 a.m.<br>PLACE:  Courtroom 8<br>              19th Floor<br>              450 Golden Gate Ave.<br>              San Francisco, CA 94102 |

LA 51010502v7

## I. INTRODUCTION

FSB's Motion to Dismiss should be granted because Plaintiffs fail to show that their claims survive federal preemption.[1]  As set forth in the Motion, the OTS has the exclusive authority to regulate the lending activities of federal savings banks. Under HOLA and 12 C.F.R. § 560.2(a) and (b), state law may <u>not</u> be used to impose requirements or set substantive standards on the content or terms of a credit agreement.  By their claims, Plaintiffs attempt to do precisely what HOLA and OTS regulations forbid.  Plaintiffs' claims against FSB are preempted in their entirety and must be dismissed.

## II. ARGUMENT

### A. Plaintiffs' State-Law Claims Are Preempted Under 12 C.F.R. § 560.2.

Plaintiffs simply ignore the majority of cases cited in the Motion demonstrating that Plaintiffs' claims are barred by preemption.  These cases stand firmly and repeatedly for the proposition that state laws may not dictate the substance of a federal savings banks' credit agreements with its borrowers.  Any state law imposing requirements on the content of a credit agreement (12 C.F.R. § 560.2(b)(9)) or terms of credit (12 C.F.R. § 560.2(b)(4)) is preempted by HOLA.  See <u>Weiss v. Washington Mutual Bank</u>, 147 Cal. App. 4th 72, 77, 53 Cal. Rptr. 3d 782 (2007) (holding that state-law claims for fraud, unlawful restraint on alienation of real property, unfair and deceptive business practices and unjust enrichment were barred by federal preemption under Section 560.2); <u>Rosenberg v. Washington Mut. Bank, FA</u>, 849 A.2d 566, 369 N.J. Super. 456 (N.J. Sup. Ct. App. Div. 2004) (holding that state-law claims for consumer fraud were barred by federal preemption under Section 560.2); <u>see also</u> <u>Moskowitz v. Washington Mutual Bank, FA</u>, 329 Ill. App. 3d 144, 149-50, 768 N.E.2d 262 (Ill. App. Ct. 2002) (holding that claims for breach of contract and violation of the Illinois Consumer Fraud Act were barred by federal

---

[1] All terms are used herein as defined in the Motion.

1  preemption under Section 560.2); Lopez v. World Savings & Loan Ass'n, 105 Cal.
2  App. 4th 729, 742, 130 Cal. Rptr. 2d 42 (2003) (holding that California statute
3  restricting fees charged for payoff demand statements was preempted under Section
4  560.2, as was the UCL, to the extent a UCL claim challenged the same conduct);
5  Washington Mutual Bank, FA v. Superior Court, 95 Cal. App. 4th 606, 620, 115 Cal.
6  Rptr. 2d 765 (2002), as modified (Feb. 15, 2002) (finding that claims under
7  California statute restricting the charging of pre-closing interest on home loans, as
8  well as related claims under the UCL and CLRA, were barred by Section 560.2).[2]

9      Plaintiffs cannot seriously dispute that they are attempting to use state-law
10 theories to dictate the content and terms of the credit-card agreements between FSB
11 and its cardmembers.  See, e.g., Opposition at 3:2-5 ("Defendant has voluntarily
12 chosen to author and place unconscionable terms in the charge and credit card
13 cardmember agreement (including, but not limited to, an arbitration provision that
14 contains a waiver of judicial or arbitral class actions, consolidation of claims, and
15 injunctive relief).").  This is in direct contravention of HOLA, which expressly
16 confers the exclusive authority for regulation of the lending practices of federal
17 savings banks, such as FSB, upon the OTS.  Accordingly, Plaintiffs' state-law claims
18 are preempted and should be dismissed.

**B.  Plaintiffs' State-Law Claims Are Not Saved By 12 C.F.R. § 560.2(c).**

20     Although it is clear that Plaintiffs' claims fall within subsection (b) of Section
21 560.2 and are therefore preempted without the need to conduct any additional

---

[2] Plaintiffs' attempt to distinguish the appellate court's decision in Rosenberg is particularly misguided. According to Plaintiffs, Rosenberg is distinguishable because the "statement form at issue contained billing and fee disclosures that were specifically required by Federal law to be included . . . ." (Opposition at 12:9-10.) As an initial matter, Rosenberg makes no mention of whether the disclosures at issue were required or merely allowed by federal law – Plaintiffs are simply speculating. More importantly, it makes no difference whether federal law requires credit terms to be disclosed, or merely allows them to be disclosed, for purposes of preemption under HOLA. In either case, state law cannot be used to regulate the disclosure of the terms, or the terms themselves, pursuant to 12 C.F.R. § 560.2(b).

