# *Hale & Associates*

**ATTORNEYS AND COUNSELORS AT LAW**
**45 RIVERMONT DRIVE**
**NEWPORT NEWS, VIRGINIA 23601**

——

**P.O. BOX 1951**
**NEWPORT NEWS, VIRGINIA 23601**

——

**TELEPHONE (757) 596-1143**
**E-MAIL: matthale@verizon.net**

November 21, 2007

The Honorable Charles R. Breyer
U.S. District Court Judge
Courtroom 8, 19th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**Re:**   ***David J. Lee et al.  v. American Express Travel Related Services, Inc et al.***
***Civil Docket No.: C-07-4765 CRB***

Dear Judge Breyer:

Since the filing of the Plaintiffs' Reply Memorandum of Points and Authorities on November 9, 2007, two decisions have been reported which support the denial of the Defendants' Motion to Dismiss of which Plaintiffs now advise this Court:

1.   <u>Hunter v. General Motors Corp.</u>, 2007 Cal.App.Unpub. 9252 at \*19 and 32-33 (Cal.App. November 10, 2007), a copy of which is appended hereto for the Court's convenience, presents an analogous microcosm of the arguments made by the parties in this action.  That decision reversed the lower court's grant of a demurrer that no claim under the Consumer Legal Remedies Act ("CLRA") or Unfair Competition Law ("UCL") had been stated by holding, relative to the UCL:

> "We reject the trial court's ruling that Pulgarin had to have alleged that her parking brakes actually failed to establish that she sustained an injury in fact and had lost money or property within the meaning of Business and Professions Code section 17204. The allegation that the parking brakes were defective when her vehicle was delivered to her and, thereafter, showed "abnormal and premature wear" is sufficient to allege an injury in fact and a loss of money or property--Pulgarin need not wait for a catastrophic event such as brake failure to bring an action under the UCL based on the facts alleged in the fourth amended complaint."

2.    Freeman v. Mattress Gallery, 2007 Cal.App.Unpub.LEXIS 9102 at *11-13 (Cal.App. November 8, 2007), a copy of which is appended hereto for the Court's convenience, addresses the existence of an alternative basis for CLRA standing (which, when combined with nominal damages available under California law and, indeed, under federal law for the violation of a statutory right [see, e.g., Draper v. Coombs, 792 F.2d 915, 921-22 (9th Cir. 1986); Bernhardt v. County of Los Angeles, 279 F.3d 862 (9th Cir. 1995)], applicable here:

"...Freeman asserted that the damage requirement was to be interpreted so broadly that the mere infringement of a legal right provided by Civil Code section 1770 is sufficient to meet the damage requirement of Civil Code section 1780. (Kagan v. Gibraltar Savings and Loan Assoc. (1984) 35 Cal.3d 582, 593 (Kagan).)   [¶]   Mattress Gallery cites Wilens v. TD Waterhouse Group, Inc., (2003) 120 Cal.App.4th 746, 754-755 in an attempt to distinguish Kagan. However, the issue in Wilens was not what Kagan stated about the requirement for "any damage" in order for an individual to have standing, but whether Kagan stated that each member of a purported class need not have suffered actual damages. (Ibid.) Wilens was simply not a standing case and did not distinguish the statement in Kagan that "the requirement of section 1780 that a consumer 'suffer[] any damage' . . . include[s] the infringement of any legal right as defined by section 1770." (Kagan, supra, 35 Cal.3d at p. 593; Wilens, supra, 120 Cal.App.4th at p. 750.) Thus, our Supreme Court has interpreted Civil Code section 1780 to state that the infringement of a legal right provided by Civil Code section 1770 that results from the violation of Civil Code section 1770 is damage enough to provide standing. In other words, in order to have standing to bring an action for violation of the CLRA, all a plaintiff need allege is that the defendant violated a provision of Civil Code section 1770.

While the issue before the Supreme Court in *Kagan* was whether the plaintiff had standing to bring a class action as its representative, the fact that Civil Code section 1783 requires individual standing under Civil Code section 1780 as a prerequisite to standing as a class representative means that the Supreme Court's determination on the individual standing issue was necessary to its determination. Much as we might disagree with the Supreme Court's unsupported and ill-reasoned interpretation of the standing requirement within Civil Code section 1770, we are bound by it. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455.)" (Internal footnote omitted)

Sincerely,



Matthew S. Hale

Case 3:07-cv-04765-CRB     Document 30     Filed 11/21/2007     Page 3 of 32

Page 1
2007 Cal. App. Unpub. LEXIS 9252, *

LEXSEE 2007 CAL.APP.UNPUB. 9252

**LA RONDA HUNTER, et al., Plaintiffs and Appellants, v. GENERAL MOTORS CORPORATION, Defendant and Respondent.**

**B190809**

**COURT OF APPEAL OF CALIFORNIA, SECOND APPELLATE DISTRICT, DIVISION FIVE**

*2007 Cal. App. Unpub. LEXIS 9252*

**November 19, 2007, Filed**

**NOTICE:**     NOT TO BE PUBLISHED IN OFFICIAL REPORTS. CALIFORNIA RULES OF COURT, RULE 8.1115(a), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(b). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 8.1115.

**PRIOR HISTORY:** [*1]
   APPEAL from a judgment of dismissal of the Superior Court of Los Angeles County, No. BC324622. Carl J. West, Judge.

**DISPOSITION:**   Reversed.

**COUNSEL:** Spiro Moss Barness, Dennis F. Moss, David M. Arbogast; Heard, Robins, Cloud & Lubel, Adam Q. Voyles (pro hac vice) for Plaintiffs and Appellants.

Kirkland & Ellis, James Ransom, J. Andrew Langan (pro hac vice), Brian P. Kavanaugh (pro hac vice) for Defendant and Respondent.

**JUDGES:** MOSK, J.; ARMSTRONG, Acting P.J., KRIEGLER, J. concurred.

**OPINION BY:** MOSK

**OPINION**

**INTRODUCTION**

   Plaintiffs and appellants La Ronda Hunter (Hunter), Rosana Pulgarin (Pulgarin), and Robin Gonzales (Gonzales) (collectively plaintiffs) brought a putative class action against defendant and respondent General Motors Corporation (defendant) for violation of California's Consumer Legal Remedies Act (CLRA) (*Civ. Code, § 1750 et seq.*) and California's Unfair Competition Law (UCL) (*Bus. & Prof. Code, § 17200 et seq.*). The putative class action was based on defendant's allegedly "false, misleading, unfair, defective, unlawful and fraudulent representations" concerning the allegedly defective parking brake system in certain of defendant's vehicles for the 1999 through 2005 model years. The trial court sustained without leave to  [*2] amend defendant's demurrer to plaintiffs' fourth amended class action complaint. On appeal, plaintiffs contend that the trial court erred by holding them to an unduly strict pleading standard by concluding that plaintiffs' numerous factual allegations were non-actionable "puffing," and that Gonzales could not base her CLRA and UCL claims on breach of warranty claims, and by denying Gonzales leave to amend the complaint to add

separate causes of action for breach of warranty claims. We hold that the facts alleged in the fourth amended complaint state causes of action under the CLRA and UCL. Accordingly, we reverse the judgment of dismissal. Because we reverse the judgment, we do not reach the issue of whether the trial court should have granted Gonzales leave to amend the complaint.

## BACKGROUND

### I. Procedural History

On November 16, 2004, Hunter filed a class action complaint against defendant asserting causes of action for breach of implied warranty, breach of express warranty and contract, breach of warranty under the Song-Beverly Consumer Warranty Act (*Civ. Code, § 1790 et seq.*), and violation of the UCL based on defendant's development, design, manufacture, and sale of certain vehicles   [*3] with a defective rear brake system. On May 20, 2005, Pulgarin joined Hunter in filing a first amended class action complaint against defendant asserting causes of action for breach of express warranty, breach of implied warranty, breach of warranty under the Song-Beverly Consumer Warranty Act, violation of the CLRA, and violation of the UCL. The first amended complaint concerned an allegedly defective parking brake system in certain of defendant's vehicles and defendant's alleged misrepresentations concerning those brakes.

On June 20, 2005, defendant filed a demurrer to Hunter and Pulgarin's first amended complaint. On August 23, 2005, prior to the due date for their response to defendant's demurrer, Hunter and Pulgarin filed a second amended class action complaint against defendant. The pared-down, second amended complaint asserted only two of the causes of action raised in the first amended complaint: violation of the CLRA and violation of the UCL. The second amended complaint concerned the al-legedly defective parking brake system in cer-tain of defendant's vehicles and defendant's al-leged misrepresentations with respect to those brakes.

On September 23, 2005, defendant filed a demurrer   [*4] to the second amended com-plaint. On November 2, 2005, the trial court sustained defendant's demurrer and granted Hunter and Pulgarin leave to amend. Hunter's and Pulgarin's third amended class action com-plaint against defendant, asserting causes of action for violation of the CLRA and UCL, was filed on December 2, 2005. On December 9, 2005, before defendant's responsive pleading to the third amended complaint was due, Gon-zalez joined Hunter and Pulgarin in filing the fourth amended class action complaint against defendant. The fourth amended complaint as-serted causes of action for violations of the CLRA and UCL based on the allegedly defec-tive parking brake system in certain of defen-dant's vehicles for the model years 1999 through 2005 and defendant's alleged misrepre-sentations with respect thereto.

On January 30, 2006, defendant filed a de-murrer to the fourth amended complaint. On March 17, 2006, the trial court sustained defen-dant's demurrer without leave to amend. The trial court entered a judgment of dismissal on April 11, 2006. Plaintiffs' appeal followed.

### II. Allegations in the Fourth Amended Com-plaint

In their fourth amended complaint, plain-tiffs state that they brought the class   [*5] ac-tion "on behalf of themselves and all other similarly situated for damages, restitution, and other relief against [defendant] for, among other things, designing, manufacturing, certify-ing, distributing and selling vehicles with a de-fective parking brake system." Below, we set forth plaintiffs' allegations that serve as the ba-sis for plaintiffs' causes of action for violation of the CLRA and UCL.

2007 Cal. App. Unpub. LEXIS 9252, *

A. *The Alleged Defect in the Parking Brake System*

Plaintiffs allege that in 1998, defendant introduced several models of trucks and sports utility vehicles based on its GMT 800 platform. These vehicles were equipped with a newly designed parking brake system called a drum-in-hat or Banksia-style parking brake system. Defendant designed and intended the parking brake system to be a "'life of the vehicle part' with an expected life span of well over 200,000 miles." The parking brake system was defectively designed. The brakes were designed in a manner that allowed the brake linings, upon the brakes' first use, to misalign in such a way that they contacted, and remained in contact with, the brake drum. This misalignment caused the brakes to fail, or to wear out prematurely - after an average of [*6] 24 months in service.

Plaintiffs allege that defendant learned of the defect almost immediately after the launch of the vehicles equipped with the defective parking brake system, but attempted to "cover up" its knowledge. In 2000, defendant received numerous reports of parking brake failures. These reports prompted the National Highway Traffic Safety Administration (NHTSA) to initiate an investigation in 2001. As part of that investigation, defendant disclosed to the NHTSA that in September 2000, the brand quality manager for the GMT 800 line of vehicles sent a letter to defendant's "dealer partners stating that the drum-in-hat parking brake system found on these vehicles 'is not self-adjusting . . . requir[ing] frequent adjustments.'" An engineering report from defendant to the NHTSA states that "'the parking brake friction linings may wear to an extent where the parking brake can become ineffective in immobilizing a parked vehicle.'" The report further states, "'Consequence: IF THE PARKING BRAKE DOES NOT HOLD, UNATTENDED VEHICLE MOVEMENT COULD OCCUR, WHICH COULD RESULT IN A CRASH." Notwithstanding its earlier knowledge of the defect,

defendant did not begin to investigate solutions [*7] until 2001.