LA 51010502v7

STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1800
Los Angeles, California 90067-3086

analysis, see Weiss, 147 Cal. App. 4th at 77; Rosenberg, 849 A.2d at 571-72, Plaintiffs' claims fare no better when analyzed under subsection (c).

Contrary to Plaintiffs' arguments in the Opposition, the OTS has made clear that even facially neutral state laws, such as state contract and commercial laws, are preempted under Section 560.2 if the laws as applied would have more than an incidental effect in a field occupied by OTS regulations or would otherwise be contrary to the OTS's stated purpose in occupying the field, which is "to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation." 12 C.F.R. § 560.2(a) (emphasis added); see also OTS Op. P-99-3, 1999 OTS LEXIS 4, at *25-28 (Mar. 10, 1999). The rationale for this rule is easily understood, particularly with respect to far-reaching statutes such as the UCL or CLRA. If courts looked only to the text of these statutes, plaintiffs could effectively regulate all lending activities simply by claiming that a federal savings bank's conduct was "unfair" or its credit terms were "unconscionable." Moreover, those standards would necessarily vary from state to state, thus defeating the primary purpose for which HOLA was enacted.

Indeed, concern over abuse of state consumer-protection statutes in this manner led the OTS, in its 1999 Opinion, to reaffirm the scope of federal preemption. As the OTS plainly stated, preemption under HOLA applies not only to laws that expressly regulate, but also to those that are used to regulate, in areas occupied by the OTS. See OTS Op. P-99-3, 1999 OTS LEXIS 4, at *25-26. The proper preemption test under HOLA for facially neutral state laws thus is whether the law as applied: (1) would have more than an "incidental effect" on lending activities; or (2) would otherwise be contrary to the OTS's stated purposes in occupying the field. 12 C.F.R. § 560.2(c). As the OTS explained in the March 1999 Opinion in discussing preemption of the UCL:

-3-

LA 51010502v7

> [T]he [UCL], as drafted, is not directly aimed at federal savings associations, or lenders generally. The question is thus whether the [UCL], <u>as applied</u> . . . has been and is being used by both private and governmental plaintiffs as a vehicle to improperly impose requirements on the Associations' lending operations regarding matters that have traditionally been within the exclusive purview of the OTS and federal law. <u>A preemption analysis requires consideration of the relationship between federal and state laws as they are interpreted and applied, not merely as they are written.</u>
>
> . . .
>
> Even though the [UCL], on its face, may appear to further a state's vital interest in regulating commercial transactions and is not specifically aimed at the lending practices of federal savings associations, <u>the [UCL] has been and is being used, by private and governmental parties, in an attempt to set substantive standards for the Associations' lending operations and practices</u>. . . . [P]laintiffs have used the [UCL] in attempts to require particular lending disclosures, limit the Associations' choice of insurers and cap certain fees. <u>Advertising lending programs, protecting security property, and imposing certain loan-related fees are all integral components of the Associations' lending operations, and the [UCL] as applied would have a significant impact on those operations</u>.
>
> There is little doubt that the three lending activities identified by the Associations – advertising, insurance requirements, and loan-related fees – are areas in which the OTS has made clear that federal law prevails over state law to enable federal thrifts to use uniform standards of operation. <u>Thus, to the extent that the [UCL] is being used to affect these activities, such an application of the [UCL] (i) has more than an incidental effect on a federal thrift's lending operations and (ii) is inconsistent with the purposes of § 560.2(a)</u>.

-4-

OTS Op. P-99-3, 1999 OTS LEXIS 4, at *24-28 (emphasis added) (footnotes omitted).[3]

Plaintiffs argue that their UCL, CLRA and fraud claims fall under the rubric of "traditional contract and commercial law" under 12 C.F.R. § 560.2(c)(1) and therefore are not subject to preemption. Plaintiffs rely primarily on In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation, 491 F.3d 638 (7th Cir. 2007), arguing that "these laws merely 'preserve the traditional infrastructure of basic state laws that undergird commercial transactions' and do not open the door to state regulation of lending." Opposition at 2:13-18. Contrary to Plaintiffs' arguments, the court in In re Ocwen expressly recognized that if these types of state laws, as applied to the facts of the case, would impose particular requirements or substantive standards on lending operations or terms of credit, then they would be preempted. See In re Ocwen, 491 F.3d at 645-48. For example, as the court explained with respect to the UCL:

> The ninth claim alleges violations of the California Business & Professions Code §§ 17200 et seq. Not all state statutes that might be invoked against a federal S & L are preempted, any more than all common law doctrines are; for remember that contract and commercial law are among the laws listed in subsection (c) of the regulation, and all states have adopted the Uniform Commercial Code. If the