In October 2001, defendant issued an Engineering Work Order (EWO) to address the defect in the parking brake system. Defendant did not implement the EWO in its new vehicle model lines until 2003. During the intervening period, defendant issued a Technical Service Bulletin to dealers and repair centers offering a brake kit that could be sold to consumers to fix the defect. Neither the EWO nor the brake kit remedied the defect. Defendant later acknowledged this failure "in a letter forwarded to NHTSA."

Plaintiffs further allege, upon information and belief, that defendant "realized it could no longer continue to ignore the . . . parking brake system defect" after it conducted "durability testing" on the brakes in October of 2004. Defendant ultimately corrected the defect by redesigning the parking brake system for new vehicles sold beginning sometime in 2005.

In 2005, defendant announced a safety recall concerning the defective parking brakes. As part of the recall, defendant provided free repair and replacement of the defective parking brakes on certain model vehicles for certain model years from 1999 through 2005. The recall was limited to vehicles with manual transmissions, [*8] however, and covered only a small percentage of the allegedly 4.1 million vehicles with defective parking brake systems. Plaintiffs allege that defendant's recall response to the defective parking brake system was inadequate because, "[w]ithout explanation or rational justification," it did not cover consumers who have vehicles with automatic transmissions - which vehicles have parking brake systems identical to vehicles with manual transmissions.

B. *Defendant's Alleged Misrepresentations About the Alleged Defect in the Parking Brake System*

Case 3:07-cv-04765-CRB    Document 30    Filed 11/21/2007    Page 6 of 32

Page 4
2007 Cal. App. Unpub. LEXIS 9252, *

Plaintiffs allege that defendant, notwithstanding it knowledge of the parking brake system defect, "made false, misleading, unfair, deceptive, unlawful and fraudulent representations to consumers, including [plaintiffs], about the quality, safety and braking systems of its defective vehicles." Plaintiffs allege that defendant knew these statements were false when it made them. Plaintiffs group these alleged misrepresentations into six categories.

First, plaintiffs contend that defendant falsely affixed a certification label or tag to each of the subject vehicles stating, "This Vehicle Conforms to All Applicable U.S. Federal Motor Vehicle Safety Standards [*9] in Effect on the Date of Manufacture Show[n] above." Such action was a violation of Federal Motor Vehicle Safety Standards. Second, plaintiffs contend that defendant's "Pre-Delivery Inspection Procedure" required authorized dealers to test and inspect each vehicle prior to sale to determine if the vehicle, including the parking brake system, was in working order. If the vehicle passed the inspection, the certified service representative was to fill out a certification stating that the vehicle passed the inspection. The certification was given to the vehicle's purchaser. With respect to the subject vehicles, plaintiffs allege that defendant knew the certifications were false when given to purchasers.

Third, plaintiffs allege that defendant's "Completely Satisfied - New Vehicle Delivery System" procedure required authorized dealers, in connection with the sale of each vehicle, to inspect, explain, and demonstrate the vehicle's features to the purchaser. A form was to be filled out by an authorized representative of defendant at each of three stages. Plaintiffs contend that defendant knew that the representations made in connection with this procedure were false when made. Fourth, plaintiffs [*10] contend that the owner's manual provided with the sale of each vehicle described the parking brakes as a safety feature of the vehicle and contained various instructions concerning the operation of the parking brakes. The representations contained in the owner's manual allegedly were false.

Fifth, plaintiffs allege that defendant provided brochures to each person who purchased a vehicle. The brochures allegedly contained various false representations about the quality of defendant's vehicles generally, the quality of the parking brakes on the vehicles, and defendant's commitment to its customers. Although listing these representations, the fourth amended complaint does not identify the specific vehicles to which the representations apply. Sixth, plaintiffs allege that defendant made representations in its national advertising campaigns "stressing the quality, safety and performance of [its] products, including the Subject Vehicles." Defendant knew these representations were false when it made them.

## C. Defendant's Alleged Concealment of the Alleged Defect in the Parking Brake System

Plaintiffs allege that defendant fraudulently concealed information about the alleged defect in the parking [*11] brake system. In a section of the fourth amended complaint entitled "Facts Common To All Causes of Action," plaintiffs allege that defendant "fraudulently concealed the unreasonable risk of injury occurring as a result of the defective design of the PBR/TRW parking brake system" and that consumers were unaware of the defect in the parking brake system because of defendant's "failure to disclose and concealment of its exclusive knowledge of the defect(s) to Plaintiffs and others similarly situated." In the statute of limitations tolling section of the fourth amended complaint, plaintiffs allege that defendant's "acts of fraudulent concealment include, but are not limited to intentionally covering up and refusing to publically [sic] disclose critical internal memoranda, design plans, studies, Notices of Action, Problem Detail Reports and other reports of failure and injury. Through such acts of fraudulent concealment, [defendant] was able to actively

conceal from the public for years the truth about the defective design and manufacture of the parking brake systems on the Subject Vehicles . . . ." In their CLRA cause of action, plaintiffs allege that "[k]nowing the truth and motivated [*12] by profit and market share, [defendant] has knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiffs and others similarly situated" and "[t]he facts which [defendant] has misrepresented and concealed as alleged in the preceding paragraphs, were material to the decisions about whether to purchase the Subject Vehicles in that Plaintiffs and other similarly situated would not have purchased these defective and unsafe vehicles but for Defendants' misrepresentations and concealment of material facts . . . ." In their UCL cause of action, plaintiffs allege that "[d]efendant's acts, omissions, misrepresentations, practices and non-disclosures of as alleged herein constitute unlawful, unfair and/or fraudulent business acts and/or practices . . . ."

## D. Defendant's Conduct Allegedly Violated California's Secret Warranty Act

Plaintiffs allege that defendant had a policy of repairing, free of charge, the known defect in its parking brake system only for those vehicle owners who complained "loudly enough," without notifying all vehicle owners of the defect and paying for its repair. Plaintiffs contend that this policy violated California's Secret Warranty [*13] Act (*Civ. Code, § 1795.90 et seq.*) which required, among other things, that defendant notify all eligible consumers of any "program or policy that expands or extends the consumer's warranty beyond its stated limit or under which a manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any condition that may substantially affect vehicle durability, reliability, or performance . . . ." (*Civ. Code, §§ 1795.90, subd. (d) & 1795.92, subd. (a).*)

## E. Effect of the Misrepresentations on Plaintiffs

Plaintiffs allege that the representations were made to them. They allege that Gonzalez sought to have the defective parking brake system on her vehicle repaired by defendant while her vehicle was still under warranty. Despite the defendant's dealer's notation in a summary of repairs, "PARKING BRAKE INOP," defendant's authorized representative told Gonzalez that she did not need parking brakes and refused to make the repair. Gonzalez spent $ 417 to have the defective brakes replaced. Defendant refused to correct or replace Pulgarin's defective parking brake system. Her parking brakes were "[m]alfunctioning and/or [*14] . . . failing before the end of their expected useful life." Hunter made efforts to have defendant "correct, repair, replace or otherwise rectify the unsafe and defective parking brake system" but defendant refused to do so. She had to spend $260 "to have the defective brakes replaced."

## III. The Trial Court's Ruling

The trial court in sustaining the demurrer without leave to amend held there was no violation of law and the alleged misrepresentations constituted non-actionable "puffing." The trial court said that in connection with the allegation that the brakes violated Federal Motor Vehicle Safety Standards, there was no allegation that the parking brake system did not comply with the specific requirements of the applicable regulations. The trial court said that "[w]hile Plaintiff [sic] does allege in P 74 that the parking brakes were defective 'in that they did not work,' such an allegation is insufficient . . . ." The trial court said such allegations are "generic." The trial court said that the allegations did not demonstrate that defendant did not conduct the pre-delivery inspection and certification procedure, and there is no allegation that defendant did not complete the authorized [*15] forms. The trial court said the Owner's Manuals did not affirm the durability or service life of the brakes.

The trial court concluded that defendant's brochures and advertisements to be "non-actionable puffery." The court said that the "non-puffery" alleged representations - the brakes were defective and did not meet regional legal requirements and that defendant did not perform repairs as represented and warranted - were in essence warranty claims that had already been withdrawn from earlier complaints. The trial court stated that plaintiffs did not allege a violation of any section of the CLRA. The trial court then concluded because there was no violation of the CLRA, plaintiffs could not satisfy the "unlawful" prong of the UCL claim.

Finally, the trial court said the "Secret Warranty Law" could not satisfy the "unlawful prong" of the UCL because there was no alleged violation of that "Secret Warranty Law"--plaintiffs did not allege that there was the requisite "adjustment program" required by the statute.

The trial court said plaintiffs failed to allege actual reliance or misrepresentations, and failed to plead unfair or fraudulent activity with reasonable particularity. The trial [*16] court also said that Pulgarin failed to plead that her brakes "actually have failed."

## DISCUSSION

### I. Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has

stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist. (1992) 2 Cal.4th 962, 966-967*; *Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 213-214*, superseded by statute on another point [*17] as stated in *Californians for Disability Rights v. Mervyn's, LLC (2006) 39 Cal.4th 223, 228*.) The legal sufficiency of the complaint is reviewed de novo. (*Montclair Parkowners Assn. v. City of Montclair (1999) 76 Cal.App.4th 784, 790*.)

## II. The Trial Court Erred When It Sustained Defendant's Demurrer

Plaintiffs contend that the trial court erred when it sustained defendant's demurrer to their CLRA and UCL causes of action. We hold that the facts alleged in the fourth amended complaint state causes of action under both legal theories.

### A. Plaintiffs' CLRA Claim

"'The Consumers Legal Remedies Act, enacted in 1970, "established a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer. . . .' [Citation.]"' (*Reveles v. Toyota by the Bay (1997) 57 Cal.App.4th 1139, 1154 [67 Cal.Rptr.2d 543, 82 A.L.R.5th 781]*.) 'The self-declared purposes of the act are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (*Civ. Code, § 1760* [*18] . . . .)' (*Hogya v. Superior Court (1977) 75 Cal.App.3d 122, 135 [142 Cal.Rptr. 325]*.)" (*Wang v. Massey Chevrolet (2002) 97 Cal.App.4th 856, 869*.)

2007 Cal. App. Unpub. LEXIS 9252, *

To bring an action under the CLRA, a plaintiff must be a consumer who has suffered "any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770." (*Civ. Code, § 1780, subd. (a)* [1] .) To state a claim under the CLRA, a plaintiff must allege that the defendant's representations likely would deceive a reasonable consumer. (*Consumer Advocates v. Echostar Satellite Corp. (2003) 113 Cal.App.4th 1351, 1358-1360*.) The CLRA is to be liberally construed. (*§ 1760*; *Wang v. Massey Chevrolet, supra, 97 Cal.App.4th at p. 869*.)

> 1    All statutory citations in the discussion of plaintiffs' CLRA claim are to the Civil Code unless otherwise noted.

Section 1770, subdivision (a) proscribes 23 "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer . . . ." Plaintiffs allege defendant violated certain of the provisions of section 1770, subdivision [*19] (a) when it made various representations concerning its parking brake system knowing, at the time it made the representations, that the parking brake system was defective. Plaintiffs allege that defendant violated section 1770, subdivision (a)(3) [2] of the CLRA when it knowingly affixed a certification label or tag to each of the subject vehicles falsely stating, "This Vehicle Conforms to All Applicable U.S. Federal Motor Vehicle Safety Standards in Effect on the Date of Manufacture Show[n] above." Defendant's defective braking system, plaintiffs allege, violated Federal Motor Vehicle Safety Standards 105 and 135.

> 2    "Misrepresenting the affiliation, connection, or association with, or certification by, another."