---

[3] Plaintiffs' reliance on the OTS's 1996 Opinion discussing preemption of Indiana's Deceptive Acts and Practices Statute is mistaken. Unlike the UCL, the Indiana statute narrowly proscribes only specific conduct and apparently had not been used to attempt to regulate lending activities, which Plaintiffs are plainly trying to do here. Similarly, unlike the narrowly tailored Indiana statute, the CLRA includes a broad provision prohibiting inserting an "unconscionable" provision in a contract. Compare Cal. Civ. Code § 1770(a)(19) with Ind. Code § 24-5-0.5-3. While the CLRA in general may be similar to the Indiana statute, Section 1770(a)(19) itself is clearly more akin to the UCL, which is equally broad and has been, and is, being used in an attempt to regulate credit terms and disclosures. Indeed, the OTS itself has expressly distinguished the 1996 Opinion in this regard. See OTS Op. P-99-3, 1999 OTS LEXIS 4, at *25 ("[I]n our view the situation faced by the Associations is distinguishable from the issues and facts addressed in the 1996 Opinion . . .").

> California Business & Professions Code is some modest supplement to the UCC, then presumably it is not preempted. But it may be more, since it forbids "unfair competition" defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." As interpreted by the complaint, this claim charges a gallimaufry-a macédoine-of unlawful acts, including failing to provide mortgagors with adequate monthly statements of their account balances, assessing "excessive" late fees, and "force placing insurance on properties that already have insurance coverage." There is no indication that these practices involve either breach of contract or misrepresentation, and it is apparent that prohibiting them could interfere with federal regulation of disclosure, fees, and credit terms.

Id. at 646 (internal citations omitted). Plaintiffs' claims here similarly are not "conventional" common-law claims that can pass muster under subsection (c). Rather, Plaintiffs' claims, as applied to the facts of this case, seek to set particular requirements on FSB's lending operations and to impose substantive standards on what terms can and cannot be included in credit agreements, including with respect to class-action waivers and non-consolidation provisions. This is precisely the kind of direct regulation of lending activities that Section 560.2 is designed to prevent. See Moskowitz, 329 Ill. App. 3d at 149-50 ("By regulating defendant's imposition of payoff statement fees, the use of contract law here would more than 'incidentally affect the lending operations' (12 C.F.R. § 560.2(c) (2001)) of defendant . . . ."); Haehl v. Washington Mut. Bank, F.A., 277 F. Supp. 2d 933, 942-43 (S.D. Ind. 2003) ("[A]pplying tort law in this case would more than 'incidentally affect' lending operations by imposing substantive requirements on lending operations, specifically, the types of loan-related fees that a bank could charge.").[4]

---

[4] Plaintiffs cite Binetti v. Washington Mutual Bank, 446 F. Supp. 2d 217 (S.D.N.Y. 2006), for the proposition that an "incidental effect" analysis under subsection (c) requires a court to consider the statute's underlying purpose rather than the impact on the bank's lending operations. See Binetti, 446 F. Supp. 2d at 221 (summarily stating, without analysis, that "the question is whether any impact on lending

LA 51010502v7

1  Allowing Plaintiffs' claims to proceed would result in a great deal of
2 uncertainty as to how federal savings banks, such as FSB, should structure and
3 operate their lending programs.  Moreover, cardmembers in each of the 50 states
4 would be able to demand state-specific language and terms in each cardmember
5 agreement.  This would fundamentally undermine a key purpose of HOLA and of
6 FSB's federal charter:  to establish nationwide lending programs that operate
7 uniformly across the 50 states.  Application of the UCL and CLRA to set substantive
8 standards on credit agreements opens the door to similar efforts in other states, and
9 thus would have more than an incidental impact on the lending activities of federal
10 savings banks, interfering with HOLA's plan of providing for <u>uniform</u> standards for
11 national banking operations.  Plaintiffs' claims are preempted and must be dismissed.
12 ///
13 ///
14 ///

---

operations is incidental to *the statute's* primary purpose – not whether the impact of the statute on a bank's lending operation is 'incidental'") (italics in original). However, <u>Binetti</u> cites no authority in support of this proposition, which is clearly contrary to the OTS's own interpretation of Section 560.2(c) as set forth in the OTS's 1999 Opinion.

-7-

### III.   CONCLUSION

For the foregoing reasons, Defendant FSB respectfully requests that this Court enter an Order dismissing all claims of the Complaint alleged against FSB, without leave to amend.

Dated:  November 16, 2007

Respectfully Submitted,

STROOCK & STROOCK & LAVAN LLP
JULIA B. STRICKLAND
STEPHEN J. NEWMAN

By:   s/Stephen J. Newman
         Stephen J. Newman

Attorneys for Defendants
  AMERICAN EXPRESS TRAVEL
  RELATED SERVICES COMPANY, INC.,
  AMERICAN EXPRESS CENTURION
  BANK and AMERICAN EXPRESS
  BANK, FSB

LA 51010502v7