The Federal Motor Vehicle Safety Standards are codified at 49 C.F.R. part 571 (2006). With respect to parking brake systems, *49 C.F.R. part 571.105*, subpart 5.2.1 provides, in pertinent part, that "[e]xcept as provided in § 5.2.2, the parking brake system on a passenger car . . . shall be capable of holding the vehicle stationary (to the limit of traction on the braked wheels) for 5 minutes in both a forward and reverse direction on a 30 percent grade." The conditions and procedures [*20] under which parking brakes are to be tested are set forth in *49 C.F.R. part 571.135*, subpart 7.12.2. Under those conditions and applying those procedures, subpart 7.12.3 provides, "[t]he parking brake system shall hold the vehicle stationary for 5 minutes in both a forward and reverse direction on the grade." With respect to "[b]rake system integrity," *49 C.F.R. part 571.135*, subpart 5.6(a) provides, in pertinent part, "[a]ll mechanical components of the braking system shall be intact and functional."

The trial court ruled that plaintiffs' Federal Motor Vehicle Safety Standards allegations do not state a basis for a misrepresentation under the CLRA because they fail to allege that "the parking brake systems were not 'capable' of holding the subject vehicles stationary for 5 minutes in both a forward and reverse direction on a 30 percent grade, nor is there an allegation that the parking brake system did not hold the vehicle stationary for 5 minutes in both a forward and reverse direction on the grade." The trial court's reading of plaintiffs' allegations is unduly narrow and inconsistent with the mandate to construe the CLRA liberally (*§ 1760*; *Wang v. Massey Chevrolet, supra, 97 Cal.App.4th at p. 869*) [*21] and to give the complaint a reasonable interpretation (*Aubry v. Tri-City Hospital Dist., supra, 2 Cal.4th at pp. 966-967*). Plaintiffs allege that the label or tag affixed to each of the subject vehicles certifying that the vehicle conformed to all effective Federal Motor Vehicle Safety Standards was false because the parking brake system was defective. Liberally construed, that allegation al-

leges that the parking brakes could not hold the subject vehicles as required by *49 C.F.R. part 571.105*, subpart 5.2.1 and *49 C.F.R. part 571.135*, subpart 7.12.3 and, accordingly, is sufficient to establish a misrepresentation under the CLRA.

Also, plaintiffs' allegations establish a misrepresentation under the CLRA based on *49 C.F.R. part 571.135*, subpart 5.6(a) which provides, in pertinent part, "[a]ll mechanical components of the braking system shall be intact and functional." Plaintiffs allege that defendant knew that "the parking brakes on the Subject Vehicles were defective in that they did not work." We must accept that allegation as true. (*Aubry v. Tri-City Hospital Dist., supra, 2 Cal.4th at pp. 966-967*.) If the parking brakes "did not work," then they were not "functional" as required by [*22] subpart 5.6(a), and a certification that a vehicle equipped with such parking brakes conformed to "All Applicable U.S. Federal Motor Vehicle Safety Standards in Effect on the Date of Manufacture" is an actionable misrepresentation under the CLRA.

Plaintiffs also allege that defendant violated section 1770, subdivisions (a)(5) [3] and (a)(7) [4] of the CLRA when defendant represented that the subject vehicles had characteristics and benefits they did not have and were a particular standard, quality, or grade they were not. In support of their CLRA cause of action, plaintiffs allege that defendant made representations about the quality, safety, and performance of the parking brake system on the subject vehicles while failing to disclose information it knew about the defect in the parking brakes. The list of proscribed practices in section 1770 includes the concealment or suppression of material facts. In the CLRA context, "[f]raud or deceit may consist of the suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact." (*Outboard Marine Corp. v. Superior Court (1975) 52 Cal.App.3d 30, 37*; [*23]

compare with *Bardin v. DaimlerChrysler Corp. (2006) 136 Cal.App.4th 1255* and *Daugherty v. American Honda Motor Co., Inc. (2006) 144 Cal.App.4th 824, 835* ["although a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose"].) Plaintiffs' allegations are sufficient to state a violation of the CLRA based on defendant's alleged representations about the parking brakes and concealment of the defect. (See *Outboard Marine Corp. v. Superior Court, supra, 52 Cal.App.3d at p. 37*.)

> 3  "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

> 4  "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

Thus, the fourth amended complaint states facts sufficient to constitute a cause of action under the CLRA with respect [*24] to defendant's alleged misrepresentations about its vehicles' compliance with Federal Motor Vehicle Safety Standards and with respect to defendant's alleged affirmative representations about the parking brake system and concealment of information about the defect in the parking brakes. We need not consider whether other facts alleged in the fourth amended complaint independently would state a cause of action under the CLRA.

## B. Plaintiffs' UCL Claim

*Business and Professions Code Section 17200* (*section 17200*) defines "unfair competi-

tion" as including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." The coverage of the unfair competition law is "'sweeping, embracing '"anything that can properly be called a business practice and that at the same time is forbidden by law."'" (*Rubin v. Green (1993) 4 Cal.4th 1187, 1200 [17 Cal.Rptr.2d 828, 847 P.2d 1044]*, quoting *Barquis v. Merchants Collection Assn. (1972) 7 Cal.3d 94, 113 [101 Cal.Rptr. 745, 496 P.2d 817]*.) It governs 'anti-competitive business practices' as well as injuries to consumers, and has as a major purpose 'the preservation of fair business competition.' [*25] (*Barquis v. Merchants Collection Assn., supra, 7 Cal.3d at p. 110*; see also *People v. McKale (1979) 25 Cal.3d 626, 631-632 [159 Cal.Rptr. 811, 602 P.2d 731]*; *People ex rel. Mosk v. National Research Co. of Cal. (1962) 201 Cal.App. 2d 765, 771 [20 Cal.Rptr. 516]*.) By proscribing 'any unlawful' business practice, '*section 17200* "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. (*State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1103 [53 Cal.Rptr.2d 229]*, citing *Farmers Ins. Exchange v. Superior Court [(1992)] 2 Cal.4th [377,] 383*.)" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180*.)

*Section 17200* "'establishes three varieties of unfair competition --acts or practices which are unlawful, or unfair, or fraudulent. "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa."' [Citation.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at p. 180*.) "Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires [*26] 'consideration and weighing of evidence from both sides' and which usually cannot be made on demurrer. (*McKell v. Washington Mutual, Inc. [(2006)] 142 Cal.App.4th [1457], 1472, 1473*;

see also *People v. McKale (1979) 25 Cal.3d 626, 635 [159 Cal.Rptr. 811, 602 P.2d 731]*.)" (*Linear Technology Corp. v. Applied Materials, Inc. (2007) 152 Cal.App.4th 115, 134-135*.) Particularized fact-pleading is not required to state a claim under the UCL. (*Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 46-47*; see also *Schnall v. Hertz Corp. (2000) 78 Cal.App.4th 1144, 1167* [distinguishing the factual basis for the "fraud" prong of the UCL from common law fraud or deception].)

### 1. Unlawful

"An 'unlawful' business activity includes "'*anything* that can properly be called a business practice and that at the same time is forbidden by law." [Citation.]' [Citation.] Virtually any law--federal, state or local--can serve as a predicate for an action under *Business and Professions Code section 17200*. [Citation.]" (*Smith v. State Farm Mutual Automobile Ins. Co. (2001) 93 Cal.App.4th 700, 717-718*.)

Plaintiffs allege that defendant's actions and misrepresentations with respect to its defective parking [*27] brake system were unlawful because they allegedly violated various state and federal laws. Among the laws plaintiffs allege that defendant violated was the Federal Motor Vehicle Safety Act pursuant to which the Federal Motor Vehicle Safety Standards were issued. As set forth in our discussion of plaintiffs' CLRA cause of action, plaintiffs properly pleaded a violation of the Federal Motor Vehicle Safety Standards. Such a violation, if true, would also be a violation of the "unlawful" prong of the UCL. Likewise, the violation of the CLRA itself, which plaintiffs incorporated into their UCL claim by reference, is a proper basis for a violation of the "unlawful" prong of the *UCL.* [5] (*Falk v. General Motors Corporation (N.D. Cal. 2007) 496 F. Supp. 2d 1088, 1098*.)

     5    Although the better practice would have been to state affirmatively the violation of the CLRA as a basis for their

"unlawful" claim in their UCL cause of action, plaintiffs were not required to so plead. (*Skopp v. Weaver (1976) 16 Cal.3d 432, 440* ["We conclude that the allegations of plaintiffs' first cause of action, incorporated by reference into their second and third causes of action, adequately plead agency, fiduciary duty, [*28] and breach of duty, and thus state facts sufficient to entitle plaintiffs to relief. [Fn. omitted.]"].)

In its ruling sustaining defendant's demurrer, the trial court stated, "To the extent Plaintiffs are attempting to base their UCL 'unlawful' claim on 'misrepresentations,' there is no allegation of actual reliance by the named Plaintiffs on any of those misrepresentations." To the contrary, in an allegation incorporated by reference in plaintiffs' UCL cause of action, plaintiffs allege, "Plaintiffs and others similarly situated would not have purchased these defective and unsafe vehicles but for Defendants' misrepresentations and concealment of material facts . . . ." [6]

> 6    It was stated that a violation of the UCL "can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage." (*Schnall v. Hertz Corp., supra, 78 Cal.App.4th at p. 1167*.) The recent amendments to *Business and Professions Code sections 17203* and *17204* require that the named plaintiff has suffered "injury in fact and has lost money or property as a result of such unfair competition." (*Bus. & Prof. Code, § 17204*.) It is not clear if this amendment applies to reliance.

## 2. [*29] *Unfair*

"'The "unfair" standard, the second prong of [*Business and Professions Code] section 17200*, also provides an independent basis for relief. This standard is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud. [Citation.] The test of whether a business practice is unfair "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . . [Citations.]" [Citation.] . . . [A]n "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." [Citation.]' [Citation.]" (*Smith v. State Farm Mutual Automobile Ins. Co., supra, 93 Cal.App.4th at pp. 718-719*.)

Plaintiffs allege that defendant knowingly sold vehicles with a defective parking brake system while making false representations about the parking brakes' quality, including the false representation that the parking brakes conformed to [*30] Federal Motor Vehicle Safety Standards. Plaintiffs allege that the defect, in some instances, rendered the parking brakes inoperable which resulted in injuries and deaths. Such conduct, if true, would be "immoral, unethical, oppressive, unscrupulous, [and] substantially injurious to consumers" and a violation of the "unfair" prong of the UCL. (*Smith v. State Farm Mutual Automobile Ins. Co., supra, 93 Cal.App.4th at pp. 718-719*.)

### 3. *Fraudulent*

"When an unfair competition claim is based on an alleged fraudulent business practice - that is, a practice likely to deceive a reasonable consumer - 'a plaintiff need not plead the exact language of every deceptive statement; it is sufficient for [the] plaintiff to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme.' (*Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 212-213 [197 Cal.Rptr. 783, 673 P.2d 660]*.) The allegation 'may be based on representations to the public which are untrue, and

"'also those which may be accurate on some level, but will nonetheless tend to mislead or deceive . . . . A perfectly true statement couched in such a [*31] manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under'" the UCL.' (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471 [49 Cal.Rptr. 3d 227].)" (*Linear Technology Corp. v. Applied Materials, Inc., supra*, 152 Cal.App.4th at p. 134.)

Plaintiffs allege that "[a]s a result of Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein, members of the public are likely to be deceived and/or have lead [sic] to consumer confusion that the Subject Vehicles contain and/or are equipped with a fully functional and operational parking brake system to use as an immobilization device to prevent the vehicle from unintended rolling . . . . Said acts, omissions, misrepresentations, practices and non-disclosures as alleged herein therefor[e] constitute fraudulent business acts and/or practices within the meaning of *California Business & Professions Code §§ 17200, et seq.*" If true, these allegations, based on defendant's alleged misrepresentations about the quality of its parking brake system and its alleged active concealment of the defect in the parking brake system, [*32] establish a violation of the "fraudulent" prong of the UCL. (See *Linear Technology Corp. v. Applied Materials, Inc., supra*, 152 Cal.App.4th at p. 134.)

Plaintiffs allege that they relied on defendant's representations and that they suffered damages as required by *Business and Professions Code sections 17203* and *17204*. Plaintiffs allege that each named plaintiff either expended money to replace the brakes, or, in the case of Pulgarin, has an automobile with defective brakes. Although not required to plead facts with particularity, plaintiffs plead with specificity the facts underlying their UCL cause of action. (*Quelimane Co. v. Stewart Title Guaranty Co., supra*, 19 Cal.4th at pp. 46-47; *Schnall v. Hertz Corp., supra*, 78 Cal.App.4th at p. 1167.) We reject the trial court's ruling that Pulgarin had to have alleged that her parking brakes actually failed to establish that she sustained an injury in fact and had lost money or property within the meaning of *Business and Professions Code section 17204*. The allegation that the parking brakes were defective when her vehicle was delivered to her and, thereafter, showed "abnormal and premature wear" is sufficient to allege an injury in fact and [*33] a loss of money or property--Pulgarin need not wait for a catastrophic event such as brake failure to bring an action under the UCL based on the facts alleged in the fourth amended complaint.

Accordingly, the trial court erred when it sustained, without leave to amend, defendant's demurrer to plaintiffs' fourth amended complaint. Because the fourth amended complaint states facts sufficient to constitute a cause of action under the UCL as set forth above, we need not consider whether other facts alleged in the fourth amended complaint also state a cause of action under the UCL. Also, we do not have to determine the issue of leave to amend the fourth amended complaint.

## DISPOSITION

The judgment of dismissal is reversed. Plaintiffs are awarded their costs on appeal.

MOSK, J.

We concur:

ARMSTRONG, Acting P.J.

KRIEGLER, J.

Case 3:07-cv-04765-CRB    Document 30    Filed 11/21/2007    Page 14 of 32

Page 1
2007 Cal. App. Unpub. LEXIS 9102, *

**MICHAEL FREEMAN, Plaintiff and Appellant, v. MATTRESS GALLERY, Defendant and Respondent. MICHAEL FREEMAN, Plaintiff and Appellant, v. GALLERY CORP. et al., Defendants and Respondents.**

**E039614, E039615**

**COURT OF APPEAL OF CALIFORNIA, FOURTH APPELLATE DISTRICT, DIVISION TWO**

**2007 Cal. App. Unpub. LEXIS 9102**

**November 8, 2007, Filed**

**NOTICE:** NOT TO BE PUBLISHED IN OFFICIAL REPORTS. CALIFORNIA RULES OF COURT, RULE 8.1115(a), PROHIBITS COURTS AND PARTIES FROM CITING OR RELYING ON OPINIONS NOT CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED, EXCEPT AS SPECIFIED BY RULE 8.1115(b). THIS OPINION HAS NOT BEEN CERTIFIED FOR PUBLICATION OR ORDERED PUBLISHED FOR THE PURPOSES OF RULE 8.1115.

**PRIOR HISTORY:** [*1]
APPEAL from the Superior Court of Riverside County, No. RIC 394369, RIC 415560. Craig G. Riemer, Judge.

**DISPOSITION:** The judgment in Freeman I (Super. Ct. No. RIC 394369) is affirmed in part and reversed in part. The judgment in Freeman II (Super. Ct. No. RIC 415560) is also affirmed inpart and reversed in part.

**COUNSEL:** Geller, Stewart & Foley, Michael S. Geller and Richard A. Stewart for Plaintiff and Appellant.

Dorsey & Whitney, Steven D. Allison and Chris Humphreys for Defendants and Respondents.

**JUDGES:** RAMIREZ, P.J.; RICHLI, J., HOLLENHORST, J. concurred.

**OPINION**

Plaintiff Michael Freeman (Freeman) filed two actions asserting violations of the Consumer Legal Remedies Act (CLRA), Civil Code section 1750 et seq. and the unfair competition law (UCL), Business and Professions Code section 17200 et seq. He appeals from separate judgments of dismissal after the trial court sustained defendants' motion for judgment on the pleadings and demurrer without leave to amend.

**FACTS AND PROCEDURAL HISTORY**

On June 12, 2003, Freeman filed a complaint (Freeman I) against defendant Mattress Gallery alleging a cause of action for violation of the CLRA, and a cause of action for unfair business practices in violation of the UCL. He alleged that [*2] on February 16, 2003, he read a Mattress Gallery advertisement that indicated that Mattress Gallery was offering special pricing on mattresses because the factory had "goofed" and made thousands of mattresses with the wrong cover. He further alleged that the claim that the factory had "goofed" was untrue and that the statement was part of a "bait and switch" scheme wherein customers who

sought to purchase those mattresses were told that they were not healthy to sleep on every night and that they should purchase a mattress at two-to-three times the advertised price. In addition, Freeman asserted that on February 18, 2003, he drove to a Mattress Gallery store to purchase the advertised mattress for his daughter's house. Freeman sought injunctive relief, disgorgement of profits, exemplary damages and attorney fees.

Mattress Gallery demurred to the CLRA cause of action based upon Freeman's failure to allege proper venue, compliance with the requirement of a written notice to Mattress Gallery at least 30 days prior to filing suit, and elements of class action relief. On August 11, 2003, prior to the hearing date on the demurrer, Freeman filed a first amended complaint adding class action [*3] allegations defining the class as "all California consumers who responded to the Mattress Gallery advertisement headed 'OOPS! The factory Goofed' published during February, 2003." However, he later asked for restitution in favor of all California consumers who responded to deceptive advertisements "during the preceding four years." Freeman also added venue allegations and asserted that he sent a letter to Mattress Gallery on February 24, 2003, in order to comply with the notice requirement of Civil Code section 1782, subdivision (a). Mattress Gallery answered the first amended complaint and later filed an amended answer.

On April 26, 2004, Freeman sought leave to file an amended complaint in order to add additional defendants, to add allegations of additional deceptive advertisements by those defendants, and to add a third cause of action for violation of Business and Professions Code section 17500 et seq. (specifically addressing false advertisement). On June 15, 2004, the trial court denied Freeman's motion. In response, on July 20, 2004, Freeman filed a second action (Freeman II) using a complaint nearly identical in all major respects, to that which he sought to file as a second [*4] amended complaint in the existing action.

Defendants Mattress Gallery, James Ristas and Simmons Manufacturing Co., LLC (collectively Defendants) filed a demurrer to the complaint in Freeman II. The trial court sustained the demurrer as to the first cause of action for violation of the CLRA, with leave to amend. Freeman filed a first amended complaint on November 12, 2004. Defendants concurrently filed a demurrer to, a motion to strike portions of the prayer for damages in, and a motion to dismiss the CLRA cause of action in, the first amended complaint. On August 17, 2005, the trial court sustained the demurrer to the entire complaint without leave to amend on the grounds (1) that Freeman had failed to allege that he suffered any damages and therefore had no standing, (2) that Freeman had already filed an action seeking the same remedy alleged, (3) that the class that Freeman defined was unascertainable, and (4) that Freeman failed to allege proper notice was provided as required by Civil Code section 1782, subdivision (a). It thereafter found that both the motion to strike and the motion for dismissal were moot and dismissed the complaint. However, it also entered an order granting [*5] Defendants' motion to strike the cause of action for violation of the CLRA on the ground that Freeman failed to allege that he had sustained any actual damage and therefore lacked standing.

Freeman filed a motion for reconsideration based upon the fact that a notice under Civil Code section 1782, subdivision (a) had been sent to Defendants on September 24, 2004. However, that motion was taken off calendar.

In the meantime, on August 17, 2004, Mattress Gallery filed a motion to dismiss the CLRA cause of action in Freeman I on the grounds that the claim lacked merit as a matter of law, that the statements in the advertisements were nonactionable puffery and were all true, that Freeman did not suffer any actual damages as a result of Mattress Gallery's con-

duct, that the purported class was not ascertainable, that the action was not appropriate for class action status and that Freeman was not an appropriate class representative. The following day, Mattress Gallery filed a motion for summary adjudication of the second cause of action for violation of the UCL in Freeman I on the grounds that the UCL cause of action was based entirely upon the existence of a CLRA claim, which was subject to [*6] dismissal for the reasons indicated in the earlier motion and that there was no triable issue of material fact that Mattress Gallery's advertisement was unfair, untrue, deceptive or fraudulent.

On November 3, 2004, the trial court granted the motion to dismiss the CLRA claim on the ground that Freeman did not suffer any damage as required by Civil Code section 1780, subdivision (a) but denied the motion for summary adjudication of the second cause of action.

On September 2, 2005, Mattress Gallery filed a motion for judgment on the pleadings based on the fact that Proposition 64 changed the UCL to require that a plaintiff have been damaged in fact and have lost money or property in order to have standing and to require the identification of an ascertainable class. On October 20, 2005, the trial court granted the motion on the ground that Freeman failed to allege that he had sustained any injury in fact as a result of Mattress Gallery's advertisement and dismissed the entire first amended complaint in Freeman I. Freeman appealed from the judgments in both cases. [1]

1    Defendants argue in each case that Freeman's notice of appeal is not sufficient to include the causes of action for violation [*7] of the CLRA. On the contrary, both notices of appeal state that they are from the judgments, which necessarily include the orders at issue. (Code Civ. Proc., § 906.)

## DISCUSSION

### A. *Standard of Review*

There are three separate types of motions that we are called on to review, giving rise to two standards of review. Freeman appeals from the trial court's order granting Mattress Gallery's motion to dismiss his cause of action for violation of the CLRA. "Although a CLRA cause of action cannot be summarily disposed of by means of a motion for summary adjudication or summary judgment (Civ. Code, § 1781, subd. (c)), it can be dismissed before trial on a motion for a determination that it is without merit (i.e., a no-merit determination). [Citations.] In practice, courts nevertheless have applied the standards applicable to motions for summary judgment and summary adjudication in deciding motions for no-merit determinations. [Citations.]" (*Smith v. Wells Fargo Bank, N.A.* (2005) 135 Cal.App.4th 1463, 1474.) Our de novo review under the summary judgment standard is governed by Code of Civil Procedure section 437c, which provides in subdivision (c) that a motion for summary judgment may only be granted [*8] when, considering all of the evidence set forth in the papers and all inferences reasonably deducible therefrom, it has been demonstrated that there is no triable issue as to any material fact and the cause of action has no merit. The pleadings govern the issues to be addressed. (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1121 (*City of Morgan Hill*).) A defendant moving for summary judgment bears the burden of persuasion that there is no triable issue. This burden is met by producing evidence that demonstrates that a cause of action has no merit because one or more of its elements cannot be established to the degree of proof that would be required at trial, or that there is a complete defense to it. Once that has been accomplished, the burden shifts to the plaintiff to show, by producing evidence of specific facts, that a triable issue of material fact exists as to the cause of action or

the defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849-851, 854-855.)

Freeman also appeals from an order granting a motion for judgment on the pleadings. "The standard of review for a motion for judgment on the pleadings is the same as that for a general demurrer." (*Dunn v. County of Santa Barbara* (2006) 135 Cal.App.4th 1281, 1298.) [*9] Thus, both the motion for judgment on the pleadings in Freeman I and the demurrer in Freeman II are reviewed under the following standard.

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, we give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. A trial court errs in sustaining a demurrer when the plaintiff has stated a cause of action under any possible legal theory, and abuses its discretion in sustaining a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Palm Springs Tennis Club v. Rangel* (1999) 73 Cal.App.4th 1, 4-5 (*Palm Springs Tennis Club*).) Still the burden is on the appellant to demonstrate the existence of reversible error. (*San Joaquin Raptor/Wildlife Rescue Center v. County of Stanislaus* (1996) 42 Cal.App.4th 608, 626.) Therefore we need only discuss whether a cause of action was stated under the theories raised on appeal. (*Ibid*.)

Further, "[w]hile a plaintiff need [*10] not request leave to amend in order to preserve on appeal the issue of whether the court abused its discretion in sustaining a demurrer without leave to amend (Code Civ. Proc., § 472c), on appeal the plaintiff does bear the burden of proving there is a reasonable possibility the defect in the pleading can be cured by amendment. [Citation.] '" . . . Plaintiff must show in what manner he can amend his complaint and

how that amendment will change the legal effect of his pleading. . . ." [Citation.]' [Citation.]" (*Palm Springs Tennis Club*, *supra*, 73 Cal.App.4th at pp. 7-8.)

B. *Freeman I*

1. *CLRA*

As indicated above, the first cause of action in the initial complaint was disposed of by means of a dismissal for lack of merit because Freeman had not suffered any damage as required by Civil Code section 1780, subdivision (a), which states, in part, that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person . . . ." As part of its motion, Mattress Gallery argued that Freeman did not allege that he was damaged as a result of its allegedly deceptive advertising. [*11] Freeman alleged that he traveled to a Mattress Gallery store but not that he purchased a mattress. In fact, Freeman admitted that he never purchased a mattress from Mattress Gallery. Thus, Mattress Gallery argued, there is no basis for his claim that it made illicit profits as a result of its allegedly false advertising. The damage for which Freeman sought a remedy was not a damage that he had suffered. As the pleadings govern the issues to be addressed in a summary adjudication (*City of Morgan Hill*, *supra*, 71 Cal.App.4th at p. 1121), this showing on the part of Mattress Gallery was sufficient to shift the burden to Freeman to demonstrate the existence of a triable issue of material fact.

In response Freeman asserted that the damage requirement was to be interpreted so broadly that the mere infringement of a legal right provided by Civil Code section 1770 is sufficient to meet the damage requirement of Civil Code section 1780. (*Kagan v. Gibraltar Savings and Loan Assoc.* (1984) 35 Cal.3d 582, 593 (*Kagan*).)

Mattress Gallery cites *Wilens v. TD Waterhouse Group, Inc.*, (2003) 120 Cal.App.4th 746, 754-755 in an attempt to distinguish *Kagan*. However, the issue in *Wilens* was not what *Kagan* stated [*12] about the requirement for "any damage" in order for an individual to have standing, but whether *Kagan* stated that each member of a purported class need not have suffered actual damages. (*Ibid.*) *Wilens* was simply not a standing case and did not distinguish the statement in *Kagan* that "the requirement of section 1780 that a consumer 'suffer[] any damage' . . . include[s] the infringement of any legal right as defined by section 1770." (*Kagan*, *supra*, 35 Cal.3d at p. 593; *Wilens*, *supra*, 120 Cal.App.4th at p. 750.) Thus, our Supreme Court has interpreted Civil Code section 1780 to state that the infringement of a legal right provided by Civil Code section 1770 that results from the violation of Civil Code section 1770 is damage enough to provide standing. In other words, in order to have standing to bring an action for violation of the CLRA, all a plaintiff need allege is that the defendant violated a provision of Civil Code section 1770.

While the issue before the Supreme Court in *Kagan* was whether the plaintiff had standing to bring a class action as its representative, the fact that Civil Code section 1783 requires individual standing under Civil Code section 1780 as a prerequisite to [*13] standing as a class representative means that the Supreme Court's determination on the individual standing issue was necessary to its determination. Much as we might disagree with the Supreme Court's unsupported and ill-reasoned interpretation of the standing requirement within Civil Code section 1770, [2] we are bound by it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

    2    The Supreme Court's determination appears to violate basic rules of statutory interpretation by refusing to give meaning to and therefore rendering the words "suffers any damage as a result of" un-

necessary and mere surplusage. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 95.) Further, the federal statute cited in support of the decision (15 U.S.C. § 1640) differs significantly from California's law in that it has no requirement that a plaintiff have suffered "any damage." The *Kagan* court's reference to it therefore merely begs the question.

However, this conclusion does not end our inquiry. It is not clear from the record that the trial court erroneously interpreted or ignored the Supreme Court's ruling in *Kagan*. As indicated above, *Kagan* still requires that a plaintiff demonstrate that his or [*14] her rights under Civil Code section 1770 have been infringed in order to have standing. Mattress Gallery's motion to dismiss the CLRA cause of action was based upon several grounds that included several challenges to Freeman's ability to demonstrate that his rights under Civil Code section 1770 had been infringed. Based upon the record before us, it is quite possible that the trial court credited at least one of these arguments, and, finding that Freeman could not demonstrate that his rights under Civil Code section 1770 had been infringed, concluded that he therefore could not demonstrate the existence of any damages sufficient to confer standing. It is the appellant's burden to provide an adequate record to affirmatively demonstrate error or no relief is merited. (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Under the circumstances here present we cannot conclude that Freeman has affirmatively demonstrated that the trial court's ruling on Mattress Gallery's motion to dismiss was erroneous.

## 2. *UCL*

The second cause of action, for violation of the UCL, was resolved by way of a motion for judgment on the pleadings which is reviewed as if it were a demurrer. [*15] Business and Professions Code section 17204 states that actions

for relief as a result of unfair competition may be brought by any person "who has suffered an injury in fact and has lost money or property as a result" of such unfair competition. Business and Professions Code section 17203 requires any person seeking to represent a class in an action for violation of the UCL to meet the standing requirement just cited and also to comply with Code of Civil Procedure section 382. [3]

> 3     While this appeal was pending the Supreme Court determined that the changes to the UCL effected by Proposition 64 were applicable to cases pending when the changes went into effect. (*Californians For Disability Rights v. Mervyn's* (2006) 39 Cal.4th 223, 227.) Appellant concedes that the statutes as cited above apply in this case.

Mattress Gallery argued that Freeman failed to plead that he had suffered any injury in fact or that he had lost money or property as a result of its allegedly false advertising and therefore had no standing to bring his claim. CTI 575, 580 It also asserted that Freeman could not identify an ascertainable class and therefore could not maintain a class action under the UCL. CT 575, 580-582

In  [*16] order to have standing an individual plaintiff must plead facts supporting each of the three elements of Business and Professions Code section 17204: (1) injury in fact, (2) loss of money or property, and (3) causation. (*Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 799 (*Aron*); *R & B Auto Center, Inc v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 359-360.) Freeman's second cause of action for violation of the UCL simply incorporated his prior allegations and added the conclusion that Mattress Gallery's conduct violated the UCL so he should obtain an injunction and restitution. CTI 16-17 As noted above, Freeman alleged only that he traveled to a Mattress Gallery store, not that he purchased a mat-

tress. CTI 15-16 Further, the only reference that he makes to damages are alleged illicit profits made by Mattress Gallery as a result of its "bait and switch" advertising, and the restitution that he sought was of money Mattress Gallery collected from consumers. CTI 16-17 The first amended complaint simply does not contain any allegation that Freeman suffered an injury in fact or that he personally lost money or property as a result of Mattress Gallery's alleged wrongful  [*17] conduct.

This conclusion does not end our inquiry however. In his opposition to Mattress Gallery's motion, Freeman requested leave to amend his complaint to allege that he suffered injury in fact and lost money in the nature of "the cost per mile to [him], including gasoline and wear and tear on his vehicle" resulting from responding to the allegedly false advertisement. CTI 616-617

At the time that this appeal was filed no published case by California state courts had yet directly addressed what was meant by the requirement that a plaintiff plead and prove the existence of an "injury in fact" and a "loss" of money or property in order to have standing under the recently amended version of Business and Professions Code sections 17204 and 17535. [4] In determining what the phrases "injury in fact" and "lost money or property" are intended to mean, we are bound to take the statute as enacted and may not cause its meaning to conform to a presumed intent that is not expressed. (*Knight v. Superior Court* (2005) 128 Cal.App.4th 14, 23 (*Knight*); Code Civ. Proc., § 1858.)

> 4     While this appeal was pending, the Fourth District Court of Appeal, Division Three published a case directly that addressed  [*18] the question what constitutes an "injury in fact" for standing purposes under the UCL. However, the California Supreme Court has granted review of that opinion. (*Meyer v. Sprint Spec-*

*trum L.P.* (2007) 150 Cal.App.4th 1136, review granted Aug. 15, 2007, No. S153846, 2007 Cal. LEXIS 8720.)

In prior cases requiring interpretation of new statutory language, the California Supreme Court has determined that an "examination of various dictionary definitions of a word will no doubt be useful" in determining its ordinary meaning, (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 649) so long as the court undertakes that examination from the viewpoint of the electorate in enacting a statute that contains the word. (See, *Ibid.*; *Knight, supra,* 128 Cal.App.4th at p. 23.) Injury is defined as "an act that damages, harms or hurts: . . . a violation of another's rights for which the law allows an action to recover damages or specific property or both: an actionable wrong." (Webster's 3d New Internat. Dict. (1993) p. 1164.) To lose is to "suffer deprivation of." (*Id.* at p. 1338.) Loss is the undesirable outcome of a risk; the disappearance or diminution in value, usu. in an unexpected or relatively   [*19] unpredictable way." (Black's Law Dict. (8th ed. 2004) p. 963.)

In addition to these considerations, the California Supreme Court has, in other circumstances, recognized the federal rule for standing that requires an "injury in fact." The federal courts define "injury in fact" as requiring a party to "'prove by a preponderance of the evidence that it has suffered "an invasion of a legally protected interest that is [both] '(a) concrete and particularized, and (b) actual or imminent . . . .'"' [Citation.]" as opposed to conjectural or hypothetical. (*People ex rel. Dept. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 986.) In her dissent in *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 591-592, Justice Brown likened "injury in fact" to the existence of some concrete harm as opposed to a common grievance shared by the public in general. This view of "injury in fact" has been implicitly adopted by at least one court in a recent opinion interpret-

ing Business and Professions Code section 17200 et seq. (*State of California ex rel Grayson v. Pacific Bell Telephone Co.* (2006) 142 Cal.App.4th 741, 757-758.) It also comports with the definition of "injury in   [*20] fact" contained in Black's Law Dictionary, which refers to the Federal Rules of Civil Procedure as support. (Black's Law Dict. (8th ed. 2004) p. 801.)

Finally, cases published since the most recent amendments to Business and Professions Code sections 17204 and 17535 have concluded, either directly or through implication, that in order to have standing under those sections a plaintiff must allege either (1) that money was expended by the plaintiff due to the defendant's acts of unfair competition (*Aron, supra,* 143 Cal.App.4th at pp. 802-803; *R & B Auto Center, Inc v. Farmers Group, Inc.,* supra, 140 Cal.App.4th at p. 360; *Monarch Plumbing Co. v. Ranger Ins. Co.* (E.D.Cal., Sept. 25, 2006, No. Civ. S-06-1357) 2006 U.S.Dist. LEXIS 68850, [p. 20]; *Witriol v. LexisNexis Group* (N.D.Cal., Feb. 10, 2006, No. C05-02392) 2006 U.S.Dist. LEXIS 26670, [pp. 18-19]; *Southern Cal. Housing v. Los Feliz Towers Homeow.* (C.D.Cal. 2005) 426 F. Supp. 2d 1061, 1069; *Laster v. T-Mobile USA, Inc.* (S.D.Cal. 2005) 407 F. Supp. 2d 1181, 1194), (2) that money or property was lost or suffered a diminution in value (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 716 (*Overstock.com, Inc.*); [*21] *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1240, 1262), or (3) that plaintiff was denied money to which plaintiff had a cognizable claim (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 269-270, 285, fn. 5; *Filiti v. USAA Casualty Ins. Co.* (E.D.Cal., June 20, 2007, No. Civ. S-06-2694) 2007 U.S.Dist. LEXIS 44691, [p. 6]; *Starr-Gordon v. Mass. Mut. Life Ins. Co.* (E.D.Cal., Nov. 7, 2006, No. Civ. S-03-68) 2006 U.S.Dist. LEXIS 83110, [pp.1, 18-19]).

Freeman proposes to allege that he lost money as a result of his mileage and costs associated with driving to the Mattress Gallery and therefore suffered injury in fact as a result of its conduct. CTI 616-617 The loss of the cost of gasoline and accompanying wear and tear on his vehicle to drive to the Mattress Gallery in order to purchase an item that was not for sale as advertised is a concrete and actual monetary loss. (Compare *Aron*, *supra*, 143 Cal.App.4th at pp. 802-803 where the loss sufficient to support standing under the UCL was the value of less than one tank full of gasoline and *Overstock.com, Inc.*, *supra*, 151 Cal.App.4th at p. 716 where the loss was  [*22] a diminution in value of assets and decline in market capitalization.) The loss alleged is specific to Freeman and does not pertain to the public in general, a fact that distinguishes him from the plaintiff in *State of California ex rel Grayson v. Pacific Bell Telephone Co*., *supra*, 142 Cal.App.4th 741 (judgment based upon a sustained demurrer without leave to amend upheld because plaintiff could not allege individual injury apart from that suffered by the public at large). While many members of the general public may have seen the advertisement, not all of them incurred the cost of traveling to a Mattress Gallery store with the intent to purchase the item that was allegedly not for sale as advertised. Therefore, we must conclude that Freeman has demonstrated that he could properly amend his complaint to allege both an injury in fact, and that he suffered a monetary loss as a result of Mattress Gallery's allegedly false or misleading advertisement. For this reason we must reverse the judgment in Freeman I (Super.Ct.No. RIC 394369). The trial court is directed to allow Freeman to file an amended complaint to state a cause of action for violation of the UCL.

## C. *Freeman II*

Freeman's first  [*23] amended complaint asserted causes of action for violation of the CLRA, for unfair business practices in violation of the UCL and for false advertising in violation of the UCL. The entire complaint was disposed of by way of Defendants' demurrer. The trial court ruled that the entire complaint failed as it was in violation of the rule against splitting a cause of action. It further ruled that the cause of action for violation of the CLRA did not state a cause of action both because Freeman failed to allege that he gave prior notice as required by Civil Code section 1782, subdivision (a) and because he failed to allege that he suffered any damage as required by Civil Code section 1780, subdivision (a). In addition, the trial court ruled that the causes of action for violation of the UCL did not state a cause of action because Freeman did not allege that he suffered an injury in fact and lost money or property as required by Business and Professions Code sections 17204 and 17535.  [*24] Finally, it ruled that Freeman's class action failed because the class that he defined in the complaint was not ascertainable. On appeal Freeman challenges each of these issues. Thus, we will review them in order.

## 1. *Splitting a Cause of Action*

A primary right cannot be pursued by means of more than a single cause of action. (Code of Civ. Proc., § 430.10, subd. (c); *Crowley v. Katleman* (1994) 8 Cal.4th 666, 681-682 (*Crowley*).) A primary right is based upon a duty owed to a plaintiff and the wrongful act of the defendant that breaches that duty. While a plaintiff may seek recovery under different legal theories for violation of a primary right and the violation of that right may entitle the plaintiff to any number of forms of relief, the plaintiff may not allege the violation of the same primary right in different actions. (*Crowley*, *supra*, 8 Cal.4th at pp. 681-682.) If a plaintiff seeks to enforce the same primary right in two actions proceeding simultaneously, the second action must be abated. (*Id*. at p. 682; *People ex rel. Garamendi v. American Autoplan, Inc*. (1993) 20 Cal.App.4th 760, 770-771.) However, abatement requires that the two actions not only concern the same primary right,  [*25]

but that they concern the same parties. (*Id.* at p. 770.) Thus, Freeman II cannot be abated insofar as James Ristas and Simmons Manufacturing Co., LLC are concerned. Further, "[w]here abatement is required, the second action should be stayed, not dismissed. [Citation.]" (*Id.* at p. 771.) Thus, even if Mattress Gallery was correct in asserting that Freeman impermissibly sought recovery for the same primary right in two separate actions against it, a matter that we need not here decide, the trial court erred in dismissing the action in its entirety for impermissible splitting of a cause.

## 2. *CLRA*

Civil Code section 1782 requires that prior to filing a complaint for violation of the CLRA a consumer must send a written notice, certified or registered mail, return receipt requested, to a person alleged to have violated the CLRA indicating the particular violations alleged and demanding correction or rectification of the violation. (Civ. Code, § 1782, subd. (a).) Actions for injunction do not require such notice. (Civ. Code, § 1782, subd. (d).) Adherence to this notice requirement is strict and literal, such that the failure to comply merits a dismissal of the action. (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal. App. 3d 30, 40-41; [*26] see also *Laster v. T-Mobile United States, Inc., supra*, 407 F. Supp. 2d at pp. 1181, 1195-1196.)

In his opposition to the Defendants' motions, Freeman conceded that the first amended complaint failed to plead that the required notice was sent. However, he also asserted that the notice had been sent and that the omission was simply an oversight that could be rectified. At the hearing, Freeman's attorney again confirmed "[c]learly the letter wasn't sent." He nevertheless requested leave to amend. The trial court observed that it did not appear from the documents filed that Freeman could successfully amend regarding the required notice, to which counsel responded, "[t]hat's true."

Under such circumstances we cannot conclude that the trial court erred in sustaining the demurrer without leave to amend as to the portion of the CLRA action seeking damages.

On appeal, Freeman has not asserted that he should be allowed to amend his complaint nor has he stated how any proposed amendment would change the legal effect of his pleading. Rather, he concludes, without any argument, citation to the record, or to legal authority, that the trial court should have granted his motion for reconsideration, [*27] which sought to introduce a purported notice. In light of the fact that the record reveals that he withdrew his motion for reconsideration pursuant to a declaration filed with the trial court prior to the hearing on the motion, Freeman's assertion is utterly without merit. Thus, we must conclude that Freeman has failed to demonstrate that the trial court erred in dismissing his CLRA cause of action insofar as it requested damages as a remedy. However, because a request for injunctive relief does not require prior notice (Civ. Code, § 1782, subd. (d)) we cannot conclude that the CLRA action was properly dismissed on this ground insofar as it sought an injunction.

The trial court also sustained the demurrer to the CLRA cause of action based upon the failure of the complaint to allege that Freeman suffered any damage as required by Civil Code section 1780, subdivision (a). As indicated above, our Supreme Court has interpreted Civil Code section 1780 to state that in order to have standing to bring an action for violation of the CLRA, all a plaintiff need allege is that the defendant violated a provision of Civil Code section 1770. (*Kagan*, *supra*, 35 Cal.3d at p. 593.) The first amended [*28] complaint alleges that Defendants violated Civil Code section 1770, subdivision (a)(3), (5), (7), (9), (10), and (13). Hence, for the reasons stated above, the allegations of the complaint are sufficient to establish Freeman's standing to pursue injunctive relief for violation of the CLRA.

3. *UCL*

The Defendants argued and the trial court ruled that neither cause of action for violation of the UCL stated a cause of action because Freeman did not allege that he suffered an injury in fact and lost money or property as required by Business and Professions Code sections 17204 and 17535.

In his first amended complaint, Freeman alleged that in response to a Mattress Gallery advertisement that he read on February 16, 2003, he drove to two different Mattress Gallery stores intending to purchase a mattress for his daughter's home. In both stores the salesperson explained that the advertised mattress would not be suitable to sleep on every night and would result in a sore back. A more suitable and expensive mattress was suggested. Freeman became disappointed in both instances and left the stores. Freeman alleged that he was damaged in the amount of $ 759.75 as the result of being induced to drive [*29] a long distance to the Mattress Gallery stores and that he was damaged in the amount of $ 310.00 by not being able to receive that amount in savings on a mattress as advertised.

As stated above in conjunction with our discussion of this cause of action in Freeman I, allegations that Freeman personally saw the allegedly false advertisement and responded to it, incurring a concrete and actual loss, as opposed to mere conjecture or hypothesis, or one sustained by the public in general are sufficient to allege standing under the concepts of injury in fact and actual damages as those terms are used in Business and Professions Code sections 17204 and 17535. Consequently, we must conclude that the trial court erred in sustaining the Defendants' demurrers on the ground that Freeman had failed to adequately plead facts supporting his standing to bring his causes of action under the UCL.

4. *Class Action Status*

Finally, the Defendants challenged, and the trial court ruled, that Freeman's class action failed because the class that he defined in the complaint was not ascertainable as required by each of his three causes of action. (*Richmond v. Dart Industries, Inc*. (1981) 29 Cal.3d 462, 469-470; *Caro v. Procter & Gamble Co*. (1993) 18 Cal.App.4th 644, 654; [*30] Bus. & Prof. Code, §§ 17203, 17535; Code Civ. Proc., § 382.) Freeman proposed to represent a class of "all California consumers who responded to any Mattress Gallery advertisement offering mattresses for sale published in the State of California during the period from January 1, 2002, through the time of trial." The Defendants argued that it is impossible to determine the members of a class that "responded to" a Mattress Gallery advertisement and that innumerable separate factual inquiries would be required to determine whether a consumer belonged to the class. Therefore, they urged, the class was not ascertainable.

In response, Freeman asserted that the class requirements under the CLRA were less stringent than those in Code of Civil Procedure section 382. However, he cited no authority for the proposition that the CLRA class requirements do not include that a class be ascertainable. Freeman's sole remaining contention was that the question of the adequacy of the class allegations was not appropriate for consideration by way of a demurrer. On the contrary, "trial courts properly and 'routinely decide[] the issue of class certification on demurrer, sustaining demurrers without leave [*31] to amend where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. [Citations.]' [Citation.]" (*Silva v. Black* (1996) 49 Cal.App.4th 345, 349.) Freeman did not elaborate on or expand his position at oral argument below. Thus, we cannot conclude that the trial court erred in determining that Freeman's grounds for opposition to the demurrer to the

class action were not persuasive. Nor are we persuaded that the trial court's determination that the class as defined in the first amended complaint is impermissibly vague is erroneous.

In his opening brief on appeal Freeman cited *Global Minerals & Metals Corp. v. Superior Court* (2003) 113 Cal.App.4th 836, for the proposition that the requirement of an ascertainable class demands only that such terminology be used to allow persons to determine whether they are members of the class. The case actually indicates that "'[w]hether a class is ascertainable is determined by examining (1) the class definition, (2) the size of the class, and (3) the means available for identifying [*32] class members. [Citations.]' [Citation.]" (*Id.* at p. 849.) Rather than discuss how the first amended complaint addresses these criteria, Freeman merely concludes that the class members of the class described in his first amended complaint would "clearly" know if they are members of the class. We disagree.

The only other point that he raises (other than one that begs the question whether the first amended complaint defines an ascertainable class) is that if the trial court found the class to be uncertain, it should have redefined it in order to preserve the class action. (*Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916.) What the *Hicks* court stated was that a trial court "can and should redefine the class where the evidence before it shows such a redefined class would be ascertainable." (*Ibid.*, footnote omitted.) In the first place, Freeman did not make this argument to the trial court, which therefore cannot be faulted for failing to comply with it. Further, Freeman does not refer to any portion of the record on appeal that might indicate that the evidence before the trial court demonstrated that a redefined class would be ascertainable. Finally, the case cited by [*33] *Hicks* for the proposition stated does not indicate that a trial court should redefine a class in order to save a

class action. (*Woolsey v. State of California* (1992) 3 Cal.4th 758, 794-795.) Freeman provides no further support for this proposition. Thus, Freeman has not demonstrated that the trial court erred in sustaining the Defendants' demurrer to the class action portions of the first amended complaint.

For the first time in his reply brief on appeal Freeman proposes to amend his complaint to redefine the purported class as including only those consumers who responded to a Mattress Gallery advertisement by going to a Mattress Gallery store. As a matter of fairness, it has been repeatedly observed that matters raised for the first time in a reply brief are deemed waived and will not be considered by the appellate court. (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1372, fn. 11.) While Freeman attempts to excuse his delay by referring to the Supreme Court's recent holding in *Californians For Disability Rights v. Mervyn's, supra,* 39 Cal.4th at p. 227, that resulted in the application to this case of the Proposition 64 amendments to the UCL, we are not convinced that any [*34] excuse is thereby merited. Neither in his opposition below, nor in his opening brief on appeal did Freeman assert that the application of Proposition 64 was a relevant question as to the Defendants' demurrer to the class action claims. Freeman was on notice that the trial court viewed his class allegations as being too vague to proceed in all three of his causes of action (including that under the CLRA, which was not affected by Proposition 64). Despite knowing that the trial court viewed his class definition as unacceptably vague, Freeman chose not to address amendment until the Defendants' had no opportunity to respond to his proposals. We see no reason why such tactics should work to his advantage.

Even if we were to overlook the fact that issues raised for the first time in a reply brief are waived, while Freeman has proposed how he might amend his complaint, he does not at-

tempt to explain how this proposed amendment would change the legal effect of his pleading. Rather, Freeman again merely concludes that narrowing the definition of "responded to" a Mattress Gallery advertisement to only those consumers that traveled to a Mattress Gallery store, comports with the CLRA and UCL requirements [*35] for stating a class action, and recites those requirements without explaining how his proposed amendment better fits them. It is not the function of this court to act in counsel's stead. Rather, it is the appellant's burden to demonstrate a right to the relief requested. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105; *Palm Springs Tennis Club*, *supra*, 73 Cal.App.4th at pp. 7-8; Cal. Const., art. VI, § 13.) On this issue he has not done so.

D. *Summary*

With respect to Freeman I (Super.Ct.No. RIC 394369), Freeman has not demonstrated that the trial court erred in granting judgment against him on his first cause of action for violation of the CLRA. While the cause of action for violation of the UCL did not state a cause of action, Freeman has demonstrated that he can amend his complaint to allege facts sufficient to provide him with standing to make that claim. He is therefore entitled to the opportunity to do so.

With respect to Freeman II (Super.Ct.No. RIC 415560), if the trial court determines that Freeman is seeking recovery of the same primary right asserted against defendant Mattress Gallery in Freeman I, the trial court must stay the action in abatement as to defendant [*36] Mattress Gallery. In addition, Freeman may not pursue any of his claims as the representative of a class action. Only his individual claims survive. While Freeman has demonstrated that his first amended complaint contained sufficient allegations to provide him standing to bring a cause of action for violation of the CLRA, he may only pursue injunctive relief as a remedy. Finally, Freeman has demonstrated

that the trial court erred in sustaining the demurrer to his individual causes of action for violation of the UCL on the ground that he failed to allege sufficient facts to demonstrate standing. Therefore, he is entitled to pursue those causes of action.

**DISPOSITION**

The judgment in Freeman I (Super.Ct.No. RIC 394369) is reversed for the purpose of allowing Freeman to file an amended complaint to state a cause of action for violation of the UCL. In all other respects the judgment in Freeman I is affirmed. The judgment in Freeman II (Super.Ct.No. RIC 415560) is reversed as to Freeman's individual claims, with the exception of his claim for damages under the CLRA. As to that claim the judgment is affirmed. The judgment is also affirmed as to Freeman's class action claims. Freeman to recover [*37] his costs on appeal.

RAMIREZ

P.J.

I concur:

RICHLI

J.

**DISSENT BY:** HOLLENHORST

**DISSENT**

HOLLENHORST, J., Dissenting.

While I agree with the majority that Freeman has standing to bring his claims for injunctive relief under the Consumer Legal Remedies Act (CLRA), Civil Code section 1750 et seq., I respectfully disagree that he could amend his complaint to allege an injury sufficient to confer standing under the Unfair Competition Law (UCL), Business and Professions Code [5] section 17200 et seq.

2007 Cal. App. Unpub. LEXIS 9102, *

5   All further references are to the Business and Professions Code unless otherwise specified.

## 1. Freeman Has Not Alleged an "Injury in Fact" Sufficient to Confer Standing to Pursue His UCL Claims.

Whether Freeman has suffered injury sufficient to allow him to pursue his UCL claims depends on whether the wear and tear on his vehicle and money spent on gasoline while driving to and from defendant's business qualifies as an "injury in fact" within the meaning of section 17204 of the UCL.

Before the passage of Proposition 64 (as enacted at Gen. Elec. Nov. 2, 2004) former section 17204 provided standing to "any person acting for the interests of itself, its members or the general public." (Former § 17204.) The UCL did not require a [*38] private plaintiff to have personally suffered an ascertainable amount of injury before he or she could bring a claim. However, in the absence of any personal injury, a private plaintiff's claims were necessarily limited to injunctive relief. Proposition 64 amended section 17204 to require that a private plaintiff establish that he or she has suffered an "injury in fact" and "lost money or property as a result of such unfair competition," in order to assert a claim under the UCL. (§ 17204.) An important purpose for this revision was to "prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution." (See Prop. 64, § 1, subd. (e) ["Findings and Declarations of Purpose"].)

Freeman alleges that he was damaged in the amount of the cost per mile, including gasoline and wear and tear on his vehicle, incurred while driving to defendant's business. Concededly, the cost per mile and wear and tear on Freeman's vehicle amount to a loss of money and property. However, even assuming Freeman did travel to defendant's store because of the alleged false advertisement, I find [*39] that such costs of travel are not enough to establish standing. It is clear from the plain language of the statute that a private person has standing to sue under section 17204 only if that person has (1) suffered an "injury in fact," *and* (2) lost money or property as a result of such unfair competition. (§ 17204.) Since "[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage" (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22), Freeman cannot satisfy the standing requirement unless he can demonstrate that, in addition to losing money, he suffered an "injury in fact." The damages alleged by Freeman do not rise to the level of an "injury in fact." Therefore, he cannot amend his complaint to allege damages sufficient to confer standing and he is not entitled to pursue his UCL claims.

Since the passage of Proposition 64, few cases have addressed what constitutes injury sufficient to confer standing, and no published case has definitively determined what is required to satisfy the "injury in fact" component of the standing requirement. As the majority points out, the California Supreme Court, in other circumstances, has [*40] recognized the federal rule for standing that also requires an "injury in fact." The federal courts define "injury in fact" as requiring a party to "prove by a preponderance of the evidence that it has suffered 'an *invasion* of a legally protected interest that is [both] "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."'" (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 362, italics added, citing *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville* (1993) 508 U.S. 656, 663.) An "invasion" is defined as "[a] hostile or forcible encroachment on the rights of another." (See Black's Law Dict. (8th ed. 2004) p. 843.)

The federal courts chose a strong word in crafting the "injury in fact" definition. Freeman simply drove to defendant's store, engaged in brief interactions with a salesperson, and left without making a purchase. The advertisement in the newspaper to which Freeman responded was not invasive, and it targeted customers willing to purchase imperfect mattresses. Freeman chose to respond to the advertisement as much as he chose not to buy the product after traveling [*41] to the store. At no point in this series of voluntary choices were Freeman's interests *forcibly* encroached upon by defendant. Under these circumstances, I cannot agree that Freeman's alleged loss rises to the level of "invasion," as contemplated by the federal courts in defining an "injury in fact."

The majority finds that Freeman's loss of gasoline and wear and tear on his vehicle is an "injury in fact," since it is specific to him and a direct result of the allegedly unfair business practice. I agree that Freeman's injury may be particularized in the sense that it is distinguished from the injury suffered by the general public. Freeman not only saw the advertisement, but he also incurred the cost of traveling to the store in response to it. However, I find that such a distinction merely characterizes the loss suffered and is not dispositive of the issue whether this loss was an "injury in fact."

In addition to *Southern Cal. Housing v. Los Feliz Towers Homeow.* (C.D.Cal. 2005) 426 F. Supp. 2d 1061, the majority cites to several cases which have been decided since Proposition 64 changed the language of section 17204 and which have concluded a plaintiff suffers an injury in fact for purposes [*42] of standing under the UCL when he or she has (1) expended money due to the defendant's acts of unfair competition (*Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 802-803 (*Aron*) [plaintiff alleged he was required to purchase excess fuel when returning rental truck]; *Monarch Plumbing Co. v. Ranger Ins. Co.* (E.D.Cal. Sept. 23, 2006, No. Civ. S-06-

1357) 2006 U.S.Dist. LEXIS 68850, *20 (*Monarch*) [plaintiff alleged he paid higher insurance premiums because of defendant insurer's settlement policies]; *Witriol v. Lex-isNexis Group* (N.D.Cal. Feb. 10, 2006, No. C05-02392) 2006 U.S.Dist. LEXIS 26670, *18-19] [plaintiff incurred costs to monitor and repair damage to his credit caused by defendants' unauthorized release of private information]; *Laster v. T-Mobile USA, Inc.* (S.D.Cal. 2005) 407 F. Supp. 2d 1181, 1194 (*Laster*) [defendants advertised cellular phones as free or substantially discounted when purchased with cellular telephone service, but plaintiffs were required to pay sales tax on the full retail value of the phones]); (2) lost money or property (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 716 [plaintiff alleged diminution in value of its [*43] assets and decline in its market capitalization and other vested interests]; *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1240, 1262 (*Huntingdon*) [plaintiff's home and car were vandalized by animal rights protestors]); or (3) been denied money to which he or she has a cognizable claim (*Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 269-270, 285, fn.5 (*Progressive West*) [insurance company paid insured's medical bills, then sued to recover that money when insured collected damages from the third party who caused his injuries; insured had standing to bring UCL claim against insurance company]; *Filiti v. USAA Cas. Ins. Co.* (E.D.Cal. June 19, 2007, No. Civ. S-06-2694) 2007 U.S.Dist. LEXIS 44691, *6 [plaintiff alleged that she lost insurance benefits due under her policy which defendant failed to pay when it denied her claim in part]; *Starr-Gordon v. Mass. Mut. Life Ins. Co.* (E.D.Cal., Nov. 6, 2006, No. Civ.S-03-68) 2006 U.S.Dist. LEXIS 83110, *1, *18-19] [plaintiff challenged the process by which defendant terminated her disability benefits]).

Unlike the plaintiffs in the foregoing cases, here, Freeman has [*44] not suffered any in-

jury in fact. He has not been required to pay any money out of his own pocket (other than the cost of driving to the store), he has not lost money or property, and he has not been denied any money that he can alleged is rightfully his.

In reaching my decision, I have taken a basic approach of using the dictionary definitions of "injury," "loss," and "injury in fact." (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 649 [while not binding, dictionary definitions can be useful in an analysis].) An "injury" is "an act that damages, harms, or hurts[;] . . . a violation of another's rights for which the law allows an action to recover damages or specific property or both[;] an actionable wrong." (Webster's 3d New Internat. Dict. (1993) p. 1164.) An "injury in fact" is "[a]n actual or imminent invasion of a legally protected interest, in contrast to an invasion that is conjectural or hypothetical." (Black's Law Dict. (8th ed. 2004) p. 801.) To "lose" is "to suffer deprivation of." (Webster's 3d New Internat. Dict., *supra*, at p. 1338.) A "loss" is "[a]n undesirable outcome of a risk; the disappearance or diminution of value, usu. in an unexpected or relatively unpredictable [*45] way." (Black's Law Dict., *supra*, at p. 963.)

Freeman's expenditures do not conform to this definition. Instead, they represent expectancy costs incurred in the normal course of shopping for a desired product. Whether or not such costs are characterized as a "loss" of money and time, as opposed to money and time well spent, is contingent upon whether a consumer actually buys the product being sought. When a consumer enters a store in response to an advertisement, irrespective of whether the advertisement is misleading, there is no guarantee that the advertised product will be purchased. The fact that Freeman left defendant's store empty handed, when the advertised product was available for purchase, is not a sufficient reason to translate the costs incurred while responding to an advertisement into actionable injuries. Moreover, Freeman's costs

were not expended in an "unexpected or relatively unpredictable way," as "loss" is defined in Black's Law Dictionary, *supra*, at page 963.) Rather, they are contingent costs that any consumer must expect to spend in the course of shopping for a product.

Notwithstanding the above, as the majority points out, money expended on gas has qualified as [*46] sufficient injury for purposes of standing in other contexts. (*Aron*, *supra*, 143 Cal.App.4th at pp. 802-803 [plaintiff alleged he was damaged in the amount of excess fuel he was required to purchase when returning a rental truck].) However, the *Aron* case is distinguished from Freeman's because not only did the plaintiff in *Aron* suffer an ascertainable loss, but the defendant also gained an allegedly unfair benefit from the business practice. In *Aron*, the money the plaintiff spent on gas was paid directly to the defendant. In other words, U-Haul gained the excess gas the plaintiff was required to purchase in order to avoid a penalty pursuant to the terms of U-Haul's rental contract. (*Aron*, *supra*, at p. 801.) The holding in *Aron* was not intended to suggest that nominal loss, such as a partial tank of gas, was enough in itself to confer standing. Rather, the minimal losses suffered by the plaintiff in *Aron* also represented a quantifiable sum owed by the defendant to the plaintiff.

Similarly, in cases decided since Proposition 64, irrespective of whether plaintiffs sought restitution or injunctive relief (the two available remedies under section 17203), plaintiffs have established an "injury [*47] in fact" when they alleged not only loss, but also that the defendants had gained something from the act of unfair competition. (*Laster*, *supra*, 407 F. Supp. 2d at p. 1194 [in applying the UCL, the court found sufficient injury in fact alleged by the plaintiffs who were required to pay sales tax on the full retail value of cellular phones which the defendants advertised as free or substantially discounted when purchased with cellular service]; *Monarch*, *supra*, 2006 U.S. Dist.

2007 Cal. App. Unpub. LEXIS 9102, *

LEXIS 68850, *1, *2 [UCL standing satisfied by a plaintiff who alleged he paid higher insurance premiums because of the defendant insurer's settlement policies]; *Progressive West*, *supra*, 135 Cal.App.4th at pp. 284-285 [UCL standing satisfied by an insured plaintiff who alleged the defendant asserted its rights to 100 percent recovery of all moneys it pays to its insureds regardless of whether that reimbursement should be denied altogether or partially due to the made-whole rule and the common fund doctrine].) These cases support the proposition that the value of Freeman's standing claim should be measured by defendant's gain and not simply by Freeman's loss. Unlike the defendants in the foregoing cases, defendant [*48] in this case did not make any corresponding gain. In turn, although Freeman may have suffered the same type of loss as the plaintiff in *Aron*, *supra*, 143 Cal.App.4th 796, his personal expenditures for gasoline are not sufficient to establish that he suffered an "injury in fact" absent a showing of any corresponding gain on the part of defendant.

Given the UCL's relaxed liability standards, were this court to read the standing requirements of section 17204 so liberally as to allow Freeman's personal expenditures to qualify as an "injury in fact," private plaintiffs could claim any negligible amount of loss to secure standing. Injuries such as the cost of cellular phone minutes used while calling to inquire about an advertised product or shoe tread lost while walking to a business would be sufficient. This result would render businesses completely vulnerable to frivolous private plaintiff suits by undercutting the very purpose of the Proposition 64 amendment. Clearly, in passing Proposition 64 and enacting changes to the standing rules in section 17204, the electorate intended to *narrow* the category of persons who could sue businesses under the UCL.

In order to effectuate the statute's [*49] purpose, I conclude that a mere loss, monetary or otherwise, is not enough to confer standing.

When a court orders restitution, it orders the defendant to give up his gains to the claimant, as opposed to compensating the claimant for his or her loss. To satisfy the section 17204 "injury in fact" standing requirement, regardless of whether the relief sought is court-ordered restitution or an injunction, the loss suffered must be recoverable. Damages are not recoverable under the UCL (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1148) and they should not be sufficient to confer standing. This requirement, without going so far as to imply a transaction is necessary, prescribes that there be at minimum an interaction between the parties in which not only a loss but a gain results.

Under this prescript, a private plaintiff could not seek injunctive relief unless he or she could also recover restitution. However, this is not to say a court is required to order both. Indeed, section 17203 gives the court discretion to make such orders or judgments as may be necessary to prevent unfair competition *or* to restore to any person in interest money or property that has been acquired [*50] by unfair business practices. Furthermore, this rule would not limit the regulation of false or misleading advertising only to circumstances when a consumer has actually been duped, and the business has gained by virtue of the customer's purchase of the advertised product. Such an undesirable consequence would be avoided because the rule is necessarily restricted to actions brought by private plaintiffs, who must satisfy the "injury in fact" requirement under section 17204. It does not impact the power of the Attorney General or any other authorized counsel under section 17204 to bring false advertising suits on behalf of consumers.

Accordingly, in my opinion Freeman I, holding that the complaint for violation of the UCL did not state a cause of action, should be affirmed. Freeman has not demonstrated that he could properly amend his complaint to allege an "injury in fact" as a result of Mattress Gal-

lery's alleged false or misleading advertisement. For this reason, Freeman cannot amend his complaint to allege facts sufficient to provide him with standing to state a cause of action for violation of the UCL.

Likewise, I find that Freeman II (Super. Ct. No. RIC 415560) should be affirmed. [*51] The trial court did not err in sustaining defendant's demurrer on the ground that Freeman failed to plead adequately the facts supporting his standing to bring his causes of action under the UCL.

## 2. Relaxed Standing Requirements and Broad Relief Options of the CLRA Set a Dangerous Precedent.

While I concur with the majority in regard to the CLRA causes of action, it is important to highlight a potential problem created by this decision. The CLRA provides that, "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by [Civil Code] Section 1770 may bring an action against that person to recover or obtain [relief] . . . ." (Civ. Code, § 1780, subd. (a).) A cursory reading of Civil Code section 1780 suggests that a plaintiff must allege that the defendant violated the terms of the CLRA, that the plaintiff suffered damage, and that the violation caused the damage. However, as the majority points out, alleging a violation of the CLRA and alleging that a plaintiff suffered "any damage" are one and the same, according to the California Supreme Court. (*Kagan v. Gibraltar Sav. & Loan Assn.* (1984) 35 Cal.3d 582, 593 [*52] (*Kagan*) [holding that plaintiffs who were reimbursed for pecuniary loss could still bring CLRA claims on behalf of a class by merely alleging a violation of their rights under Civil Code section 1770].)

Although the California Supreme Court in *Kagan* stated that suffering "any damage" includes the infringement of any legal right as defined by Civil Code section 1770 (*Kagan*,

*supra*, 35 Cal.3d at p. 593), I would find that there is still room for debate as to what type of damage is sufficient to confer standing. While plaintiffs do not have to allege monetary loss to have standing under the CLRA, they must suffer *some damage as a result of* defendant's conduct. In other words, despite the fact that a plaintiff has alleged a violation of the CLRA, which, according to *Kagan*, would be sufficient to confer standing, the fact that he or she did not sustain any tangible loss precludes him or her from bringing claims. Thus, in my opinion, damage requires something more than a mere allegation of an infringement upon a right protected by Civil Code section 1770.

In addition to the relaxed standing requirements of the CLRA, the relief available under the statute is practically unbounded. Actual damages, [*53] injunctive relief, restitution, punitive damages, and "[a]ny other relief that the court deems proper" are all recoverable under the CLRA. (Civ. Code, § 1780, subd. (a).) Although I advocate my opinion, I recognize that this court is bound by *Kagan*. Therefore, I agree with the majority's determination that Freeman has standing to bring his claim for compensatory damages under the CLRA. Nonetheless, he is prevented from doing so because of his procedural failings.

The implications of this decision set a dangerous precedent. Freeman's procedural errors (failure to give proper notice) have limited him to injunctive relief under the CLRA. However, had he followed the procedural steps correctly, the CLRA provides no parameters on the type of damage that must be suffered to confer standing or on the type of relief that can be sought. Given the majority's interpretation of the CLRA, a plaintiff need only allege a violation of any of the 23 provisions of Civil Code section 1770 to attain standing. Once a plaintiff satisfies this low standing threshold, he is then entitled to seek a wide array of available relief. Judges or juries may eventually dismiss merit-

less claims, but not before wasting [*54] precious judicial resources.

By allowing a plaintiff who alleges unfair business practices to secure standing under the CLRA, we begin down a slippery slope. The California Supreme Court in *Kagan* seems to have obliterated the meaning of the phrase "suffers any damage as a result of" in the CLRA standing requirements. (*Kagan, supra*, 35 Cal.3d at pp. 590, 593; Civ. Code, § 1780, subd. (a).) In so doing, our high court has inhibited the judiciary from applying a meaningful limit on the damage and causation requirements of the CLRA. Because alleging a violation, suffering damage, and alleging causation have all been rolled into one requirement (*Kagan, supra*, 35 Cal.3d at p. 593*)*, courts are left asking, "Is there any limit on the damages that are sufficient to confer standing under the CLRA?" If gas money is sufficient, then why not wear and tear on one's tires? What about loss of time? Why not something as intangible as an alleged violation of Civil Code section 1770? The term "any damage" admittedly sounds limitless. However, if a court is forced to allow a mere allegation of unfair business practices to satisfy the "any damage" standing requirement of the CLRA, the judiciary of this [*55] state should brace itself for the imminent flood of litigation. At some point, the maxim of "the law disregards trifles" must be applied to limit the "any damage" requirement of the CLRA. (*Harris v. Time, Inc.* (1987) 191 Cal.App. 3d 449, 458 [holding that a suit for damages based on being forced to open junk mail is frivolous litigation and not a sufficient cause of action].)

The majority's view of the CLRA makes it difficult to maintain the necessary balance between insulating consumers from unfair business practices and protecting businesses against frivolous suits. A minimal standing requirement (a mere allegation of a violation of Civil Code section 1770), vast relief options, and a huge pool of potential litigants create a recipe for judicial disaster.

### 3. Several Issues Remain Unsolved to Date.

If Freeman's surviving claims move forward, several unresolved issues remain. First, it is yet to be determined whether the advertisements used by Mattress Gallery were false in any way. A determination of this question would impact both the UCL and the CLRA claims. Mattress Gallery's advertisements claimed that "goofed" mattresses were for sale at heavily reduced prices. The record does not [*56] indicate that the store was "[a]dvertising goods or services with intent not to sell them as advertised" or "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." (Civ. Code, § 1770, subds. (a)(9) & (13).) In fact, the store seemed willing to sell the "goofed" mattresses and simply warned that the imperfections made the bed an unhealthy choice for daily use. The admitted flaws, Mattress Gallery asserted, would lead to back problems if the mattresses were used for more than a few nights at a time. For this reason, the discounted mattresses were to be used by hotels or in guest rooms, and not for continual nightly use as Freeman desired. The advertisements were clearly meant to draw customers into the store. The store promoted a product that was admittedly imperfect and had a limited use. Whether Mattress Gallery's failure to state that limited use in the advertisements rises to the level of false or misleading advertising under the UCL or CLRA is a question for a finder of fact. "Whether a particular inference can be drawn from certain evidence is a question of law, but whether the inference shall be drawn, in any given [*57] case, is a question of fact for the jury." (*Black v. Coffin* (1942) 20 Cal.2d 457, 461.)

Another issue that is yet to be determined is whether the alleged harm to Freeman could have been reasonably avoided. A determination

of this question would affect the UCL claims in particular. An injury that can be reasonably avoided by the harmed individual is not recoverable under the UCL. (See *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403.) Whether a phone call or the application of common sense could reasonably have avoided the unnecessary sojourns that required nearly $800 worth of gas is another question for the fact finder. This Court has already concluded that Freeman cannot collect for these damages under the UCL or CLRA. If there were an additional finding that Freeman could have reasonably avoided the alleged harm, he would be stripped of his UCL standing. (*Ibid.*)

Finally, the possibility that the California Supreme Court will require a transaction for standing under the UCL is another unresolved issue that could affect this case. (See *Pfizer Inc. v. Superior Court* (2006) 141 Cal.App.4th 290, review granted November 1, 2006, S145775.) Should the Supreme [*58] Court decide to interpret Proposition 64 as adding such a requirement, Freeman's UCL claims would lack standing on grounds other than those already cited in my dissent. In other words, aside from the contention that Freeman did not suffer an "injury in fact," his UCL claims could be dismissed for lack of a transaction.

Many, if not all, of these issues will need to be addressed as Freeman's surviving claims move forward.

HOLLENHORST

J.